24-50

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**SMALL BUSINESS FINANCE ASSOCIATION,**

                Plaintiff and Appellant,

   **v.**

**CLOTHILDE HEWLETT, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation,**

              Defendant and Appellee.

---

On Appeal from the United States District Court
for the Central District of California

No. 2:22-cv-08775-RGK-SK
The Honorable R. Gary Klausner, Judge

### EXCERPTS OF RECORD
### VOLUME 1 OF 1

ROB BONTA
Attorney General of California
TAMAR PACHTER
Senior Assistant Attorney General
LISA W. CHAO
Supervising Deputy Attorney
Genera

DOUGLAS BETETA
Deputy Attorney General
RACHEL J. YOO
Deputy Attorney General
State Bar No. 293598
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6622
 Fax: (916) 731-2128
 Email: Rachel.Yoo@doj.ca.gov
*Attorneys for Defendant and Appellee*
*Clothilde Hewlett*

# TABLE OF CONTENTS

**Page**

Exhibit 6 To Declaration of Rachel Yoo in Support of Defendant's Opposition to Plaintiff's Motion to Exclude Levitin's Expert Report, Docket No.: 88 (filed on November 3, 2023) ................................................. 4

Order Re: Defendant's Application to File Under Seal by Judge R. Gary Klausner: The Court DENIES the Application. Pursuant to Local Rule 79-5.2.2(b)(ii), Docket No.: 85 (filed on October 26, 2023) ..................................................................................................... 22

Reply Brief in Support of Defendant's Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, Docket No.: 83 (filed on October 16, 2023) ............................................................ 23

Defendant's Responses to Plaintiff's Statement of Genuine Disputes of Material Fact, Docket No.: 83-1 (filed on October 16, 2023) ............... 40

Defendant's Evidentiary Objections to Plaintiff's Evidence in Support of Defendant's Motion For Summary Judgment, or in the Alternative Partial Summary Judgment, Docket No.: 83-2 (filed on October 16, 2023) ..................................................................................... 120

Declaration Of Rachel Yoo in Support of Defendant's Reply Brief in Support of Motion For Summary Judgment, or in the Alternative Partial Summary Judgment, Docket No.: 83-3 (filed on October 16, 2023) ..................................................................................................... 128

Exhibit 26_Jesse Mattson Depo Excerpts, Docket No.: 83-4 (filed on October 16, 2023) ................................................................................ 132

Declaration of Adam J. Levitin in Support of Defendant's Motion For Summary Judgment or, in the Alternative, Partial Summary Judgment, Docket No.: 83-5 (filed on October 16, 2023) ....................... 144

Declaration of Catherine in Support of For Summary Judgment or, in the Alternative, Partial Summary Judgment, Docket No.: 83-6 (filed on October 16, 2023) ................................................................................ 148

Exhibit 17 to Declaration of Rachel Yoo in Support of Defendant's Motion For Summary Judgment, or in the Alternative Partial Summary Judgment, Docket No.: 77 (filed on October 13, 2023) .......... 152

## TABLE OF CONTENTS
### (continued)

Page

Exhibit 11 to Notice of Motion and Motion For Summary Judgment
as to Each and Every Claim For Relief Stated in Plaintiff's Complaint
or in the Alternative Partial Summary Judgment, Docket No.: 76
(filed on October 13, 2023) ........................................................ 155

Sealed Declaration in Support of Application to File Document
Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of
Departments Opposition to SBFA's Motion to Exclude Certain
Opinions of the Departments Expert Adam Levitin Under Seal,
Docket No.: 73 (filed on October 9, 2023)................................... 175

Application to File Document Portions of Exhibit 6 to Declaration of
Rachel Yoo and Portions of Departments Opposition to SBFA's
Motion to Exclude Certain Opinions of the Departments Expert
Adam Levitin Under Seal Filed by Defendant Clothilde Hewlett,
Docket No.: 69 (filed on October 6, 2023)................................... 177

Order re: Defendant's Application to File Under Seal.  The Court
DENIES Defendant's Application to File Under Seal, Docket No.: 65
(filed on October 4, 2023). ....................................................... 180

Designating Non-Party Rewards Network Establishment Services
Inc.'s Statement Regarding Further Redacted Version That Avoids
The Need For Sealing or, in the Alternative, in Support of
Defendant's Application to File Portions of Disclosures and an
Agreement Under Seal, Docket No.: 60 (filed on September 29,
2023)............................................................................................ 182

Notice Of Motion And Motion For Leave To File Memorandum Of
Points And Authorities Of Public Counsel, Uc Berkeley Center For
Consumer Law & Economic Justice, California Association For
Microenterprise Opportunity, The Responsible Business Lending
Coalition And The Office Of Kat Taylor As Amici Curiae In Support
Of Defendant's Motion For Summary Judgment, Docket No.: 57
(filed on September 27, 2023)................................................... 200

## TABLE OF CONTENTS
## (continued)

**Page**

[Proposed] Memorandum Of Points And Authorities Of Public Counsel, Uc Berkeley Center For Consumer Law & Economic Justice, California Association For Microenterprise Opportunity, The Responsible Business Lending Coalition, And The Office Of Kat Taylor As Amici Curiae In Support Of Defendant's Motion For Summary Judgment, Docket No.: 57-3 (filed on September 27, 2023)... 206

Exhibit A to Memorandum of Points and Authorities Of Public Counsel, Uc Berkeley Center For Consumer Law & Economic Justice, California Association For Microenterprise Opportunity, The Responsible Business Lending Coalition, And The Office Of Kat Taylor As Amici Curiae In Support Of Defendant's Motion For Summary Judgment, Docket No.: 57-4 (filed on September 27, 2023)... 221

Defendant's Application To File Under Seal Confidential Documents And Information Submitted In Support Of Its Motion For Summary Judgment, Or In The Alternative, Partial Summary Judgment, Docket No.: 53 (filed on September 27, 2023) ..................................................... 232

Civil Docket for Case No. 2:22-cv-08775-RGK-SK, United States District Court,Central District of California, *Small Business Finance Association v. Clothilde Hewlett* ............................................................. 235

1    ROB BONTA
    Attorney General of California
2    LISA W. CHAO
    MICHAEL D. GOWE
3    Supervising Deputy Attorneys General
    DOUGLAS J. BETETA (SBN: 260377)
4    RACHEL J. YOO (SBN: 293598)
    Deputy Attorneys General
5     300 South Spring Street, Suite 1702
    Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
    Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
          Rachel.Yoo@doj.ca.gov
8    *Attorneys for Defendant*
    *Clothilde Hewlett, solely in her official capacity as*
9    *Commissioner of the California Department of*
    *Financial Protection and Innovation*

10

11          IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                WESTERN DIVISION

14

| | |
|---|---|
| 15 **SMALL BUSINESS FINANCE** <br> 16 **ASSOCIATION,** <br><br> 17             Plaintiff, <br><br> 18    v. <br><br> 19 **CLOTHILDE HEWLETT, solely in** <br> 20 **her official capacity as commissioner** <br> **of the California Department of** <br> 21 **Financial Protection and Innovation,** <br><br> 22 <br> 23            Defendant. | Case No.: 2:22-cv-08775-RGK-PLA <br><br> **EXHIBIT 6 TO DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE LEVITIN'S EXPERT REPORT** <br><br> Date:        October 30, 2023 <br> Time:        9:00 a.m. <br> Courtroom:   850 <br> Judge:       Hon. R. Gary Klausner <br> Trial Date:    December 12, 2023 <br> Action Filed: December 2, 2022 |

24

25

26

27

28

*Small Business Finance Association v. Clothilde Hewlett*
22-cv-08775-RGK-SK

# EXHIBIT 6

**EXHIBIT**

**10**

**From:** **Steve Denis** sdenis@sbfassociation.org
**Subject:** SBFA Update (Fall Meeting, California and Fraud Alert)
**Date:** September 5, 2018 at 11:00 AM
**To:** Steve Denis sdenis@sbfassociation.org
**Cc:** David Jaffe david@jaffemanagement.com



**California**

As most of you know, the California Senate approved a bill introduced by State Senator Steve Glazer that would require disclosures in our industry on late Friday night. The legislation will now proceed to the governor's desk for a signature or veto. The bill originally included APR and our primary lobbying objective was to convince Senator Glazer to remove the APR disclosure requirement from his bill or we would ultimately try to defeat it. The first step for the bill was a hearing before the Senate Banking Committee. Joe Looney, General Counsel at RapidAdvance, testified in opposition (2 hour mark) to the bill. The legislation ultimately passed through the committee, but Chairman Bradford instructed both the SBFA and Senator Glazer to "try and work out the APR issue" before the next step in the process.

We negotiated a compromise with Senator Glazer, who insisted on including an annualized metric, that would remove the APR disclosure from the bill and add a new metric call Annualized Cost of Capital (ACC). As a reminder, ACC works just like an APR but excludes the impact of the declining balance with each payment and ultimately results in an annualized rate 40% to 50% lower than an APR. The bill with ACC passed multiple steps in the process and was even unanimously approved by the Assembly Banking Committee.

In mid-August, Senator Glazer informed us the Department of Business Oversight (and extension of the governor's office) was opposed to the bill and threatened a veto. In response, Senator Glazer amended the bill to remove the ACC metric and replaced it with a process that would give the DBO the authority to determine the annualized metric and implement the legislation. This was a dramatic change in direction and we ultimately opposed the bill (along with ETA, PayPal and Square) during the last two weeks of the California legislative session. You can read the play-by-play reported by deBanked here. We had the bill defeated on the last legislative day, but Senator Glazer used a controversial Senate procedure to bypass the will of the Banking Committee to move the bill forward.

If this sounds like a House of Cards episode, you're not far off. As one veteran lobbyist in Sacramento said, "I haven't seen anything like this in my 17 years here." While we have some challenges ahead, there are some positives and this process is far from over. Our next step is to lobby the governor's office for a veto. While unlikely, we have a compelling case based on what I explained above and engagement with the governor's office will help our position with the DBO next year. Assuming the bill is signed into law, we will then participate in the DBO's rule-making process. This will be a formal (bureaucratic) process with meetings and comment periods where we can make the case for why APR is not the right annualized metric. We also have next year's legislative session. Senator Glazer has admitted there is need for "clean up legislation" next year to fix issues with this bill. If there is one thing the SBFA has gained in California it is credibility and political capital (especially with the way this process played out). We will certainly have a seat at the table to attempt a fix in the legislative session next year.

While this isn't the result we were hoping for there are some positives. First, if signed, the rule-making process at the DBO will take at least a year to complete, so there will be no annualized metric disclosure until 2020. We also started out with a bill that would require an APR disclosure that was expected to fly through the legislature--while this bill isn't close to ideal, it still doesn't include an APR disclosure. We also have a new administration coming next year in California. It is certainly possible the next DBO commissioner will have a much different take on this process. Lastly, the legislature is expected to become much more progressive after the election in November. It is possible this bill (and the resulting process) could prevent harmful legislation from being introduced next year like rate caps. As always, please contact me if you have any questions and comments are appreciated.

CONFIDENTIAL                    SBFA 01097

**Exhibit 6-086**



CONFIDENTIAL                    SBFA 01098

**Exhibit 6-087**

From: **Steve Denis** sdenis@sbfassociation.org
Subject: California Update
Date: October 1, 2018 at 10:20 AM
To: Steve Denis sdenis@sbfassociation.org

I wanted to send a quick update on California. Late last night (the statutory deadline for bills to be signed into law) the Governor signed SB 1235, the legislation that will eventually require disclosures for our industry. As a reminder, the bill originally included a requirement to disclose APR. We engaged with the author and had the APR provision removed. In the end, the bill that passed creates a process that allows the regulator to determine what should be disclosed.

While we opposed the final version of this bill, it is a small victory for the SBFA. Our goal at the start of this process was to make sure an APR disclosure was not required in California. While it is possible we eventually have an APR requirement after the conclusion of the regulatory process, there will be no impact from this legislation until 2020.

Moving forward, we plan to engage immediately with the regulators to ensure we are part of this process. Fortunately, we have spent a lot of time working with the DBO and have a good idea of what they are thinking and how we can engage. It is also possible we introduce legislation next year to adjust or repeal this bill and are also looking a potential legal challenge.

As always, if you have any question please feel free to give me a call. We'll discuss this extensively at our fall meeting on November 1st.

Best,

Steve

CONFIDENTIAL                    SBFA 01099

**Exhibit 6-088**

SER_8

From: **Steve Denis** sdenis@sbfassociation.org
Subject: SBFA August Update
Date: August 14, 2019 at 10:02 AM
To: Steve Denis sdenis@sbfassociation.org
Cc: David Jaffe david@jaffemanagement.com



CONFIDENTIAL                    SBFA 01100

**Exhibit 6-089**



NY Senate Lic
Bill.pdf

CONFIDENTIAL              SBFA 01101

**Exhibit 6-090**

From: **Steve Denis** sdenis@sbfassociation.org
Subject: SBFA Update
Date: November 15, 2019 at 11:23 AM
To: steve.denis@gmail.com



**A Big Win in California**

The California DBO has continued the process to implement SB 1235 that requires certain disclosures for our industry. They are currently trying to decide how to implement the law to include some type of annualized metric (either APR or a simplified interest calculation). In August, they released draft regulations for comment that included an APR disclosure component. We met with the DBO in October and urged them to test any type of metric they plan to adopt with actual small businesses before moving forward with implementation.

The good news is they have adopted our suggestion and will move forward with a testing project that will delay the implementation further. Reminder, this law took effect on January 1 this year. It took until August for draft regulations (which are not even proposed regulations) and any further implementation is delayed until next year. Frankly, I don't think we will see any final rule until 2021 at the earliest and, as

CONFIDENTIAL                    SBFA 01102

**Exhibit 6-091**

a reminder, the law will sunset at the end of 2022 which means to renew the law, they would need to start the legislative process in January of 2022. Bottom line, it is a bureaucratic mess and a good win for SBFA.

**California's Ripple Effect in Other States**

In other states (like New York and New Jersey) who have proposed APR disclosure bills, the main argument of our opponents has been "California is moving forward with APR." That is simply an argument they can't make anymore. It is clear California is rethinking APR and the entire implementation of SB 1235, and that should give other states pause.

It's also a big hit to the SmartBox initiative. The whole idea behind SmartBox and pushing APR disclosure was the thought that APR disclosure was "inevitable." The SmartBox crowd has been saying this for three years and no states are any closer to adopting APR disclosure. In New Jersey, the bill seems to be stalled (although, always subject to change) and in New York it is clear the DFS and the legislature do not intend to move APR disclosure legislation.



CONFIDENTIAL                SBFA 01103

**Exhibit 6-092**

CONFIDENTIAL                    SBFA 01104

**Exhibit 6-093**

**From:** **Steve Denis** sdenis@sbfassociation.org
**Subject:** SBFA General Counsel Working Group: Monday, April 19th
**Date:** April 13, 2021 at 10:40 AM
**To:** Steve Denis sdenis@sbfassociation.org
**Bcc:** JMerris@reliantfunding.com, jlooney@rapidfinance.com, psiegfried@rapidfinance.com, nataliepappas@rapidfinance.com, mcarlson@kapitus.com, acarpenterholmes@kapitus.com, jwallington@kapitus.com, ashapiro@forwardfinancing.com, sdonnelly@forwardfinancing.com, jonathan.gitlin@biz2credit.com, Joseph.DiMarco@forafinancial.com, dhoffman@credibly.com, jcreem@credibly.com, rkauffman@rewardsnetwork.com, apatel@rewardsnetwork.com, lindsey.rohan@fundkite.com



CONFIDENTIAL                    SBFA 01105

**Exhibit 6-094**

CONFIDENTIAL                    SBFA 01106

Exhibit 6-095
SER_15

JEREMY BROWN                                                    August 18, 2023
S.B.F.A. vs CLOTHILDE HEWLETT                                              1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                    WESTERN DIVISION

 4   SMALL BUSINESS FINANCE      :

 5   ASSOCIATION,                :

 6             Plaintiff,    : Case 22-cv-08775-RGK-SK

 7       v.                     :

 8   CLOTHILDE HEWLETT,         :

 9   solely in her official     :

10   capacity as Commissioner   :

11   of the California          :

12   Department of Financial    :

13   Protection and Innovation, :

14          Defendant.         :

15          Pursuant to Notice, the remote video

16   conference deposition of JEREMY BROWN, was taken on

17   Friday, the 18th day of August, 2023, commencing at

18   9:01 a.m., Eastern, before Brian M. McDonald, a

19   Court Reporter and Notary Public.

20

21

22

23

24

25
```



800.211.DEPO (3376)
EsquireSolutions.com

JEREMY BROWN                                                    August 18, 2023
S.B.F.A. vs CLOTHILDE HEWLETT                                               2

```
 1              A P P E A R A N C E S:

 2   ON BEHALF OF THE PLAINTIFF:

 3        BENJAMIN H. BRODSKY, ESQUIRE (Pro Hac Vice)

 4        Brodsky Fotiu-Wojtowicz, PLLC

 5        200 SE 1st Street, Suite 400

 6        Miami, Florida 33131

 7        email:  bbrodsky@bfwlegal.com

 8   and

 9        NATALIE PAPPAS, ESQUIRE

10        In-House Counsel

11        NataliePappas@rapidfinance.com

12   ON BEHALF OF THE DEFENDANT:

13        RACHEL J. YOO, ESQUIRE

14        and DOUG BETETA, ESQUIRE

15        Deputy Attorneys General

16        300 South Spring Street, Suite 1702

17        Los Angeles, California 90013-1230

18        Email: Rachel.Yoo@doj.ca.gov

19

20

21

22

23

24

25
```



800.211.DEPO (3376)
EsquireSolutions.com

JEREMY BROWN                                                    August 18, 2023
S.B.F.A. vs CLOTHILDE HEWLETT                                            187

```
 1        A.     Not that I can recall.

 2        Q.     We pretty much exhausted what's wrong with

 3   APR?

 4        A.     I think so.  I think you covered a lot of

 5   ground there.

 6                      (Whereupon, Deposition Exhibit

 7                      No. 10 was marked for

 8                      identification)

 9        Q.     Okay.  Then let me share, let me share

10   this.  I'm going to put it in the chat.  This is

11   something about emails that we received through

12   discovery from your counsel.  I believe these are

13   emails that SBFA sent out to its members over the

14   course of a couple years.  Have you seen these

15   letters -- these emails?

16        A.     I probably -- you're going fast here.

17        Q.     Oh.

18        A.     I mean, if Steve Denis sent those to, to,

19   to all of us and members, like for example on this

20   one.  This one looks like it's to the general

21   counsel.  This one is not one that was sent to me.

22        Q.     Let's scroll to the first one.  Do you

23   think you --

24        A.     First one looks like it would have been a

25   -- one that went out to the membership.  So, yes, I
```



800.211.DEPO (3376)
EsquireSolutions.com

JEREMY BROWN                                          August 18, 2023
S.B.F.A. vs CLOTHILDE HEWLETT                                     188

 1   would have seen that.

 2       Q.    So all emails that goes out to the

 3   members, do you receive those emails as well?

 4       A.    Yes.

 5       Q.    How often SBFA send out emails to members?

 6       A.    So, I say Steve sends an email somewhere

 7   between once every two weeks to once a month, you

 8   know, like a broadly-based email.

 9       Q.    These are a collection of emails all from

10   Steve Denis.  The first one is dated 5th, 2018.

11   Next one is October 1st, 2018.  And August 14, 2019.

12   And November 15, 2019.  Last one, April 13, 2021.

13   Do you think these are true and correct copies of

14   emails from the association to its members?

15       A.    If, if the, if counsel for the SBFA

16   produced these, then I wouldn't have any reason to,

17   to doubt that they are correct.

18       Q.    Do you think they are authentic emails?

19       A.     I don't have any reason to believe they

20   aren't.

21       Q.    Okay.  Let's review some of these.

22       A.    Okay.

23       Q.    The first one dated September 5th, 2018.

24   Who is David Jaffe?

25       A.    Jaffe.  Yes.  He has a consulting group



800.211.DEPO (3376)
EsquireSolutions.com

JEREMY BROWN                                              August 18, 2023
S.B.F.A. vs CLOTHILDE HEWLETT                                        230

```
 1              CERTIFICATION OF NOTARY

 2   I, Brian M. McDonald, the officer before whom the

 3   foregoing deposition was taken, do hereby certify

 4   that the witness whose testimony appears in the

 5   foregoing deposition was duly sworn by me; that the

 6   testimony of said witness was taken by me

 7   stenographically and thereafter reduced to

 8   typewriting by me; that said deposition is a true

 9   record of the testimony given by said witness; that

10   I am neither counsel for, related to or employed by

11   any of the parties to the action in which this

12   deposition is taken and further, that I am not a

13   relative or employee of any attorney or counsel

14   employed by the parties thereto, nor financially or

15   otherwise interested in the outcome of this action.

16
```

```
17   _____

18              Brian M. McDonald

19              Notary Public

20       My Commission Expires:  July 1, 2024

21         Dated this 25th day of August 2023

22

23

24

25
```

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

# CERTIFICATE OF SERVICE

Case Name: **Small Business Finance Association v. Clothilde Hewlett**

No. **22-cv-08775-RGK-SK**

I hereby certify that on <u>November 3, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**EXHIBIT 6 TO DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE LEVITIN'S EXPERT REPORT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 3, 2023</u>, at San Diego, California.

| | |
|---|---|
| M. Aguilar | |
| Declarant | Signature |

SA2022803044
84230684.docx

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | October 26, 2023 |
|---|---|---|---|
| Title | ***Small Business Finance Association v. Clothilde Hewlett*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order Re: Defendant's Application to File Under Seal [DE 69]**

On October 6, 2023, Defendant filed an Application to file under seal a deposition transcript and certain emails previously designed as confidential by Plaintiff. (ECF No. 69.) Concurrently, Defendant filed a declaration explaining that Plaintiff has stated that the deposition transcript may be filed publicly but the emails should be filed under seal. (ECF No. 70.) On October 9, 2023, Plaintiff filed a declaration in support of the Application. (ECF No. 73.) Plaintiff argues that the emails are sealable because they contain "sensitive information" about Plaintiff's political strategies to lobby against financial disclosure regulations in California and elsewhere. (*Id.*)

Under Local Rule 79-5.2.2(b), a party may file an application to file under seal documents designated by another as confidential pursuant to a protective order. C.D. Cal. L.R. 79-5.2.2(b). After an application is filed, "[w]ithin 4 days . . . the Designating Party must file a declaration establishing that all or part of the designated material is sealable, by showing good cause or demonstrating compelling reasons why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard." *Id.* 79-5.2.2(b)(i).

Having reviewed the filings, the Court finds that Plaintiff has not established good cause or compelling grounds for overcoming the strong presumption in favor of public access. Plaintiff has not cited any mandatory authority holding that communications about an organization's lobbying efforts should be sealed. To the contrary, the emails at issue implicate interests at the core of the policy favoring public access: "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598.

Accordingly, the Court **DENIES** the Application. Pursuant to Local Rule 79-5.2.2(b)(ii), Defendant may file the unredacted materials in the public case file no earlier than 4 days, and no later than 10 days, from the issuance of this Order.

**IT IS SO ORDERED.**                                                                                          JRE/dc

1  Rob Bonta
   Attorney General of California
2  Lisa W. Chao
   Michael D. Gowe
3  Supervising Deputy Attorneys General
   Douglas J. Beteta (SBN: 260377)
4  Rachel J. Yoo (SBN: 293598)
   Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
              Rachel.Yoo@doj.ca.gov
8  *Attorneys for Defendant*
   *Clothilde Hewlett, solely in her official capacity as*
9  *Commissioner of the California Department of*
   *Financial Protection and Innovation*
10

11             IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15
   **SMALL BUSINESS FINANCE**          Case No.: 22-cv-08775-RGK-PLA
16 **ASSOCIATION,**
                                        **REPLY BRIEF IN SUPPORT OF**
17                          Plaintiff,  **DEFENDANT'S MOTION FOR**
                                        **SUMMARY JUDGMENT, OR IN**
18        v.                            **THE ALTERNATIVE PARTIAL**
                                        **SUMMARY JUDGMENT**
19 **CLOTHILDE HEWLETT, solely in**
   **her official capacity as commissioner**
20 **of the California Department of**
   **Financial Protection and Innovation,**
21                                      Date:        October 30, 2023
                                        Time:        9:00 a.m.
22                                      Courtroom:   850
                                        Judge:       Hon. R. Gary Klausner
23                          Defendant.  Trial Date:  December 12, 2023
                                        Action Filed: December 2, 2022
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ................................................................. 1

I.    Introduction ..................................................................................... 1

II.    Argument........................................................................................ 2

    A.    SBFA Lacks Standing to Bring an As-Applied Challenge ........ 2

    B.    The Regulations Are Compelled Commercial Speech
        Subject to *Zauderer*, Not Restrictions on Speech Subject
        to *Central Hudson* ........................................................... 3

    C.    The Regulations Satisfy *Zauderer* As a Matter of Law.............. 4

        1.    The Required Disclosures Are Purely Factual and
            Noncontroversial ................................................... 4

        2.    SBFA Offers No Admissible Evidence to Show
            That the Regulations Are Not Purely Factual .................. 7

        3.    The Regulations Are Not Burdensome In Light of
            the Revenue Lenders Generate for Each
            Transaction .......................................................... 8

    D.    The Regulations Are Not Preempted by TILA.......................... 9

III.    Conclusion ..................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Bev. Ass'n v. City & Cty. of San Francisco*
  916 F.3d 749 (9th Cir. 2019) ...................................................................5

*Am. Meat Inst. v. United States Dep't of Agric.*
  760 F.3d 18 (D.C. Cir. 2014)...............................................................4, 8

*Central Hudson*. *Central Hudson Gas & Elec. Corp. v. Pub. Serv.*
  *Comm'n of New York*
  447 U.S. 557 (1980) ................................................................................3

*Cigar Ass'n of Am. v. United States FDA*
  315 F. Supp. 3d 143 (D.D.C. 2018) ........................................................3

*Ford Motor Credit Co. v. Milhollin*
  444 U.S. 555 (1980) ................................................................................9

*Free Speech Coal., Inc. v. AG of the United States*
  974 F.3d 408 (3d Cir. 2020) ...................................................................2

*Hornady Mfg. Co. v. Doubletap, Inc.*
  746 F.3d 995 (10th Cir. 2014) ................................................................8

*Jimeno v. Mobil Oil Corp.*
  66 F.3d 1514 (9th Cir. 1995) ................................................................10

*Kimberly-Clark Corp. v. Dist. of Columbia*
  286 F. Supp. 3d 128 (D.D.C. 2017) ........................................................5

*Mass. Ass'n of Private Career Sch. v. Healey*
  159 F. Supp. 3d 173 (D. Mass. 2016)......................................................7

*Nat'l Ass'n of Mfr. v. S.E.C.* (*NAM II*)
  800 F.3d 518 (D.C. Cir. 2015) ..........................................................5, 6

*Strategic Funding Source, Inc. v. Takeastrole, LLC*
  No. 654376/2020, 2023 WL 5719758 (N.Y. Sup. Sep. 5, 2023)..........................7

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Zauderer v. Off. of Disciplinary Counsel*
    471 U.S. 626 (1985) ..................................................................*passim*

**REGULATIONS**

California Code of Regulations, Title 10
    § 911(2) ..................................................................................... 4
    § 914 (a)(3)(A) .......................................................................... 4
    § 914 (a)(3)(C) .......................................................................... 2
    § 914 (a)(3)(D) .......................................................................... 4
    § 914 (a)(6)(A) .......................................................................... 4
    § 914 (a)(7)(B)(ii) ..................................................................... 4
    § 914 (a)(8)(A) .......................................................................... 4
    § 930 ......................................................................................... 6
    § 931 ......................................................................................... 6

Truth in Lending; Determination of Effect on State Laws California,
    New York, Utah, and Virginia)
    88 Fed. Reg. 19214 (Mar. 31, 2023) ........................................ 9, 10

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ..................................................................... 1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      The Regulations compel commercial speech, and because that speech is purely

4   factual, uncontroversial, and not unjustified or unduly burdensome, the Regulations

5   survive First Amendment scrutiny pursuant to *Zauderer*.  The Regulations are

6   purely factual because an estimated payment term, which is calculated based on the

7   contractual payment amount and financed amount, is factually accurate.  SBFA's

8   self-serving denial does not render the Regulations non-factual because it is beyond

9   doubt that, for example, it would take 100 days to pay off $24,000 with a daily

10  payment of $240.  Nor is an APR disclosure controversial.  It is an annualized

11  metric that is near-universal and commonly used to compare financing products

12  with even shorter than most sales-based financing products, such as payday loans.

13  Nor are the Regulations unduly burdensome.  SBFA does not even attempt to meet

14  the established case law, and the disclosures' effect on its members' cost of

15  compliance cannot be adjudged unduly burdensome where SBFA has failed to

16  present evidence concerning their other operating costs.  On the other hand, lenders

17  can recoup the cost of compliance estimated by the Department with just a few

18  transactions.  Furthermore, SBFA's evidence that customers have been confused or

19  misled by the disclosures is inadmissible, unreliable, and does not help it overcome

20  the Department's motion.  Notably, the individualized analysis required pursuant to

21  *Zauderer* confirms that SBFA lacks associational standing to bring its First

22  Amendment claim.

23      Lastly, SBFA cannot show that CFPB's determination that TILA does not

24  preempt the Regulations is irrational.  Without such a showing, CFPB's

25  determination is dispositive and entitled to deference pursuant to established

26  Supreme Court precedent.  Therefore, this court should grant the Department's

27  motion in its entirety.

28

1

## II.    ARGUMENT

### A.    SBFA Lacks Standing to Bring an As-Applied Challenge

As SBFA admits, the terms of the sales-based financing contracts SBFA members offer vary.  (Opp. at p. 4:21-5:7, Dkt. 72.)  Yet, SBFA asserts that the differences are not "material" (Opp. at p. 4:9).  Nonetheless, SBFA argues that the Regulations are not factual and misleading because they require disclosures of prepayment, true-ups, and fees.  (Comp., ¶¶ 24, 26, 29.)  But to determine, for example, whether the required disclosure's statement that "The cost of this financing is based on upon fees" is purely factual or not, Cal. Code Regs. tit. 10, § 914 (a)(3)(C), the Court must engage in individualized analysis and find out who charges fees and who does not.  Likewise, the validity assessment of the true-ups disclosure starts with knowing who offers true-ups.  Uncontroverted evidence shows that the terms of the sales-based financing contracts are not uniform (Reply SUF 5, 17, 23, Dkt. 83-1; *see also id.* ¶¶ 8, 10, 39, 56), and thus, the Regulations do not, and cannot, apply "equally across" all sales-based financing products.  (Opp. at p. 5:17-18, Dkt. 72.)  Therefore, an "individualize[d] inquiry" is necessary to assess SBFA's as-applied challenge, regardless of the level of scrutiny.  *Free Speech Coal., Inc. v. AG of the United States*, 974 F.3d 408, 422 (3d Cir. 2020).

In its attempt to establish standing, SBFA relies on inapposite cases that concern the pleading standard (Opp. at p. 3:27-4:6, Dkt. 72), as opposed to summary judgment motions, and even cases that do not address associational standing at all (*id.* at 6:11-16 (citing *CTIA* and *Am. Beverage*)).  Irrespective of whether SBFA's claim is labeled as a facial or as-applied challenge (Opp. at p. 5:20-25), the critical question is whether the constitutional analysis requires an individualized inquiry.  Here, SBFA claims that the Regulations mischaracterize its members' sales-based financing and open-end credit products, such a determination requires individualized analysis that conflicts with associational standing.

2

**B.    The Regulations Are Compelled Commercial Speech Subject to *Zauderer*, Not Restrictions on Speech Subject to *Central Hudson***

As previously acknowledged by SBFA and this Court, *Zauderer* is the appropriate constitutional standard to analyze the Regulations.  (*See* SBFA's Opp. to MTD at p. 3:21-23, Dkt. 19; Order Re: Defendant's Motion to Dismiss, p. 4, Dkt. 27).  In its attempt to find a fact issue, SBFA argues that *Central Hudson* is instead the applicable standard in part because the required disclosures restrict its members' commercial speech.  (Opp. at pp. 14:25-16:16, 17:17-18:15, Dkt. 72.)

There are "material differences between disclosure requirements and outright prohibitions on speech." *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626, 650 (1985).  Similar to the disciplinary rules in *Zauderer*, the Regulations have "not attempted to prevent [lenders] from conveying information to the public; [they have] only required them to provide somewhat more information than they might otherwise be inclined to present," *id*., which is different from the restriction on "all advertising that 'promot[es] the use of electricity'" in *Central Hudson*.  *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 558 (1980).  It is undisputed that SBFA's members can state whatever they want outside of the Regulations-required disclosures.  (Reply SUF 60, Dkt. 83-1.)

Because the Regulations are reviewed under *Zauderer*, SBFA's criticism about the Department's failure to do testing is a red herring.  (Opp. at p. 10:11-23, Dkt. 72.)  "Whereas the government would have to provide evidence of a measure's effectiveness to satisfy *Central Hudson*, 'such evidentiary parsing is hardly necessary' under *Zauderer*." *Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (D.C. Cir. 2014)).

3

**C.    The Regulations Satisfy *Zauderer* As a Matter of Law**

    **1.    The Required Disclosures Are Purely Factual and Noncontroversial**

The required disclosures are purely factual and uncontroversial, and thus, meet the *Zauderer* standard.  SBFA claims otherwise because the Regulations require disclosure of "Estimated Term," "Estimated APR," and "Estimated Payment," which SBFA contends are concepts that do not exist in sales-based financing (Opp. at p. 8:18-19, Dkt. 72.)  They do; SBFA's members just do not want to disclose them.  (*See, e.g.*, Reply SUF 38, Dkt. 83-1.)  A disclosure requirement is purely factual when there is no dispute about factual accuracy.  *Am. Meat Inst.*, 760 F.3d at 27.  There, American Meat Institute challenged the Mandatory Country of Origin Labeling, which requires revelation of the location of each production step, i.e., where an animal was born and where it was slaughtered.  *Id*. at 21.  Although manufacturers preferred to omit that information, the court found that the labeling requirement is purely factual because the labels would be factually accurate.  *Id*. at 27.  Similarly, the Regulations' required disclosures are purely factual.  As previously explained, it is beyond dispute that it would take 100 days to pay off $24,000 with a daily payment of $240.  (Reply SUF 37, Dkt. 83-1.)  Furthermore, the Regulations require disclosure of "estimates" accompanied by further clarifying statements such as "APR is not an interest rate" or "This financing does not have a fixed payment schedule and there is no minimum payment amount."  Cal. Code Regs. tit. 10, §§ 914 (a)(3)(A), (a)(3)(D), (a)(6)(A), (a)(7)(B)(ii), (a)(8)(A).  SBFA claims that such safeguards are insufficient, and yet, it offers no evidence to substantiate its claim.  The Regulations are also factual as applied to open-end credit.  SBFA blames the Regulations for requiring disclosure of the "highest possible cost of open-end financing, not the actual cost" (Opp. at p. 13:22, Dkt. 72), but the assumptions on which disclosures are based conspicuously appear at the top of the disclosure form.  Cal. Code Regs. tit. 10, § 911(2).  When

4

1   borrowers question the nature of the financing product (Opp. at p. 13:19-21, Dkt.

2   72), lenders can simply point to the assumptions at the top and clarify their

3   misunderstanding.  Critically, the only admissible evidence before the Court is that

4   no actual customers have been misled or confused by the Regulations-required

5   disclosures. (*See* Reply SUF 36, Dkt. 83-1.)

6          Furthermore, SBFA equates the APR disclosure with statements such as

7   "environmentally sustainable" and "fair trade" and suggests that the APR disclosure

8   is controversial.  (Opp. at p. 9:1-5, Dkt. 72.)  It is not.  A disclosure is controversial

9   if it is "inflammatory" or "expresses a matter[] of opinion." *Kimberly-Clark Corp.*

10  *v. Dist. of Columbia*, 286 F. Supp. 3d 128, 140-141 (D.D.C. 2017).  The APR is a

11  measure of the cost of financing expressed as a percentage.  It is not a matter of

12  opinion; it is a matter of mathematics.  It is a near-universal metric that is useful to

13  compare costs of financing, including extremely short-term loans such as payday

14  loans.  (Reply SUF 58, Dkt. 83-1.)  SBFA incorrectly suggests that debates or

15  disagreements make a topic controversial, but the cases it cited for that proposition

16  do not support that argument.  For example, Judge Ikuta in *Am. Beverage* stated

17  that the statement "Drinking beverages with added sugar(s) contributes to obesity,

18  diabetes, and tooth decay" is contrary to "statements by the FDA" and false to

19  people with a certain health condition. *Am. Bev. Ass'n v. City & Cty. of San*

20  *Francisco*, 916 F.3d 749 (9th Cir. 2019).  It was medical and scientific facts that

21  made the statement untrue and controversial, not disputes by the manufactuerers, as

22  claimed by SBFA.  (Opp. at p. 7:18-21, Dkt. 72.)  Likewise, it was not the

23  "vehement[] disagree[ment]" by the subjects of the regulation that made the

24  statements such as "environmentally sustainable" or "fair trade" controversial, but it

25  is "a matter of opinion" those statements carry. *Nat'l Ass'n of Mfr. v. S.E.C.* (*NAM*

26  *II*), 800 F.3d 518, 541 (D.C. Cir. 2015).  SBFA presents no evidence to contradict

27  the fact that APR calculates the cost of financing over a one-year period enabling

28  the comparison of different financing products.  (Reply SUF 57, Dtk. 83-1.)

1   Furthermore, the debate in the Legislature stemmed from a misunderstanding of

2   APR and the contexts in which it is required, not that it is an inaccurate measure.

3   (Reply SUF 57, Dtk. 83-1; see also Ex. 18 ¶¶ 120-122, 126-131.)

4       Citing *NAM II*, SBFA further argues that "the government's imposition of a

5   statutory definitional framework cannot [] save a disputed term."  (Opp. at p. 8:24-

6   25, Dkt. 72.)  *NAM II* is inapposite.  There, the Conflict Minerals Rule defined

7   "DRC conflict free" as products that are free of "conflict minerals that directly or

8   indirectly finance or benefit armed groups" in the Democratic Republic of the

9   Congo or adjoining countries and required a disclosure whether products are "DRC

10  conflict free" or not.  *NAM II*, 800 F.3d at 531.  In ruling that such a definition and

11  the disclosure is "hardly 'factual and non-ideological,'" the court reasoned that the

12  label is "a metaphor that conveys moral responsibility for the Congo war [and]

13  compel[s] an issuer to confess blood on its hand[.]"  *Id*. at 530.  In contrast, the

14  sections 930 and 931 of the Regulations do not contain any such metaphoric and

15  ideology-laden definition.  (Opp. at p. 8:20-27, Dkt. 72.)  They simply prescribe the

16  methodologies in calculating borrowers' future income and certain rules the lender

17  needs to abide by in opting for each methodology.  Cal. Code Regs. tit. 10, §§ 930,

18  931.  Unlike the statutory definition of "DRC conflict free," using prescribed

19  methodologies under the Regulations does not convey a message that the lender's

20  "product[] [is] ethically tainted" or compel the lender "to confess blood on its

21  hands."  *NAM II*, 800 F.3d at 530.

22      Finally, SBFA misconstrues the Department's argument that sales-based

23  financing agreements resemble loans. (Opp. at p. 12 n.1.)  The Department was

24  pointing out the similarities between sales-based financing and loan transactions to

25  show that it is not misleading to apply loan-style disclosures to sales-based

26  financing products.  In fact, a New York court recently found a Kapitus' sales-

27  based financing contract to be a usurious loan.  *Strategic Funding Source, Inc.[1] v.*

—————————————

28      [1] Kapitus is a DBA for Strategic Funding Source, Inc.

6

1     *Takeastrole, LLC*, No. 654376/2020, 2023 WL 5719758, at *4 (N.Y. Sup. Sep. 5,

2     2023).  Thus, the Regulations are purely factual and noncontroversial as they apply

3     to sales-based financing products.

4           **2.**     **SBFA Offers No Admissible Evidence to Show That the**
                      **Regulations Are Not Purely Factual**

5

6         In its further attempt to paint the Regulations as non-factual, SBFA alleges

7     that the purported variances between the mandated estimates and actual

8     performance during the life of the transactions renders the Regulations not purely

9     factual.  (Opp. at p. 9:6-9, Dkt. 72.)  There are two major flaws in SBFA's

10     argument.  First, the value of the estimates is in helping borrowers decide whether

11     to borrow or not.  (*See* Reply SUF 54, Dkt. 83-1.)  Providing estimates "help small

12     businesses better understand the terms and costs of the financing available to

13     them[,]" and that is the purpose of Senate Bill 1235 and the Regulations.  (Reply

14     SUF 1, Dkt. 83-1.)  Therefore, the fact that the estimates may differ from the actual

15     performance of the contracts viewed in hindsight does not render the Regulations

16     misleading or non-factual.  *See Zauderer*, 471 U.S. 626, at 651 (First Amendment's

17     protection to commercial speech "is justified principally by the value to consumers

18     of the information such speech provides[.]").  SBFA does not argue or suggest that

19     the estimates required by the Regulations would be inaccurate when made.  At least

20     one court has found that whether a statement is factual is judged when the statement

21     was made not at some future point down the line.  *See Mass. Ass'n of Private*

22     *Career Sch. v. Healey*, 159 F. Supp. 3d 173, 200 (D. Mass. 2016).

23         Second, SBFA fails to provide admissible evidence to show that the

24     Regulations are not purely factual.  The three declarations discussing the variances

25     between the estimates and actual performance are inadmissible hearsay that violates

26     the best evidence rule.  *See* Department's Objection No. 3 to SBFA's Evidence,

27     Dkt. 83-2.  Likewise, SBFA attempts to argue that at least one of its members has

28     found customers (34 out of thousands of SBFA members' costumers) that are

1   actually confused by the Regulations fails, because SBFA's evidence is

2   inadmissible triple-hearsay.  *See* Department's Objection No. 2 to SBFA's

3   Evidence.  Lastly, all of SBFA's arguments based on Dr. Kingsley's expert report

4   fail because SBFA did not submit or authenticate her report and thus, her report is

5   inadmissible.  *See* Department's Objection No. 6 to SBFA's Evidence.  Her survey

6   and testimony are also inadmissible because the survey was not conducted

7   according to accepted principles and is irrelevant. *Id.*; Department's Motion to

8   Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.  Even if the

9   court is inclined to admit Dr. Kingsley's report, her report should not preclude

10  summary judgment.  First, her survey is not designed to test the cause of alleged

11  confusion but the effectiveness of the Regulations.  (Opp. at pp. 10:25-11:5, Dkt.

12  72.)  "[E]vidence of a measure's effectiveness," however, is "hardly necessary"

13  under *Zauderer*.  *Am. Meat Inst.*, 760 F.3d at 26.  Second, her survey does not fit

14  the facts of the case.  Her survey cannot reliably show the effect of the Regulations-

15  required disclosures on respondents because Dr. Kingsley did not provide them

16  with information essential to understanding the disclosures—the underlying

17  contract that are invariably presented to customers with the disclosures.  (Reply

18  SUF 64, Dkt. 83-1.)  Thus, Dr. Kingsley's survey does not show that customers are

19  likely to be confused or misled by the disclosures.  *See Hornady Mfg. Co. v.*

20  *Doubletap, Inc.*, 746 F.3d 995, 1005 n.9 (10th Cir. 2014) ("Even on summary

21  judgment, however, the district court may register 'concerns about the survey's

22  methodology' and 'decid[e] that the survey failed to support a likelihood of

23  confusion'") (citation omitted).[2]

### 3.    The Regulations Are Not Burdensome In Light of the Revenue Lenders Generate for Each Transaction

26      In opposition, SBFA does not argue that the disclosures' burden "effectively

27  rules out" its members' speech or that a two page disclosure is not "relatively

28  _____

   [2] The Department does not concede that its attacks are only on methodology.

1    brief." (Mot. at p. 17:27-18:12, Dkt. 52).  Thus, under established case law, the

2    disclosures are not burdensome.  (*Id.*)  Without citation to any supporting authority,

3    SBFA argues that its members are burdened by compliance costs amounting to

4    "hundreds of thousands of dollars," although the Department estimated it as a

5    $25,000 upfront cost.  (Opp. at pp. 16:26-17:5, Dkt. 72.)  SBFA has failed to

6    substantiate this alleged burden especially because it provides no evidence

7    concerning its members' operating costs relative to the alleged burden the

8    Regulations impose.  (Reply SUF 61, Dkt. 83-1.)  Notably, a $25,000 upfront

9    expense is not excessive, let alone burdensome in light of the revenue lenders

10    generate for each transaction.  For example, Credibly charged $30,696 for an

11    advance of $99,900 (Ex. 10-141, Dkt. 52-12) and Rewards Network made $4,200

12    while lending $6,000 (Ex. 11-165, Dkt. 52-13).  Kapitus charged $11,250 for an

13    advance of $30,000 (Ex. 14-229; Dkt. 52-16), and it was just one contract out of

14    more than 950 contracts Kapitus signed since the Regulations took effect in

15    December 2022.  (Ex. 22-408, Dkt. 52-24).  Thus, returns from just one or a few

16    transactions for each SBFA member would be enough to cover the estimated

17    compliance cost.

18        **D.    The Regulations Are Not Preempted by TILA**

19        "Unless demonstrably irrational," opinions of an administrative entity

20    "appointed to apply and enforce a statute" are "dispositive." *Ford Motor Credit*

21    *Co. v. Milhollin*, 444 U.S. 555, 565 (1980).  SBFA did not, and cannot, make such a

22    showing because the CFPB's determination was rationally based on fifteen

23    comments from diverse groups including consumer advocacy organizations,

24    lenders, and SBFA.  Truth in Lending; Determination of Effect on State Laws

25    California, New York, Utah, and Virginia), 88 Fed. Reg. 19214, 19214 (Mar. 31,

26    2023) (to be codified at 12 C.F.R. pt. 1026).  In fact, CFPB's determination

27    addresses the exact same arguments SBFA is raising in this action. *Id.*, at 19218-

28    19.  SBFA contends that the different definitions between TILA and the

9

1  Regulations "may result in different APRs for the exact same product." (Opp. at p.
2  19:22-23, Dkt. 72.) But that is a legal impossibility due to the differing primary-
3  purpose standards of TILA and the Regulations. (Mot. p. 20: 10-17, Dkt. 52.) In
4  other words, there would not be a single transaction where both TILA and
5  California disclosures are required, and thus, no small business would receive both
6  disclosures "for the exact same product." (Opp. at p. 19:22-23, Dkt. 72.) In
7  addition, SBFA's allegation that CFPB's finding is flawed stems from SBFA's
8  erroneous reading of CFPB's determination. SBFA alleges that CFPB rested its
9  determination on "the lack of evidence" that consumers "would somehow be
10 prevented from understanding the terms of credit available to them" due to state
11 disclosures. (Opp. at p. 20:7-12, Dkt. 72.) That is not what CFPB premised its
12 determination on. Instead, it simply pointed out that "Commenters advocating
13 preemption have not shown [such a premise is true.]" 88 Fed. Reg. at 19218.
14 Both as one of the commenters who advocated for preemption to CFPB, and here,
15 as the plaintiff in this action, SBFA has failed to present any admissible evidence of
16 consumer confusion caused by the required disclosures under the Regulations. (*See*
17 Reply SUF 36, AMF 10, Dkt. 82-1.) SBFA has failed to carry its burden to
18 establish preemption. *See Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n. 6 (9th
19 Cir. 1995).

20 **III.  CONCLUSION**

21      For the foregoing reasons, the Court should grant the Department's motion
22 and enter judgment in the Department's favor on all of SBFA's claims.

23 Dated:  October 16, 2023          OFFICE OF THE CALIFORNIA ATTORNEY GENERAL

24                                  */s/ Rachel J. Yoo*

25                                  Rachel J. Yoo
                                    Douglas J. Beteta
26                                  Deputy Attorneys General

27                                  *Attorneys for Defendant*

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation, certifies that this brief contains 3160 words, which complies with the word limit of L.R. 11-6.1

Dated: October 16, 2023

ROB BONTA
Attorney General of California
LISA W. CHAO
MICHAEL D. GOWE
Supervising Deputy Attorneys General

*/s/ Rachel J. Yoo*

Rachel J. Yoo
Douglas J. Beteta
Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

11

## CERTIFICATE OF SERVICE

Case Name: **Small Business Finance Association v. Clothilde Hewlett**    No.   **22-cv-08775-RGK-SK**

I hereby certify that on <u>October 16, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

> **DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

> **DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.

_____          _____
            M. Aguilar                                      Signature
            Declarant

SA2022803044
84201864.docx

1    ROB BONTA
     Attorney General of California
2    LISA W. CHAO
     MICHAEL D. GOWE
3    Supervising Deputy Attorneys General
     DOUGLAS J. BETETA (SBN: 260377)
4    RACHEL J. YOO (SBN: 293598)
     Deputy Attorneys General
5     300 South Spring Street, Suite 1702
      Los Angeles, CA 90013-1230
6     Telephone: (213) 269-6622
      Fax: (916) 731-2128
7     E-mail: Douglas.Beteta@doj.ca.gov
              Rachel.Yoo@doj.ca.gov
8    *Attorneys for Defendant*
     *Clothilde Hewlett, solely in her official capacity as*
9    *Commissioner of the California Department of*
     *Financial Protection and Innovation*
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15   | **SMALL BUSINESS FINANCE** | 2:22-cv-08775- RGK-SK |
16   | **ASSOCIATION,** | |
     | | **DEFENDANT'S RESPONSES TO** |
17   | Plaintiff, | **PLAINTIFF'S STATEMENT OF** |
     | | **GENUINE DISPUTES OF** |
18   | v. | **MATERIAL FACT** |
19   | | Date:        October 30, 2023 |
     | **CLOTHILDE HEWLETT, solely in** | Time:        9:00 a.m. |
20   | **her official capacity as commissioner** | Courtroom:   850 |
     | **of the California Department of** | Judge:       Hon. R. Gary Klausner |
21   | **Financial Protection and Innovation,** | Trial Date:  December 12, 2023 |
     | | Action Filed: December 2, 2022 |
22   | Defendant. | |

23

24          Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-3,

25   Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the

26   California Department of Financial Protection and Innovation (Department),

27   submits the following responses to Plaintiff Small Business Finance Association's

28   (SBFA) Statement of Genuine Disputes of Material Fact as to which she contends

                                     1

1    there is no genuine issue, and which support the Department's Statement of

2    Uncontroverted Facts and Conclusions of Law in Support of its Motion for

3    Summary Judgment, or in the Alternative Partial Summary Judgment.

4

5    **DEPARTMENT'S RESPONSES TO SBFA'S STATEMENT OF GENUINE**

6    **DISPUTES OF MATERIAL FACT**

7

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1. | The purpose of Senate Bill-1235 is to "help small businesses better understand the terms and costs of the financing available to them in the commercial financing market." The Regulations are designed to protect vulnerable small businesses that, often lacking access to traditional bank loans, turn to the Internet to find non-traditional and complex financing products to help keep their businesses afloat.<br><br>*Evidence*:<br>▪ Yoo Decl., ¶ 3 (Dkt. 52-6)<br>▪ Ex. 6 at p. 52: Purpose, Author's Statement (Dkt. 52-8) | Disputed in part.<br><br>Disputed that "[t]he Regulations are designed to protect vulnerable small businesses that, often lacking access to traditional bank loans, turn to the Internet to find non-traditional and complex financing products to help keep their businesses afloat." That statement is unsupported by record evidence.<br><br>Disputed that the Regulations accomplish that purpose. As shown below in Plaintiff's Additional Material Facts at ¶¶ 5-9, *infra*, the compelled disclosures are not effective in conveying the features of any financing – even the least complex – in such a way that a strong majority of participants can answer evaluative questions correctly and accurately. Compared to recipients of the simplest form of disclosure, for close-end credit, recipients of the open- end credit and sales-based financing disclosures performed significantly worse in correctly identifying almost every feature of |

2

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | the financing. |
| | | Admitted, but immaterial, that the author of SB1235 stated that its purpose is to help small businesses better understand the terms and costs of the financing available to them in the commercial financing market. |
| 1. Department's Response: SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA does not dispute the underlying purpose of SB 1235. The material portions of the stated fact are amply supported by the cited evidence. Dkt. 52-6, Ex. 6 at p. 52. The effectiveness of the disclosures is not at issue on the Department's motion. *See, e.g., Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy *Central Hudson*, 'such evidentiary parsing is hardly necessary' under *Zauderer*") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)). | | |
| 2. | In most sales-based financing, a borrower (i.e., the business) "sells" a portion of its future sales receipts to a lender in exchange for a lump sum advance.<br><br>*Evidence*:<br>▪ Compl., ¶ 9 (Dkt. 1)<br>▪ Ex. 20 at p. 369: Bakes Depo., pp. 19:17-20:5 (Dkt. 52-22)<br>▪ Ex. 21 at p. 399: Brown Depo., pp. 22:12-23:5 (Dkt. 52-23)<br>▪ Ex. 12 at p. 194: 1. Sales (Dkt. 52-14)<br>▪ Ex. 13, at p. 216: Key Terms (Dkt. 52-15) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan |

3

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ▪ Ex. 14 at p. 230: Sale Confirmation (Dkt. 52-16)<br>▪ Ex. 10 at p. 102: Purchase and Sale of Future Receivables (Dkt. 52-12)<br>▪ Ex. 11 at p. 167: ¶ 1 (Dkt. 52-13)<br>▪ Ex. 9 at p. 87: Sale and Assignment of Future Receivables (Dkt. 52-11)<br>▪ Ex. 16 at pp. 304-305: Levitin Expert Report, ¶¶ 34, 41 (Dkt. 52-18) | transaction.<br><br>Admitted that, in a sales-based financing transaction, a finance provider purchases a defined amount of a business' future receipts for a discounted up-front lump sum. The provider is entitled to remittance of a percentage of the business' future receipts until either it receives the full amount of the purchased receipts or the business closes down. With the exception of the manner in which remittances are made, *see* ¶ 7, infra, all sales-based financing is structured the same way.<br><br>*Evidence*: Deposition of Justin Bakes ("Bakes Depo."),attached to Declaration of Benjamin H. Brodsky ("Brodsky Decl.") at Exhibit 1, at 20:9- 22:4, 22:18-24, 134:23; 195:7-24; Deposition of Will Tumulty ("Tumulty Depo."), attached to Brodsky Decl. at Exhibit 2, at 106:5-15; Deposition of Jeremy Brown ("Brown Depo."), attached to the Brodsky Decl. at Exhibit 3, at 22:1-24:3, 130:15-131:2; Deposition of Jesse Carlson, 8/31/23 ("Carlson I Depo."), attached hereto as Exhibit 4, at 211:16-213:13; Deposition of Jesse Mattson ("Mattson Depo."), attached to Brodsky Decl. as Exhibit 5, at 40:17-20, 40:21-41:10, 167:4-14; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

4

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 2. Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 3. | The lender charges the borrower a "discount," which is the difference between the sold future receivables and the advanced amount.<br><br>*Evidence:*<br>▪ Ex. 20 at p. 372: Bakes Depo., p. 136:4-6 (Dkt. 52-22)<br>▪ Ex. 21 at p. 401: Brown Depo., p. 114:16-18 (Dkt. 52-23)<br>▪ Ex. 24 at p. 446: Tumulty Depo., p. 138:8-12 (Dkt. 52-26)<br>▪ Ex. 16 at p. 305: Levitin Expert Report, ¶ 41 (Dkt. 52-18) | Disputed in part.<br><br>Disputed that providers of sales-based financing "charge" a discount. The discount is not a charge or a fee. It is the difference between the purchase price and the amount of future receipts the provider is entitled to collect. As shown on the face of the contracts submitted by Defendant, the discount comprises the majority (and sometimes the entirety) of the cost of financing to the recipient.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction. *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23;195: 7-24; Brown Depo. At 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| 3. Department's Response: SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | | |
| 4. | The discount is fixed and does not grow over the term of the financing. *Evidence:* ▪ Ex. 20 at p. 371: Bakes Depo., p. 21:3-9 (Dkt. 52-22) | Admitted. |
| 5. | Lender often deducts an up-front fee from the advanced amount. | Disputed in part. Disputed that providers of sales-based |

6

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | *Evidence:*<br>▪ Ex. 20 at p. 374: Bakes Depo., p. 241:12-15 (Dkt. 52-22)<br>▪ Ex. 22 at p. 412: Carlson Depo., p. 161:17-21 (Dkt. 52-24)<br>▪ Ex. 13 at p. 216: Processing Fee (Dkt. 52-15)<br>▪ Ex. 14 at p. 230: Closing Fee (Dkt. 52-16)<br>▪ Ex. 10 at p. 113: Underwriting Fees (Dkt. 52-12)<br>▪ Ex. 16 at p. 306: Levitin Expert Report, ¶ 42 (Dkt. 52-18) | financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence:*<br>Bakes Depo. at 20:9-22:4, 22:18-24, 134:23; 195:7-24; Brown Depo. At 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 5. Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 6. | The borrower then pays the lender a certain percentage of its sales | Disputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| from a designated account, approved by the lender, on a daily or weekly basis until the borrower pays back the advanced amount plus the "discount." <br><br> *Evidence:* <br> ▪ Compl., ¶ 9 (Dkt. 1) <br> ▪ Ex. 20 at p. 369: Bakes Depo., pp. 19:17-20:5 (Dkt. 52-22) <br> ▪ Ex. 21 at p. 399: Brown Depo., pp. 22:12-23:5 (Dkt. 52-23) <br> ▪ Ex. 12 at pp. 194, 102: Daily Percentage (Dkt. 52-14) <br> ▪ Ex. 13 at pp. 216, 217: Monthly Percentage, Approved Account (Dkt. 52-15) <br> ▪ Ex. 14 at pp. 230, 231: Specified Percentage, Fixed ACH Terms (Dkt. 52-16) <br> ▪ Ex. 10 at p. 102: Specified Percentage, Purchase and Sale of Future Receivables (Dkt. 52-12) <br> ▪ Ex. 11 at pp. 166, 167, 168: Primary Terms, ¶ 6 (Dkt. 52-13) <br> ▪ Ex. 9 at pp. 86-87: Specified Percentage, Your Bank Account (Dkt. 52-11) | Disputed that the recipient of sales-based financing is "paying back" the finance provider anything. The finance provider has purchased a certain amount of the recipient's future receipts, which it is entitled to collect periodically based on a defined percentage of the recipient's receipts. <br><br> Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction. <br><br> *Evidence:* Bakes Depo. at 20:9-22:4, 22:18-24, 134:23; 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 185:23 -187:18, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 6.  Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA produces no evidence to dispute the stated fact as opposed to the use of terminology SBFA and SBFA's members do not like. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 7. | A fixed payment contract specifies both a fixed percentage and fixed payment amount that the lender collects.<br><br>*Evidence:*<br>▪ Ex. 13 at p. 216: Monthly Percentage, Daily Amount (Dkt. 52-15)<br>▪ Ex. 14 at pp. 230-231: Specified Percentage, Fix ACH Terms (Dkt. 52-16)<br>▪ Ex. 10 at p. 102:  Specified Percentage, Specified Weekly Amount (Dkt. 52-12)<br>▪ Ex. 9 at p. 86: Specified Percentage, Remittance Amount (Dkt. 52-11) | Disputed in part.<br><br>Admitted that sales-based financing contracts fix the percentage of receipts that a provider is entitled to collect.<br><br>Admitted that some forms of sales-based financing ("Fixed-ACH Remittance Sales-Based Financing") set an initial amount (the "Initial Amount") that the provider is entitled to debit from the customer's account toward collection of the receipts purchased. This amount is intended to approximate the percentage of the receipts to which the provider is entitled.  Denied that this amount is fixed.  In fact, for most Fixed- ACH Remittance Sales-Based Financing transactions, the amount set in the contract changes during the course of the transaction.<br><br>Disputed with respect to the other |

9

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | type of sales-based financing at issue in this case, which does set an Initial Amount in the contract that is later adjusted to match the actual amount of the customer's receipts.  Instead, for this type of sales-based financing ("Variable Remittance Sales-Based Financing"), typically, the recipient's credit card processor automatically remits to the provider the percentage of receipts it purchased from each credit card batch. This obviates the need for setting an Initial Payment that is then later adjusted.

Disputed that providers of sales-based financing are "lenders."  Sales-based financing is a purchase and sale transaction, not a loan.  It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional.  The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.

*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 28:23-30:8; 65:14-66:18, 134:23; 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 85:1-25, 157:18-160:3, 211:16-213:13; Tumulty Depo. at |

10

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | 106:5-15, 321:16-323:12; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

7. Department's Response:

SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). This fact is about fixed not variable payment contracts. In addition, the fact does not state that the payment amount stays the same for the life of the contract. Finally, "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

| 8. | Because the fixed payment amount is a dollar estimate of the fixed percentage based on past sales, the contract allows the borrower to seek adjustments, often called true-ups, when the fixed payment amount exceeds the contracted fixed percentage.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 88: Reconciliations and Adjustments to the Weekly Remittance Amount (Dkt. 52-11)<br>▪ Ex. 10 at pp. 102, 111: Purchase and Sale of Future Receivables, Variability Acknowledgement (Dkt. 52-12) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Dispute that this is a complete and accurate description of the transaction |

11

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ■ Ex. 13 at p. 218: Reconciliations (Dkt. 52-15) ■ Ex. 14 at p. 231: Reconciliation (Dkt. 52-16) | or the implication that this is commercially unreasonable or unconscionable.  Recipients of Fixed-ACH Remittance Sales-Based Financing have two options, retrospective and prospective, to reconcile this amount to their actual receipts: (1) they can seek repayment of amounts that were remitted in excess of the percentage of their receipts to which the provider is entitled (sometimes referred to as a "reconciliation" or "true up"); and (2) they can adjust the amount being remitted on a going-forward basis based on their actual business performance.  Because Variable ACH Remittance Sales-Based Financing does not set an Initial Amount for remittances, as remittances are calculated automatically based on the businesses' actual receipts, there is no need for reconciliation or going-forward adjustments to the remittance amount.  *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23; 195:7-24, 196:9-203:14; Brown Depo. at 22:1-24:3, 130:15-131:2,116:3-11; Carlson I Depo. at 82:11-83:8, 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15, 321:16-323:12; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

12

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 8.  Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA purports to provide additional facts that provide "a complete or accurate picture of the transaction" but this does not dispute the underlying fact. More importantly, SBFA only points to one contract with a provision allowing borrowers to "seek repayment of amounts that were remitted in excess of the percentage of their receipts to which the provider is entitled." Dkt. 52-15 at p. 218. This is not uniformly true as to all sales-based financing agreements highlighting the need to individually assess whether a given contract matches with the regulation-required disclosures. *See, e.g.*, Dkt. 52-11 at p. 88; Dkt. No. 52-16 at p. 231.<br><br>This fact is about fixed not variable payment contracts. Finally, "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 9. | To seek a true-up, the borrower is required to prove the decrease in sales by collecting and submitting months of bank statements, all while continuing to make daily or weekly payments.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 88: Reconciliations and Adjustments to the Weekly Remittance Amount (Dkt. 52-11)<br>▪ Ex. 13 at p. 218: Adjustment of Daily Amount (Dkt. 52- 15)<br>▪ Ex. 14 at p. 231: Reconciliation (Dkt. 52-16) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan.  It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional.  The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan |

13

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | transaction. |
| | | Dispute the implication that this is commercially unreasonable or unconscionable. |
| | | Admit the remainder. |
| | | *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

9. Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 10. | The contract is usually silent as to how quickly the lender must respond to the borrower's request, and whether to make an adjustment is within the sole discretion of the lender.<br><br>*Evidence:* | Disputed in part.<br><br>Disputed that the reconciliation or payment adjustment decision is subject to the provider's discretion. The calculation of the amount the provider is entitled to collect (or return to the recipient in the context |

14

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ▪ Ex. 9 at p. 88: Reconciliations and Adjustments to the Weekly Remittance Amount (Dkt. 52-11)<br>▪ Ex. 10 at p. 102: Purchase and Sale of Future Receivables, (Dkt. 52-12)<br>▪ Ex. 13 at p. 218: Reconciliations (Dkt. 52-15)<br>▪ Ex. 14 at p. 231: Reconciliation (Dkt. 52-16)<br>▪ Ex. 16: Levitin Expert Report, ¶¶ 47-48 (Dkt. 52-18) | of a reconciliation) is a math calculation. Reconciliations and payment adjustments happen frequently for Fixed-ACH Remittance Sales-Based Financing contracts. In fact, for some providers, the remittance amount has historically been adjusted for more than half of advances.<br><br>Admitted that some Fixed-ACH Remittance Sales-Based Financing contracts do not provide a time frame for the provider to respond to a recipient's request for a reconciliation or payment adjustment.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction. |

15

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 58:10-59:22, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 10.  Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). Exhibit 10 is unambiguous: "Adjustments, if any, shall be at Buyer's sole reasonable discretion." Dkt. 52-12 at p. 102. SBFA seemingly points to other contracts with different terms. This does not dispute the underlying fact; the Department only stated this was "usually" true. More importantly, this only highlights the need to individually assess whether a given contract matches with the regulation-required disclosures.<br><br>Finally, "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 11. | Oftentimes the lender limits an adjustment to once a month or forfeits the borrower's right to ask for an adjustment unless it receives a timely request.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 88: Reconciliations at Your Request (Dkt. 52-11) | Disputed in part.<br><br>Dispute this occurs "oftentimes" as vague and unsupported by evidence.<br><br>Admitted that some Fixed-ACH Remittance Sales-Based Financing contracts provide that neither the providers nor the recipient may seek to adjust the payment amount more than once every thirty days. Admitted that some contracts require |

16

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 10 at p. 102: Purchase and Sale of Future Receivables (Dkt. 52-12)<br>▪ Ex. 13 at p. 218: Return of Overages (Dkt. 52-15)<br>▪ Ex. 14 at p. 231: Reconciliation (Dkt. 52-16) | that adjustment requests must be made within certain time frames.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

11. Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

17

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 12. | Some lender also requires a showing of 20% or more decrease in sales.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 88:  Adjustments to the Weekly Remittance Amount (Dkt. 52-11) | Disputed in part.<br><br>Disputed because Defendant omits that the referenced Fixed-ACH Remittance Sales-Based Financing contract provides for automatic reconciliation such that, on a monthly basis, the recipient will never remit to the provider more than the percentage of receipts to which the provider is entitled.  There is no percentage threshold for this automatic reconciliation.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders."  Sales-based financing is a purchase and sale transaction, not a loan.  It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional.  The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction. |

18

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Admitted that, for this particular contract, if the recipient seeks to adjust the remittance amount on a prospective basis, it must demonstrate a 20% or greater decrease in receipts.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2; ECF No. 52-11 at 12. |
| 12. | Department's Response:<br><br>SBFA is correct that this fact is about fixed not variable payment contracts. With that caveat, SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 13. | Adjustments are usually temporary and the borrower must continue to prove its decrease in sales as often as every 14 days.<br><br>*Evidence:*<br>▪ Ex. 10 at p. 102: Purchase and Sale of Future Receivables (Dkt. 52-12)<br>▪ Ex. 13 at p. 218: Adjustment of Daily Amount (Dkt. 52- 15) | Disputed in part.<br><br>Dispute the implication that this is commercially unreasonable or unconscionable. The adjustment to the initial payment amount is tied to actual receipts and therefore is subject to being adjusted upward or downward based on the future performance of the business. |

19

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 14 at p. 231: Reconciliation (Dkt. 52-16) | Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.

*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

| | |
|---|---|
| **13. Department's Response:** | |

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 14. | When the borrower fails to submit | Disputed in part. |
|---|---|---|

20

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| supporting documents, the percentage returns to the original.<br><br>*Evidence:*<br>▪ Ex. 13 at p. 218: Adjustment of Daily Amount (Dkt. 52-15) | Disputed that the percentage of receipts the provider is entitled to collect changes.<br>Admitted that, for some Fixed-ACH Remittance Sales-Based Financing contracts, after an adjustment, if a recipient does not provide documents to the provider from which it can determine whether the recipient's receipts have remained depressed, then the amount of remittance reverts back to the original agreed-to amount stated in the contract.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 64:16-66:18, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16 - 213:13; Tumulty Depo. at 106:5-15; |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| 14. | Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. As SBFA acknowledges, the Department was referring to the adjustment being reversed if supporting documentation is not provided. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 15. | Unlike a fixed payment contract, a variable payment contract does not specify a fixed payment amount and instead only states a fixed percentage.<br><br>*Evidence:*<br>▪ Ex. 11 at p. 166: Primary Terms (Dkt. 52-13)<br>▪ Ex. 12 at p. 194: Daily Percentage (Dkt. 52-14) | Admitted. |
| 16. | The borrower is required to give the lender almost real-time access to a designated account where its sales receipts accumulate, which allows the lender to take the exact agreed-upon percentage, without the need of any adjustment, on a daily or weekly basis.<br><br>*Evidence:*<br>▪ Ex. 11 at p. 168: ¶ 6 (Dkt. 52-13) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time |

22

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 12 at p. 196: Daily Percentage (Dkt. 52-14)<br>▪ Ex. 24 at p. 460: Tumulty Depo., p. 322-9-15 (Dkt. 52-26) | it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction.<br>Evidence: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

16.   Department's Response:

SBFA cites no evidence to dispute the stated fact and thus, it is admitted. *See* Fed. R. Civ. Proc. 56(c). "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 17. | Many sales-based financing contracts allow prepayment and often encourage it by offering a prepayment discount.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 98: Repurchase Addendum  (Dkt. 52-11)<br>▪ Ex. 10 at p. 115: Early Remittance Discount Offer (Dkt. 52-12) | Disputed in part.<br><br>Disputed that there is any "prepayment" in sales-based financing as that term is used in lending transactions.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan.  It has |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ▪ Ex. 11 at p. 171: ¶ 17 (Dkt. 52-13)<br>▪ Ex. 13 at p. 227: Future Receipts Sale Agreement Addendum (Dkt. 52-15)<br>▪ Ex. 14 at p. 236: Early Delivery Option (Dkt. 52-16)<br>▪ Ex. 20 at p. 373: Bakes Depo., p. 238:14-21 (Dkt. 52-22) | no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Admitted that some sales-based financing contracts provide that, in exchange for a lump sum payment, the provider will accept less than the full amount of receipts it is entitled to collect. Sales-based financing providers will allow a lump sum remittance of the amount of receipts purchased, even if not expressly provided for in the contract.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 65:1-8, 106:5-15, 182:12-16; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 17.  Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. *See* "Early Remittance Discount Offer." (Ex. 10-115, Dkt. 52-12); "Early Performance Discount" (Ex. 13-227, Dkt. 52-15); "Early Delivery Option" (Ex. 14-236, Dkt. 52-16). | |

24

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

"Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| | | |
|---|---|---|
| 18. | Sales-based financing contracts contain extensive representations, warranties, and covenants where the borrower promises, among other things, that it will not cause any diversion of its sales receipts from the account where the lender monitors and takes payments.<br><br>*Evidence:*<br>▪ Ex. 9 at pp. 89-90: Merchant's Representations, Warranties, and Covenants, Bad Acts (Dkt. 52-11)<br>▪ Ex. 10 at p. 105: Protections Against Default (Dkt. 52-12)<br>▪ Ex. 12 at p. 101: Merchant's Representations, Warranties, and Covenants (Dkt. 52-14)<br>▪ Ex. 13 at p. 2710: Customer's Representations, Warranties, and Covenants (Dkt. 52-15)<br>▪ Ex. 14 at p. 237: Event of Default (Dkt. 52-16)<br>▪ Ex. 16 at pp. 309-310: Levitin Expert Report, ¶¶ 62-69 (Dkt. 52-18) | Disputed in part.<br><br>Dispute the mischaracterization "extensive" or the implication that there is anything commercially unreasonable or unconscionable about contractual representations and warranties.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction. |

25

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

18. Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 19. | If it does so, the borrower is considered in breach and the lender is entitled to various contractual remedies such as monetary damages, a default fee, an accelerated payment schedule where the full outstanding amount becomes due immediately, and a | Disputed in part.<br><br>Disputed that providers typically declare recipients in default or sue them for breach—even if the recipients have stopped remitting payment—if the recipient provides information to substantiate the reason |

26

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| personal guarantee by the owner.<br><br>*Evidence:*<br>▪ Ex. 9 at p. 91: Remedies for Bad Acts (Dkt. 52-    16)<br>▪ Ex. 10 at pp. 105, 113: Protections Against Default, Default Waiver Fee (Dkt. 52-12)<br>▪ Ex. 11 at p. 170: ¶13 (Dkt.  52-13)<br>▪ Ex. 12 at p. 105: Individual Liability of Guarantors (Dkt. 52-14)<br>▪ Ex. 13 at pp. 218, 222: Principal's Guarantee of Performance, Remedies (Dkt. 52-15)<br>▪ Ex. 14 at pp. 233, 237: Default Fee, Remedies for Default (Dkt. 52-16) | why it is not paying and stays in contact with the provider.  Providers typically seek to hold the owners liable for performance guarantees only if there has been fraud or misfeasance.<br><br>Admitted that if, in breach of the contract, a recipient diverts funds from the designated account from which the provider is entitled to collect its purchased receipts, the recipient will be in default and the provider will have various contractual remedies.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that providers of sales-based financing are "lenders."  Sales-based financing is a purchase and sale transaction, not a loan.  It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional.  The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 53:9-16, 55:20-56:9, 57:23-58:9, 134:23; 195:7-24; Brown |

27

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15, 191:3-192:8, 192:9-193:14, 213:4-216:3; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| 19. | Department's Response: | |

19. Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 20. | Some lenders take security interests in any and all future receipts the borrower has and will ever have as well as the owner's personal property and deem the borrower in breach on all contracts with the lender that are not current.<br><br>*Evidence:*<br>▪ Ex. 10 at pp. 110, 111 : Security Interest, Cross-Collateral, Guarantor Waiver (Dkt. 52-12)<br>▪ Ex. 11 at p. 171: ¶ 18 (Dkt. 52-13) | Disputed in part.<br><br>Disputed with the implication a contractually agreed-to security interest in a business's future receipts is commercially unreasonable or unconscionable. Disputed that the security includes the business owner's personal property.<br><br>Plaintiff does not understand the last clause, "and deem the borrower in breach on all contracts with the lender that are not current," and on that basis disputes.<br><br>Disputed that recipients of sales-based financing are "borrowers" or that |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ▪ Ex. 14 at pp. 242-243: Security Agreement, Cross-Collateral (Dkt. 52-16) | providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty.   Plaintiff disputes Defendant's characterization of sales- based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23;195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13, 234:19-25; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

20.  Department's Response:

SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence No. 1 (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present controverting evidence and the fact is supported by the stated evidence. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | *See* Ex. 10-110, Dkt. 52-12 (Credibly: 4.12 Security Interest. "Merchant hereby grants to Buyer … a security interest in (a) All personal property of Merchant[.]"; 4.13 Cross-Collateral. Merchant and Owner each acknowledge and agree [sic] that any security interest granted to Buyer under any other agreement between Merchant or Owner and Buyer (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement.") | |
| 21. | Closed-end credit is identical to a traditional loan where the borrower makes regular payments with interest until the principal and interest are paid off.<br><br>*Evidence:*<br>▪ Compl., ¶ 9 (Dkt. 1)<br>▪ Ex. 12 at p. 203: Business Loan and Security Agreement (Dkt. 52-14)<br>▪ Ex. 10 at. 120: Loan Details (Dkt. 52-12)<br>▪ Ex. 25 at p. 463: Loan Summary (Dkt. 52-27) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Admit the remainder.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3; 130:15-131:2; 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumully Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

30

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 21.  Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. This fact is not about sales-based financing.<br><br>The irrelevant additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence No. (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 22.  Open-end credit is a line of credit where the borrower gets approved up to a credit limit and is free to withdraw and pay back within that limit as it chooses.<br><br>*Evidence:*<br>▪ Compl., ¶ 9 (Dkt. 1)<br>▪ Ex. 12 at p. 179: Business Line of Credit and Security Agreement (Dkt. 52-14) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Admit the remainder.<br>Evidence: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23; 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

31

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | **22. Department's Response:**<br><br>SBFA does not dispute, in fact it admits the stated fact. This fact is not about sales-based financing.<br><br>The irrelevant additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Objections to SBFA's Evidence No. 1 (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 23. | Rapid and Rewards Network do not offer true-ups.<br><br>*Evidence:*<br>▪ Ex. 4 at p. 2 (Dkt. 52-6)<br>▪ Ex. 24 at p. 460: Tumulty Depo., p. 322-9-15 (Dkt. 52-26)<br>▪ Carrier Decl., ¶ 6 (Dkt. 52-1) | Disputed in part.<br><br>Dispute the implication and as irrelevant that Rapid or Rewards Network provide a product such that "true-ups" would apply. Rapid and Rewards Network do not offer a "true- up" because they do not offer a Fixed- ACH Remittance Sales-Based Financing product in California.<br><br>*Evidence*: Tumulty Depo. at 321:16-323:12; ECF No. 52-13. |
| | **23. Department's Response:**<br><br>SBFA does not dispute, in fact it admits the stated fact.<br><br>The additional facts SBFA cites do not create a factual dispute and are, in part, not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 24. | SBFA has argued that the word "payment" indicates that the product is a loan while the word "remittance" does not, and thus, all references to "payment" should | Disputed in part.<br><br>Disputed that SBFA disagrees that "payment" should apply for a true loan product. The word payment, however, is misleading in the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| be replaced by "remittance."<br><br>*Evidence:*<br>▪ Ex. 24 at p. 451: Tumulty Depo., p. 149:12-14 (Dkt. 52-26)<br>▪ Ex. 21 at p. 402: Brown Depo., p. 124:6-8 (Dkt. 52-23)<br>▪ Ex. 22 at p. 415: Carlson Depo., pp. 216:2-217:9 (Dkt. 52-24) | context of sales-based financing. The provider has purchased a defined amount of the recipient's future receipts. When the provider collects its receipts on a periodic basis, it is misleading to characterize this as a "payment" from the recipient to the provider. Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased—and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 154:14-156:4, 157:18-160:3, 167:21-169:1, 211:16-213:13; Tumulty Depo. at 95:24-96:19; 101:7-16, 106:5-15, 164:9-18; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

33

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 24. | Department's Response:<br><br>SBFA's alleged dispute in fact validates the stated fact; it is merely making semantic distinctions.<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 25. | SBFA has alleged that "owe" implies "an absolute payment obligation" whereas "due" can be used in any product.<br><br>*Evidence:*<br>▪ Compl., ¶ 28, p. 17:2-4 (Dkt. 1)<br>▪ Ex. 22 at p. 416: Carlson Depo., p. 217:4-7 (Dkt. 52- 24) | Admitted. |
| 26. | When asked about the basis of such implications and alleged costumer understanding for certain terms, the representative of Kapitus testified that "it's sort of basic English."<br><br>*Evidence:*<br>▪ Ex. 22 at p. 410: Carlson Depo., pp. 153: 23-154:10 (Dkt. 52-24) | Admitted. |
| 27. | "Pay" means "to discharge a debt or obligation."<br><br>*Evidence:*<br>▪ https://www.merriam-webster.com/dictionary/pay | Disputed in part.<br><br>Disputed that this is the only definition or common understanding of the identified term. |

34

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | **27. Department's Response:**<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present a meaning for "pay" that is more appropriate in this context. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 28. | "Remit" means "to send (money) to a person or place especially in payment of a demand, account, or draft."<br><br>*Evidence:*<br>▪ https://www.merriam-webster.com/dictionary/remit | Disputed in part.<br><br>Disputed that this is the only definition or common understanding of the identified term. |
| | **28. Department's Response:**<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present a meaning for "remit" that is more appropriate in this context. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 29. | "Owe" means "to be under obligation to pay or repay in return for something received."<br><br>*Evidence:*<br>▪ https://www.merriam-webster.com/dictionary/owe | Disputed in part.<br><br>Disputed that this is the only definition or common understanding of the identified term. |
| | **29. Department's Response:**<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present a meaning for "owe" that is more appropriate in this context. "Plaintiff cannot create a dispute of material fact based on immaterial | |

35

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 30. | "Due" is defined as "owed or owing as a debt." *Evidence:* ▪ https://www.merriam-webster.com/dictionary/due | Disputed in part. Disputed that this is the only definition or common understanding of the identified term. |
| | 30.  Department's Response: SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present a meaning for "due" that is more appropriate in this context.  "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 31. | Kapitus' contract states "*repayment* of any amounts *owed* by Merchant to Kapitus" and "any sale, transfer and/or assignment of … amounts *owed* on Merchant's account."  Forward "may share information regarding the Amount Sold and/or *payment* made or *owed* by Customer to Purchaser in accordance with this agreement…." *Evidence:* ▪ Ex. 14 at p. 249: Survival (Dkt. 52-16) ▪ Ex. 13 at p. 222: Financial Condition and History (Dkt. 52-15) | Disputed in part. Dispute any emphasis in original. Dispute the implication that a recipient "owes" anything prior to default. *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumuly Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 31. Department's Response: SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. | |

36

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 56(c). SBFA fails to present controverting evidence and the fact is supported by the stated evidence. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 32. | SBFA asserts that "Estimated Total Payment" should be replaced by "Expected Total Remittance" because the word "estimate" connotes that the delivered amount would be within certain ranges whereas the word "expected" suggest an exact amount.<br><br>*Evidence:*<br>▪ Ex. 24 at p. 447: Tumulty Depo., pp. 143:11-146:13, 149:1-16. (Dkt. 52-26) | Admitted. |
| 33. | SBFA admitted that there is no guarantee that customers will pay back the entire amount owed.<br><br>*Evidence:*<br>▪ Ex. 24 at p. 448: Tumulty Depo., pp. 144:3-5, 145:5-12. (Dkt. 52-26) | Disputed in part.<br><br>Disputed that recipients of sales-based financing "owe" the provider anything. Admitted that there is no guarantee that the recipient will collect the full amount of receipts purchased.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24,  134:23,  195:7-24; Brown Depo. at 22:1-24:3, 130:6-132:2, 116:3-11; Carlson I Depo. at |

37

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

33.  Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 34. | "Estimate" is defined as "a rough or approximate calculation. *Evidence:* ▪ https://www.merriam-webster.com/dictionary/estimate | Disputed in part. Disputed that this is the only definition or common understanding of the identified term.  DFPI has no evidence or support for its position that recipients of the disclosures understand that the disclosed metrics for sales-based financing are only estimates. Further, DFPI performed no analysis regarding whether, for sales-based financing, the estimated metrics would vary from the actual performance of the contracts. *Evidence*: Mattson Depo. at 160:2-18; Deposition of Charles Carriere ("Carriere Depo."), attached to |

38

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Brodsky Decl. as Exhibit 7, at 115:21-23. |
| | 34. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present a meaning for "estimate" that is more appropriate in this context or that its members' customers give the word "estimate" a different meaning. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 35. | SBFA's members utilize the word "estimate" in its contracts: "The Specified Amount is an *estimate* of the Specified Percentage", "[T]he Daily Amount represents the parties' best *estimate* of the amount of Future Receipts."<br><br>*Evidence:*<br>▪ Ex. 14 at p. 231: Fixed ACH Terms (Dkt. 52-16)<br>▪ Ex. 13 at p. 218: Return of Overages (Dkt. 52-15) | Admitted. |
| 36. | Multiple SBFA's members stated that not a single customer has complained of or expressed confusion about the Regulations: Q: "Is there any customer that you can tell me … because of these California regulations, they | Disputed in part.<br><br>Dispute the implication that this statement is an accurate reflection of customer confusion. Some members are aware of and have documented extensive examples of customer confusion and complaints. |

39

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| decided not to choose Rapid[?]" A: "I don't have anything like that…." *Evidence:* <ul><li>Ex. 24 at p. 457: Tumulty Depo., p. 310:4-10, 311:14-312:1 (Dkt. 52-26)</li><li>Ex. 11 at p. 162: Rewards Network's Response to Agreed Request No. 3 (Dkt. 52-13)</li><li>Ex. 9 at p. 78: Coast Funding's Declaration ¶ 5 (Dkt. 52-11)</li><li>Ex. 10 at p. 2: Credibly's Declaration, Paragraph 4 (Dkt. 52-12)</li></ul> | Forward Financing recorded 34 examples of customer confusion caused by the Regulations since they were enacted. These customers were confused by the inclusion of the APR metric on the disclosures, given that sales-based financing does not have a rate. These customers were also confused by discrepancy between the weekly payment amount stated in Forward Financing's contract and the estimated weekly payment amount on the disclosure form, which was caused by the differences between Forward Financing's internal methodology for calculating the Initial Amount and the Regulations' prescribed methodology for calculating the estimated metrics. *Evidence*: Bakes Depo. at 82:10-84:5, 84:7-88:10, 153:20-155:18, 171:17-172:8, 269:2-279:9. |

36.  Department's Response:

SBFA fails to present admissible evidence to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). The deposition excerpts SBFA cites are unauthenticated and thus, inadmissible. *See* Department's Objection No. 1 to SBFA's Evidence, Dkt. 83-2. In addition, the only evidence of consumer confusion SBFA presents is inadmissible triple-hearsay: (1) customers' alleged statements of confusion, (2) as related in a spreadsheet written by Forward Financing employees, and (3) as repeated by Forward Financing's CEO Justin Bakes. *See* Department's Objection No. 2 to SBFA's Evidence, Dkt. 83-2.

| 37. | In Forward's contract (Exhibit 13) where the daily payment amount is $240, it would take 100 days for | Disputed in part. Disputed on the basis that this |
|---|---|---|

40

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Forward to collect the $24,000 "Amount Sold."<br><br>*Evidence:*<br>▪ Ex. 13 at p. 216: Key Terms (Dkt. 52-15) | counterfactual and unfounded hypothetical does not reflect reality. The Estimated Term rarely, if ever, is the same as the actual amount of time it takes for a provider to collect the full amount of purchased receipts.<br><br>Forward Financing's sales-based financing transactions funded in 2020 had an average variance of 78.5% between the actual term and what the disclosed "Estimated Term would have been had the Regulations then been in effect. For years 2021 and 2022, the average variance was 53.9% and 42.8%, respectively. As to the "Estimated Payment," 67.2% of Forward Financing's sales-based financing transactions that were funded in 2020 had the initial contractually set payment paused or reduced during the course of the transactions. For those funded in 2021 and 2022, 55.4% and 60.8% of Forward Financing's customers had their payments paused or reduced.<br><br>For Rapid Finance's sales-based financing transactions between January 2021 and June 2023, there was an average variance of 28% between the actual term and what the disclosed "Estimated Term" would have been or actually was. The average variance between the "Estimated APR" and the actual APR for Rapid Finance's sales- based financing transactions was almost |

41

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | 60%. |
| | | Kapitus' sales-based financing transactions funded in 2020, 2021, and 2022 had an average variance of 34.37%, 32.55%, 40.79%, respectively, between the actual term and what would have been the Estimated Term had the company been compelled to disclose this metric at that time. |
| | | *Evidence*: Tumulty Depo. at 296:5-20; Bakes Decl. at ¶¶ 2-4; Declaration of Will Tumulty at ¶¶ 2-3; Declaration of Michael Jesse Carlson at ¶¶ 2-3. |

37. Department's Response:

SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 3 to SBFA's Evidence No. 3 (SBFA member declarations violate the Best Evidence Rule and are double-hearsay), Dkt. 83-2.

Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present controverting evidence. While claiming that the estimated term is rarely accurate, SBFA does not state that the estimated term set forth in Exhibit 13 is inaccurate or that it has been extended. Instead, SBFA presents evidence regarding unrelated contracts, most of which occurred before the Regulations went into effect, and whose variance was likely due in large part to the global pandemic that started in 2020.

| 38. | Rapid commonly estimates payment terms for its own internal projections and analyses.<br><br>*Evidence:* | Disputed in part.<br><br>Dispute the implication that this is a heavily relied upon standalone factor. Rapid estimates how long it would take for it to collect the full amount of receipts purchased, assuming the |

42

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 24 at p. 454: Tumulty Depo., pp. 286:4-21; 288:8-10; 289:14-19 (Dkt. 52-26)<br>▪ Ex. 17: Columns G, K, and L (Dkt. 52-19) | initial estimated payment never changed, among many other underwriting points.<br><br>*Evidence*: Tumulty Depo. at 35:16-39:10, 194:9-196:7, 252:13-253:1. |

38. Department's Response:

SBFA does not dispute, in fact it admits the stated fact.

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| | | |
|---|---|---|
| 39. | In Forward's contract (Exhibit 13), a borrower sold its future receipts of $24,000 to Forward in exchange for $16,000. It agreed to pay 16% of its monthly receipts, which Forward estimated to be $240 per every business day. If sales lag and the borrower needs to lower the monthly percentage (and daily payment), it needs to collect "three months" bank statements to show its decrease in sales. The contract is silent as to how quickly Forward must make a decision, and even if Forward finds the adjustment is warranted, it only makes a temporary adjustment "for 14 days." The adjusted percentage "revert[s] back" unless the borrower continues to submit its bank statements "every 14 days." | Disputed in part.<br><br>Dispute that this single example is representative or the implication that a recipient will be in default if revenues decline. Forward Financing has a 35- employee account servicing department that is dedicated to adjusting remittance amounts on an ongoing basis so they align with the business customers' actual revenues. Forward Financing typically makes payment adjustments within a day of a customer's request.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it |

43

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | *Evidence:*<br>▪ Ex. 13 at pp. 216, 218: Key Terms, Adjustment of Daily Amount (Dkt. 52-15) | purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 26:2-14, 26:20-27:21, 134:23, 195:7-24, 203:6-14; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 39. Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present controverting evidence. Furthermore, SBFA's claim that this "single example" is not representative only highlights the need for individualized inquiry to determine the accuracy of the disclosures required by the Regulations. Finally, "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | |
| 40. | If the borrower does not have enough money to pay Forward because it used its sales receipt for other, necessary business costs, such as payroll, or blocks | Disputed in part.<br><br>Disputed that the cited contractual provision deals with use of cash in the account from which the provider |

44

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Forward's debit to pay its employee, the borrower is in breach. "Customer will not take any action to reduce … prevent the deposit of all Future Receipts into the Approved Account." | is entitled to collect.<br><br>Admitted that the recipient is obligated to keep the provider's designated percentage of receipts in its account for the provider to collect. |
| | *Evidence:*<br>▪ Ex. 13 at p. 219: Customer's Representations, Warranties and Covenants (Dkt. 52-15) | Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 40.  Department's Response:<br><br>SBFA does not dispute, in fact it admits the key elements of the stated fact. In addition, SBFA alleged dispute is unsupported by the evidence – the "Approved Account" is the account "into which all of Customer's 'Future Receipts' are | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | deposited" and from which the lender is authorized to collect. Ex. 13 at p. 217, Dkt. 52-15. The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 41. | Once the borrower breaches the contract, it triggers a whole host of remedies Forward can seek including $2,500 in "liquidated damages" and a collection action as well as a personal guarantee against the owner. *Evidence:* • Ex. 13 at pp. 218, 219, 222: Principal's Guarantee of Performance and Liability for Breach of Representation, Warranty, or Covenant; Blocked Account Damages, Remedies (Dkt. 52-15) | Disputed in part. Dispute the implication that remedies for breach of commercial contract is commercially unreasonable or unconscionable. Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction. *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumuly Depo. at 106:5-15; ECF |

46

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| 41. Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present controverting evidence. Finally, "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). | | |
| 42. | Kapitus limits a reconciliation to "once every 30 days" regardless of whether the payment is due daily or weekly.<br><br>*Evidence:*<br>▪ Ex. 14 at pp. 231, 266: Fixed ACH Terms (Dkt. 52-16) | Admitted. |
| 43. | Kapitus's contract states that "[s]eller will not … permit any event to occur that could cause diversion of any of Seller's receipts."<br>*Evidence:*<br>▪ Ex. 14 at p. 237: Events of Default (Dkt. 52-16) | Admitted. |
| 44. | Upon breach, the outstanding amount is accelerated and "become due and payable in full immediately." The business owner becomes personally liable to Kapitus.<br><br>*Evidence:* | Disputed in part.<br><br>Dispute the implication that the business owner gives an unconditional guaranty of payment. Upon a breach of the contract, Kapitus is entitled to immediate payment of the full amount of |

47

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | ▪ Ex. 14 at pp. 237, 643: Remedies for Default, Personal Guaranty of Performance (Dkt. 52-16)<br>▪ Ex. 16 at 311: Levitin Expert Report, ¶¶ 70-76 (Dkt. 52-18)<br>▪ Ex. 25 at pp. 469, 476: Remedies for Default, Guaranty | receipts collected, and that, under certain circumstances, a business owner who has signed a performance guaranty may be personally liable.<br><br>*Evidence*: ECF 52-16. |
| | 44. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present any controverting evidence. | |
| 45. | Upon breach, Kapitus can enforce its security interest in all collateral, which includes all receivables, inventory, equipment, intangibles, investment, cash, and UCC Article 9 items "whether now or thereafter owned or acquired by [the borrower] and wherever located, and all proceeds of them" not just the receivables Kapitus purportedly bought.<br><br>*Evidence:*<br>▪ Ex. 14 at pp. 237, 640: Remedies for Default, Security Agreement (Dkt. 52-16)<br>▪ Ex. 16 at 309: Levitin Expert Report, ¶ 61 (Dkt. 52-18)<br>▪ Ex. 25 at p. 473: Security Agreement (Dkt. 52-27) | Admitted. |
| 46. | Kapitus records a UCC statement against both its loan and sales-based financing borrowers and the | Disputed in part.<br><br>Disputed that recipients of sales- |

48

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | collateral it takes against both borrowers is identical.<br>*Evidence:*<br>▪ Ex. 14 at pp. 235: UCC Agent (Dkt. 52-16)<br>▪ Ex. 22 at. p. 417: Carlson Depo., pp. 225:7-18, 226:9-23. (Dkt. 52-24)<br>▪ Ex. 25 at p. 467: UCC Agent (Dkt. 52-27) | based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Admit the remainder, but immaterial.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |
| | 46. Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |

49

| | | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|---|
| | 47. | Kapitus' contracts contains a "cross-default" provision when a borrower breaches one contract with Kapitus, it is automatically deemed to have breached any other contract with Kapitus, even if it is fully complying with it.<br><br>*Evidence:*<br>▪ Ex. 22 at p. 419: Carlson Depo., pp. 240:23-242:18. (Dkt. 52-24)<br>▪ Ex. 14 at pp. 237, 641: Events of Default, Cross-Collateral (Dkt. 52-24)<br>▪ Ex. 25 at 469, 474: Events of Default, Cross-Collateral (Dkt. 52-27) | Disputed in part.<br><br>Dispute the implication that this type of provision is commercially unreasonable or unconscionable. In all commercial contexts, it is very common for a default under one contract between a set of parties to cause a default under other contracts between the same set of parties.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13, 241:5-242:18; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

50

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 47. Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>SBFA does not dispute that lenders do this too. In addition, SBFA's additional fact that "In all commercial contexts, it is very common for a default under one contract between a set of parties to cause a default under other contracts between the same set of parties" is unsupported by admissible evidence. *See* Department's Objection No. 4 to SBFA's Evidence (witness lacks personal knowledge and testimony is inadmissible lay opinion), Dkt. 83-2. | |
| 48. Kapitus admits that cross-default is "a common condition" that "[m]ost lenders have."<br><br>*Evidence:*<br>▪ Ex. 22 p. at 419: Carlson Depo., pp. 240:23-242:18 (Dkt. 52-24) | Admitted. |
| 49. According to Kapitus, it is a lender when it enters a loan transaction, but it is not a lender when it signs a sales-based financing contract.<br><br>*Evidence:*<br>▪ Ex. 22 at p. 415: Carlson Depo., pp. 216:2-19; 240:23-242:18 (Dkt. 52-24) | Admitted. |
| 50. Federal Reserve Board's study shows that small business owners "view [sales-based financing] companies … as lenders." | Disputed in part.<br><br>Disputed that Defendant properly laid foundation to establish admissibility or reliability of the |

51

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | *Evidence:*<br>■ Yoo Decl., ¶ 2<br>■ Ex. 5 at p. 14: "Browsing to Borrow: 'Mom & Pop' Small Business Perspectives on Online Lenders" (Dkt. 52-7)<br>■ Ex. 16 at pp. 312-313: Levitin Expert Report, ¶¶ 82-88 (Dkt. 52-18) | Federal Reserve Board's study, which is based on an online focus group of 42 participants and for which the data reported is unavailable, states that small business owners view all providers of commercial financing as lenders.<br><br>*Evidence*: ECF No. 52-6 at 33. |

50. Department's Response:

SBFA seemingly objects to the Federal Reserve Board study introduced by the Department on the basis of foundation but cites no supporting legal authority. The objection should be denied on this basis alone. In any event, in its moving papers, the Department established that the study is self-authenticating because it is a publication issued by a public authority – the Federal Reserve Board. Fed. R. Evid. 902(5); Yoo Decl. ¶ 2, Dkt. 52-6. Thus, the Department has laid a proper foundation for this study for purposes of summary judgment. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989) (on summary judgment proper foundation requires documents to be authenticated). SBFA does not otherwise dispute the Federal Reserve Board study and thus, this fact is undisputed.

| 51. | SBFA's own website states that "Our members have developed efficient lending platforms."<br>*Evidence:*<br>■ Ex. 22 at p. 428: Carlson 30(b)(6) Depo., pp. 17:7-18:20 (Dkt. 52-24) | Disputed in part.<br><br>Dispute the implication that any of SBFA's members describe sales-based financing as a "loan." Some of SBFA's members are lenders who have developed efficient lending platforms.<br><br>*Evidence*: Deposition of Jesse Carlson, 9/1/23 ("Carlson II Depo."), attached to Brodsky Decl. as Exhibit 6, at 18:11-20. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 51. Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present any controverting evidence. | |
| 52. | When queried, one of SBFA's 30(b)(6) witnesses stated that the website was using "lending" "in a colloquial sense."<br><br>*Evidence:*<br>▪ Ex. 22 at p. 428: Carlson 30(b)(6) Depo., pp. 17:7-18:20 (Dkt. 52-24) | Admitted.<br><br>As testified to by Mr. Carlson, the witness in question: "I would note that most of the members -- not every member of SBFA offers closed-end credit products, so lending is being used in a colloquial sense and is not necessarily applicable to every member. It's easier to say they have an efficient lending platform as opposed to saying an efficient lending and sales- based financing platform since it's easier to refer to the lending product which a majority of the members offer."<br><br>*Evidence*: Carlson II Depo. at 18:11-20 |
| 53. | Kapitus requires all borrowers to obtain business interruption insurance and be named as "a loss payee and additional insured."<br><br>*Evidence:*<br>▪ Ex. 14 at p. 236: Insurance (Dkt. 52-16) | Disputed in part.<br><br>Disputed that recipients of sales-based financing are "borrowers." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance |

53

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 25 at p. 888: Insurance (Dkt. 52-27) <br> ▪ Ex. 16 at p. 312: Levitin Expert Report, ¶ 80 (Dkt. 52-18) | provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction. <br><br> Admit the remainder. <br><br> *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24,134: 23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumuly Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

53. Department's Response:

SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

| 54. | According to the Federal Reserve's study published in 2018, more than half of participant-small businesses "expressed dissatisfaction" with | Disputed in part. <br><br> Disputed that Defendant properly laid foundation to establish admissibility or reliability of the |

54

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| online lenders, and one of the major sources of the complaints was the lack of consistency across products which "ma[de] it difficult for small business owners to estimate [the cost] of the financing and to compare products." According to the study, small businesses "didn't necessarily know—or care—about technical distinctions between traditional loans and other credit products, such as [sales-based financing]." They simply wanted disclosures containing terms that are "familiar to them; that is, discussed in a manner typically used for traditional credit products" in a "standardized" form that includes "all costs (that is, no hidden fees)."  When asked what information was important, they chose "APR, repayment amount, frequency of payments, and prepayment penalties."  The vast majority also wanted information early on even though "actual [figures] may vary" because such information would allow them "to compare options and to make decisions on whether to apply." <br><br> *Evidence:* <br> ▪ Ex. 5 at pp. 15, 24, 33-34, 36 (Dkt. 52-7) <br> ▪ Ex. 16: Levitin Expert Report, ¶¶ 89-111 (Dkt. 52-18) | Federal Reserve Board's study, which is based on an online focus group of 42 participants and for which the data reported is unavailable, states that small business owners view all providers of commercial financing as lenders. <br><br> Immaterial, as according to this study, when shown a disclosure for a close-end credit product, which is not at issue in this litigation, the participants in this study said that APR was one of four metrics that the participants thought were helpful. <br><br> *Evidence*: ECF No. 52-7 at 27-28, 32. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 54. Department's Response: <br><br> SBFA seemingly objects to the Federal Reserve Board study introduced by the Department on the basis of foundation but cites no supporting legal authority. The objection should be denied on this basis alone. In any event, in its moving papers, the Department established that the study is self-authenticating because it is a publication issued by a public authority – the Federal Reserve Board. Fed. R. Evid. 902(5); Yoo Decl. ¶ 2, Dkt. 52-6. Thus, the Department has laid a proper foundation for this study for purposes of summary judgment. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989) (on summary judgment proper foundation requires documents to be authenticated). <br><br> SBFA does not otherwise dispute the Federal Reserve Board study and thus, this fact is undisputed. SBFA attempts to attack the relevance of this study. But the very evidence it points to illustrates otherwise. Study participants were not only shown a closed-end product (Product B), they were also shown sales-based financing products. Ex. 5 at pp. 26-27 (Product A and C), Dkt. 52-7. In addition, the sample disclosure box shown in the study that led respondents to state that they valued the APR disclosure does not state it is describing a closed-end product and SBFA offers no reason to think that it is. Ex. 5 at p. 22, Dkt. 52-7. Even if the product described is a closed-end product, respondents' comments concerning APR are still relevant, especially where they had seen a sales-based financing product earlier in the study. | |
| 55. The Regulations employed all four metrics cited by the small businesses in the Federal Reserve's study. <br><br> *Evidence:* <br> ▪ Cal. Code Regs. tit. 10, §§ 911(a)(4), (a)(6), (a)(7), (a)(10), 914(a)(3), (a)(5), (a)(7), (a)(9), (a)(10). | Disputed. The Regulations call for providers to disclose estimates of the metrics. <br><br> *Evidence:* Cal. Code Regs. tit. 10, §§ 911(a)(4), (a)(6), (a)(7), (a)(10), 914 (a)(3), (a)(5), (a)(7), (a)(9), (a)(10). |

56

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 55. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). It is undisputed that the Regulations employ the metrics cited in the Federal Reserve's study. It is immaterial that to help customers understand how the metrics are calculated, the Regulations provide for them to be estimates. | |
| 56. | Consistent with the survey participants' complaints, some of SBFA members' contracts executed prior to the Regulations do not show these metrics and some continue to not disclose them.<br><br>*Evidence:*<br>■ Ex. 14 at p. 252 (Dkt. 52-16)<br>■ Ex. 10 at p. 146: Purchase and Sale of Future Receivables (Dkt. 52-12)<br>■ Ex. 11 at p. 166: Primary Purchase and Sale of Future Receivables, Terms (Dkt. 52-13) | Disputed in part.<br><br>Dispute the implication that it is improper or misleading for providers of sales-based financing to not disclose APR or frequency of payments, as those are not metrics that apply to sales-based financing. To the extent Defendant contends that "repayment amount" is equivalent to the amount of receipts purchased by sales-based financing providers, denied that Plaintiff's members do not disclose this number in their contracts. To the extent Defendant contends that "prepayment penalties" are equivalent to contractual provisions in which the provider will accept less than the full amount of receipts it is entitled to collect in exchange for a lump sum, denied that Plaintiff's members do not disclose such provisions in their contracts.<br><br>*Evidence*: ECF No. 52-9; ECF No. 52-10; ECF No. 52-11; ECF No. 52-12; ECF No. 52-13; ECF No. 52-14. |

57

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 56. Department's Response: | | |

56. Department's Response:

SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). The Department did not contend that every SBFA's members' contract failed to disclose the relevant metrics. That some of them did or do disclose such metrics only highlights the need for an individualized inquiry to determine whether the disclosures required by Regulations are factual. Indeed, SBFA does not point to any specific provision of its members' contracts to dispute this fact.

| 57. | APR calculates the cost of the financing "over a one-year period" irrespective of the duration of financing products, and thus, allows an "apples-to-apples" comparison across-the-board. *Evidence:* <br> • Yoo Decl., ¶ 15 (Dkt. 52-6) <br> • Ex. 18 (Dkt. 52-20) <br> • Ex. 16 at pp. 317-319, 322-323: Levitin Expert Report, ¶¶ 112-125, 144-148 (Dkt. 52-18) | Disputed. <br><br> As debated at length during the passage of SB1235 and the rulemaking for the Regulations, and as cited in Bill Analysis by California's Senate Committee on Banking and Financial Institution, APR "can be confusing if one uses it to compare financing of different lengths, when one of those financing products has a term of less than one year." <br><br> The term APR is also frequently confused with the term simple interest. <br><br> And the challenge of using APR to help small businesses understand the types of financing they are being offered is further complicated if an open-end credit product is compared with a closed-end product using APR." <br><br> When the Federal Reserve Board undertook a review of open-end (non- mortgage) disclosure rules in |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | 2009, it eliminated effective APR as a measure of the cost of credit, due to consumer confusion.<br><br>The federal Consumer Financial Protection Bureau (CFPB) reached a similar conclusion during 2013 in the context of work it did to improve mortgage disclosures. After extensive consumer testing, the CFPB concluded that "consumer testing and historical research indicate that consumers do not understand the APR and do not use it when shopping for a loan. Highlighting the APR on the disclosure form contributes to overall consumer confusion and information overload, complicates the mortgage lending process, and hinders consumers' ability to understand important loan terms.<br><br>DFPI itself acknowledges that APR is a confusing metric that individuals of all levels of financial sophistication have trouble understanding and that individuals frequently confuse an APR with an interest rate. DFPI further acknowledged at deposition that the use of APR in the context of sales-based financing was "controversial."<br><br>*Evidence*: 52-8 at 9-11; Mattson Depo. at 46:5-6, 56:1-57:17, 61:14. |

59

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 57. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA's evidence merely shows that the commenters to a bill analysis to SB 1235 (and others) have found TILA's calculation of APR "incomprehensible." Dkt. 52-8 at 9. But neither this nor any other evidence SBFA presents disputes the underlying fact that APR calculates the cost of financing over a one-year period, enabling across-the-board apple-to-apples comparisons. Indeed, it is undisputed that TILA's APR calculations apply to products with terms of significantly less than year, like pay-day loans whose typical term is a pay period, i.e., two weeks. *Id.*; SUF 58.<br><br>The facts about the Department's position on APR are based on inadmissible deposition testimony. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. In addition, the evidence SBFA cites does not support the stated fact. Mr. Mattson's testimony on APR was given in his personal capacity not as the Department's representative. *See* Notice of Jesse Mattson Deposition, Dkt. 83-4. Finally, that different opinions about APR were expressed during the rulemaking process, without any reference to even what those opinions were, does not show that APR is somehow inaccurate or wrong. *See* Mattson Dep. 180:3-19, Dkt 83-4.<br><br>The remaining "facts" SBFA presents illustrate the Legislature's debate about including APR in the underlying statute (not the Regulations). This debate is irrelevant to the stated fact and does not controvert it. | |
| 58. CFPB recommends borrowers to use APR in comparing financing options: "You don't need to worry about the math. Just keep in mind that the APR does matter because it provides a shorthand way for you to compare the cost of two or more loans."<br><br>*Evidence:*<br>▪ Yoo Decl., ¶ 16 (Dkt. 52-6)<br>▪ Ex. 19 (Dkt. 52-21) | Admitted, but immaterial, that a website from the CFPB dealing with payday lending, which is not at issue in this matter, contains the quoted language. |

60

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 58. | Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. SBFA argues that payday lending is immaterial to this case but SBFA has argued that APR for products with short terms is allegedly misleading. Nonetheless, it is undisputed that CFPB and TILA require the disclosure of APR for payday loans which have terms as short as two weeks. *See* Ex. 19, Dkt. 52-21. SBFA does not argue that this is somehow misleading. | |
| 59. | The length of lenders' contracts vary from 10 pages to 21 pages, and the required disclosures occupy at most 2 pages.<br><br>*Evidence:*<br>▪ Yoo Decl., ¶ 23 (Dkt. 52-6) | Disputed in part.<br><br>Disputed that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction.<br><br>Admit remainder.<br><br>*Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumuly Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 59. Department's Response:<br><br>SBFA does not dispute, in fact it admits the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).<br><br>The additional facts SBFA cites do not create a factual dispute and are not supported by admissible evidence. Thus, they should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2. | |
| 60. There is no restriction as to what lenders may provide in addition to the required disclosures or state in those additional documents.<br><br>*Evidence:*<br>▪ Ex. 8 at p. 74: Response to Request for Admission No. 13 (Dkt. 52-10)<br>▪ Yoo Decl., ¶ 5 (Dkt. 52-6)<br>▪ Carriere Decl., ¶ 3 (Dtk. 52-1) | Disputed in part.<br><br>Disputed, as providers are not free to modify or add to the disclosures except as specifically provided in the Regulations, even if the providers want to add helpful, truthful, or clarifying information.<br><br>Further, DFPI did no analysis of whether allowing companies to craft their own disclosures would be more or less effective than the form prescribed by the regulations.<br><br>Disputed that providers of sales-based financing are "lenders." Sales-based financing is a purchase and sale transaction, not a loan. It has no interest rate; no fixed repayment schedule; no fixed term; and payment is not unconditional. The finance provider's collection of the receipts it purchased— and the amount of time it takes to collect those receipts—is entirely contingent on the future |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | performance of the recipient counterparty. Plaintiff disputes Defendant's characterization of sales-based financing as a loan transaction. |
| | | *Evidence*: Bakes Depo. at 20:9-22:4, 22:18-24, 134:23, 195:7-24; Brown Depo. at 22:1-24:3, 130:15-131:2, 116:3-11; Carlson I Depo. at 157:18-160:3, 211:16-213:13; Tumulty Depo. at 106:5-15; ECF No. 52-14 at 15-17; ECF No. 52-15 at 3; ECF No. 52-16 at 2; Mattson Depo. at 105:17-106:18; 131:1-10, 134:4, 134:10, 134:23-135:3, 140:2-10. |

60. Department's Response:

SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.

Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). That the Regulations provide for minimal modification of the disclosures themselves does not controvert the stated fact. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017).

| 61. | During the rulemaking process, the Department determined that complying with the Regulations would not be excessively expense and Microsoft Excel provides an affordable means to calculate APRs pursuant to the Regulations.<br><br>*Evidence:* | Disputed.<br><br>DFPI estimated that it would cost providers $25,000 in upfront expense to comply with the Regulations. DFPI performed no analysis of the cost to providers to ensure ongoing compliance with the Regulations.<br><br>With respect to using Excel to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Carriere Decl., ¶ 5 (Dtk. 52-1)<br>▪ Ex. 2 at p. 3: Response to Comment 1.2.14 (Dkt. 52-4)<br>▪ Ex. 3 at pp. 3-63 (Dkt. 52-5)<br>▪ Ex. 15 at p. 7: O'Neil Expert Report (Dkt. 52-17)<br>▪ Yoo Decl., ¶ 12 (Dkt. 52-6) | perform APR calculations, Plaintiff disputes that it is possible to use this program to calculate APR with sufficient accuracy to comply with the tolerance requirements of the Regulations.<br><br>*Evidence*: Mattson Depo. at 90:14-93:23, 94:19-95:14; Tumulty Depo. 116:13- 120:21, 125:20-127:3; Carlson I Depo. at 142:1-143:15. |

61. Department's Response:

SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection Nos. 1 and 5 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts and testimony regarding APR calculation lacks foundation and is inadmissible lay opinion), Dkt. 83-2.

Even if the evidence was admissible, the Department does not dispute that it estimated complying with the Regulations was likely to impose a $25,000 upfront expense and thus, there is no factual dispute. The Department submits that such an expense is not excessive, especially where SBFA has failed to present any evidence regarding its other operational costs to compare. Indeed, from two to three of the sales-based financing agreements at produced in this action, a lender would generate enough revenue to pay for that upfront expense.

*See* Credibly charged $30,696 for an advance of $99,900 (Ex. 10-141, Dkt. 52-12) and Rewards Network made $4,200 while lending $6,000 (Ex. 11-165, Dkt. 52-13). Kapitus charged $11,250 for an advance of $30,000 (Ex. 14-229; Dkt. 52-16), and it was just one contract out of more than 950 contracts Kapitus signed since the Regulations took effect. (Ex. 22-408, Dkt. 52-24).

| 62. | Kapitus expressly admitted that the cost of providing disclosures does not outweigh the benefits of doing business in California. | Disputed in part.<br><br>Dispute the implication that Kapitus testified it was not burdened by the Regulations. Merely because a |

64

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:*<br>▪ Ex. 22 at p. 408: Carlson Depo., pp. 136:23-137:4 (Dkt. 52-24)<br>▪ Ex. 24 at p. 445: Tumulty Depo. p. 135:2-7 (Dkt. 52- 26) | business is severely burdened as opposed to regulated out of existence does not mean that the Regulations are constitutional. |

62. Department's Response:

SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present any controverting evidence.

| 63. To date, SBFA has failed to state what their members' costs of compliance have been or to otherwise show that those costs are out of line with their operating costs.<br><br>*Evidence:*<br>▪ Ex. 22 at p. 413: Carlson Depo., pp. 178:11-179:19 (Dkt. 52-24)<br>▪ Ex. 24 at p. 452: Tumulty Depo., pp. 158:14-159:9 (Dkt. 52-26)<br>▪ Ex. 20 at p. 375: Bakes Depo., p. 252:3-22 (Dkt. 52-24)<br>▪ Ex. 7 at p. 64: SBFA's Response to the Department's Request for Production of Documents No. 102 (Dkt. 52-9)<br>▪ Yoo Decl., ¶ 4 (Dkt. 52-6) | Disputed.<br><br>Plaintiff's members have spent hundreds of thousands of dollars in out- of-pocket expenses for lawyers and consultants to assist in complying with the regulations and have dedicated hundreds of employee hours to prepare for the Regulations and comply with them on an ongoing basis.<br><br>*Evidence*: Tumulty Depo. at 131:17-132:18, 136:8 -137:6; Carlson I Depo at 134:3-16,137:20-138:9, 161:11-16, 179:9-14; Carlson II Depo. at 149:10-150:4, 157:2-17; Bakes Depo. at 252:3-253:23. |

65

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 63. Department's Response:<br><br>SBFA fails to present admissible evidence in support of its alleged dispute and thus, this fact is undisputed. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if the evidence was admissible, SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA's proffered evidence further confirms that SBFA's members have not assigned a specific dollar amount to their costs of compliance or shown that those costs are out-of-line with their other operating costs. | |
| 64. As discovery in this action has shown, the required disclosures are invariably presented to customers with the underlying contracts, but none of the participants in SBFA's survey received the disclosures with the underlying contract.<br><br>*Evidence:*<br>▪ Yoo Decl., ¶ 23  (Dkt. 52-8)<br>▪ Dr. Kingsley's Expert Report, pp. 58-63<br>▪ Carriere Decl., ¶ 7 (Dkt. 52-1) | Disputed in part.<br><br>Disputed the implication that Dr. Kinglsey's survey was performed improperly or that this fact provides any basis to exclude Dr. Kinglsey's testimony.  Plaintiff directs the Court to its response to Defendant's motion to exclude Dr. Kingsley's testimony, ECF No. 67. |
| 64. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present any controverting evidence. | |
| 65. Previously, the Department determined that certain recourse options such as business disruption insurance suggests that a transaction is a loan.<br><br>*Evidence:*<br>▪ Carriere Decl., ¶ 4 (Dkt. 52-1) | Disputed in part.<br><br>Dispute the implication that Defendant's opinion letter determined whether the subject transaction was a loan, although it noted some characteristics of the transaction that suggested it could be a loan. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ▪ Ex. 1: Department's opinion letters (Dkt. 52-2) | |

| | |
|---|---|
| 65. Department's Response:<br><br>SBFA fails to show a "genuine dispute" as to a "material fact." Fed. R. Civ. Proc. 56(c). SBFA fails to present any controverting evidence. | |

## DEPARTMENT'S RESPONSES TO SBFA'S ADDITIONAL MATERIAL FACTS

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| 1. | For purposes of calculating the estimated metrics for sales-based financing under the "Historical Method," providers must use a prescribed methodology that sometimes differs from the internal methodology used by the provider. This often results in an "Estimated Payment" on the compelled disclosure that differs from the initial payment amount stated in a Fixed-ACH Remittance Sales-Based Financing contract. Small businesses in California are affirmatively confused by this discrepancy.<br><br>Providers choose the "Historical Method" over the alternative methodology for calculating the estimated metric, the "Underwriting Method," because it imposes a significant additional | Inadmissible.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts),<br><br>To the extent the evidence is admissible, undisputed as to underlying facts. The cited evidence does not support the alleged fact that the "Underwriting Method" "is impossible to comply with." |

67

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | regulatory burden on providers and is impossible to comply with given the significant variance between the estimated metrics and actual performance of sales-based financing.<br><br>*Evidence:* Bakes Depo. at 82:10-88:10, 103:7-16, 153:20-155:18, 171:17-172:8; Tumulty Depo. at 50:20-55:19; Carlson I Depo. at 145:14-146:2. | |
| 2. | Under the Regulations, providers of open-end credit must make disclosures that assume that the recipient will make an initial draw of their full approved credit limit, that the recipient will choose to make only minimum monthly payments, and that the recipient will not make any subsequent draws. Cal. Code Regs. tit. 10, §§ 911(a)(2) and 940(c). This requires providers to present lines of credit in the compelled disclosures as if they are close-end loans. The upshot is that, using a close-end APR calculations for open-end credit yields a materially higher APR for the product. TILA has an APR calculation for open-end credit that DFPI elected not to use in the Regulations.<br><br>*Evidence*: Tumulty Depo. at 73:10-74:1, 74:13-75:2, 75:20-76:9; Carlson II Depo at 138:3-16. | Inadmissible.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible, undisputed for purposes of this motion. |

68

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| 3. | DFPI performed no analysis regarding whether, for open-end credit, borrowers used the product consistently with the assumptions required in the compelled disclosures.<br><br>*Evidence:* Carriere Depo. at 115:21-23. | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>In addition, the cited evidence does not support the stated fact. |
| 4. | For Rapid Finance's 579 open-end credit transactions consummated between January 2022 and June 2023, less than 20% of borrowers borrowed the full amount of the credit line at the beginning of the transaction and made no further draws.<br><br>*Evidence*: Tumulty Depo. at 249:15- 260:18 | Inadmissible.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible, undisputed for purposes of this motion. |
| 5. | As a general matter, the compelled disclosures are not effective in conveying the features of any financing – even the least complex – in such a way that a strong majority of participants can answer evaluative questions correctly and accurately. | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 6 to SBFA's Evidence (SBFA's expert's report is unauthenticated and not part |

69

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | *Evidence:* Expert Report of Barbra Kingsley, Ph.D. ("Kinglsey Report") at ¶ 50, ECF 64-2. | of the summary judgment record), Dkt. 83-2; Department's Motion to Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.<br><br>In addition, this fact is immaterial. The effectiveness of the disclosures is not at issue on the Department's motion. *See, e.g., Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy Central Hudson, 'such evidentiary parsing is hardly necessary' under *Zauderer*") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)). The cited evidence also fails to present the disclosures as they are meant to be seen—side-by-side with an offer of financing describing the product. Cal. Fin. Code § 22802(a); Cal. Code Regs. tit. 10, § 900(a)(5), (a)(29); Carriere Decl. ¶ 7, Dkt. 52-1. Thus, the cited evidence does not fit the facts of this case and is irrelevant. *See Lloyd v. Conseco Fin. Corp.*, No. CV 00-10452 MMM(RNBx), 2001 WL 36097624, at *5 (C.D. Cal. Oct. 19, 2001). |
| 6. | As to the disclosures for sales-based financing, recipients do not understand the nature or terms of the transaction being represented. Only 12.8% of recipients of the compelled disclosures for sales-based | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 6 to |

70

| SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|
| financing understand that the transaction being represented was the purchase and sale of future receipts. Over 35% think the transaction being represented is a loan and the recipients frequently misidentify the APR as an interest rate. Compared to recipients of the simplest form of disclosure, for close-end credit, recipients of the sales-based financing disclosures performed significantly worse when asked to identify how funding is provided (in one lump sum rather than over time); performed significantly worse when asked to identify the nature of repayment (variable and based on business performance, rather than fixed); and demonstrated that they had an irreconcilable misunderstand regarding how the financing works by answering that the amount of payments are fixed but the term is variable.<br><br>*Evidence:* Kinglsey Report at ¶¶ 49, 52. | SBFA's Evidence (SBFA's expert's report is unauthenticated and not part of the summary judgment record), Dkt. 83-2; Department's Motion to Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.<br><br>In addition, this fact is immaterial. The effectiveness of the disclosures is not at issue on the Department's motion. *See, e.g.*, *Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy Central Hudson, 'such evidentiary parsing is hardly necessary' under *Zauderer*") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)). The cited evidence also fails to present the disclosures as they are meant to be seen—side-by-side with an offer of financing describing the product. Cal. Fin. Code § 22802(a); Cal. Code Regs. tit. 10, § 900(a)(5), (a)(29); Carriere Decl. ¶ 7, Dkt. 52-1. Thus, the cited evidence does not fit the facts of this case and is irrelevant. *See Lloyd v. Conseco Fin. Corp.*, No. CV 00-10452 MMM(RNBx), 2001 WL 36097624, at *5 (C.D. Cal. Oct. 19, 2001).<br><br>The cited evidence does not show respondents misunderstood the financial products at issue because of the disclosures or due to other causes, such as pre-existing beliefs. For |

71

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | | example, the Federal Reserve Study that used different disclosures also found respondents confused sales-based financing products for loans and misidentified the APR as an interest rate. *See* Ex. 5 at pp. 29-30, Dkt. 52-7. |
| 7. | Compared to recipients of the simplest form of disclosure, for close-end credit, recipients of the open-end credit disclosures performed significantly worse in correctly identifying almost every feature of the financing. This low level of overall correct responses suggests significant confusion, likely a result of the assumptions that are required to be used for disclosures for open-end credit. The pattern of responses suggests that, notwithstanding the disclaimer at the top of the disclosure form, participants took away the misleading conclusion that the offered financing is a lump sum, fixed-rate loan rather than a line of credit which can be used over time.

*Evidence:* Kinglsey Report at ¶ 51. | Inadmissible and immaterial.

This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 6 to SBFA's Evidence (SBFA's expert's report is unauthenticated and not part of the summary judgment record), Dkt. 83-2; Department's Motion to Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.

In addition, this fact is immaterial. The effectiveness of the disclosures is not at issue on the Department's motion. *See, e.g.*, *Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy Central Hudson, 'such evidentiary parsing is hardly necessary' under *Zauderer*") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)). The cited evidence also fails to present the disclosures as they are meant to be seen—side-by-side with an offer of |

72

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | | financing describing the product. Cal. Fin. Code § 22802(a); Cal. Code Regs. tit. 10, § 900(a)(5), (a)(29); Carriere Decl. ¶ 7, Dkt. 52-1. Thus, the cited evidence does not fit the facts of this case and is irrelevant. *See Lloyd v. Conseco Fin. Corp.*, No. CV 00-10452 MMM(RNBx), 2001 WL 36097624, at *5 (C.D. Cal. Oct. 19, 2001). |
| 8. | The Disclosures do not effectively communicate key financing terms and features across different types of financing offers. Moreover, because these terms and features are not communicated effectively, the Disclosures appear to create confusion about and a distorted understanding of both open-end credit and sales-based financing.<br><br>*Evidence:* Kinglsey Report at ¶ 56. | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 6 to SBFA's Evidence (SBFA's expert's report is unauthenticated and not part of the summary judgment record), Dkt. 83-2; Department's Motion to Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.<br><br>In addition, this fact is immaterial. The effectiveness of the disclosures is not at issue on the Department's motion. *See, e.g., Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy Central Hudson, 'such evidentiary parsing is hardly necessary' under Zauderer") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)). The cited evidence also fails to present the |

73

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | | disclosures as they are meant to be seen—side-by-side with an offer of financing describing the product. Cal. Fin. Code § 22802(a); Cal. Code Regs. tit. 10, § 900(a)(5), (a)(29); Carriere Decl. ¶ 7, Dkt. 52-1. Thus, the cited evidence does not fit the facts of this case and is irrelevant. *See Lloyd v. Conseco Fin. Corp.*, No. CV 00-10452 MMM(RNBx), 2001 WL 36097624, at *5 (C.D. Cal. Oct. 19, 2001). |
| 9. | All groups tested by Dr. Kingsley were unable to accurately differentiate the finance charge and APR of an offer subject to the regulations from an offer subject to TILA.

*Evidence*: Kinglsey Report at ¶ 54. | Inadmissible and immaterial.

This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 6 to SBFA's Evidence (SBFA's expert's report is unauthenticated and not part of the summary judgment record), Dkt. 83-2; Department's Motion to Exclude Expert Report and Testimony of Barbra Kingsley, Dkt. 64.

In addition, this fact is immaterial. The Regulations do not presuppose that small businesses can differentiate between APR for the Regulations or APR for TILA. |
| 10. | Small businesses of the type who use Plaintiff's members' products interchangeably use consumer and business credit to finance their operations. | Inadmissible and immaterial.

This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* |

74

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | *Evidence*: Deposition of Arun Narayan, attached to Brodsky Decl. as Exhibit 8, at 12:11-19:15. | Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>Even if admissible, the cited evidence provides no support for the stated fact. The witness merely stated his belief that through credit checks, Kapitus would be able to tell whether a small business customer was applying for both commercial credit and consumer credit. But this is pure speculation and the witness did not even estimate for what percentage of Kapitus's customers this would be true. |
| 11. | DFPI did no analysis as to whether small businesses use consumer credit to finance their operations.<br><br>*Evidence*: Mattson Depo. at 98:6. | Inadmissible.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible, undisputed for purposes of this motion. |
| 12. | The Regulations' prescribed language that providers of sales-based financing are required to include in describing the "estimates" is false and misleading. | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* |

| | SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|---|
| | For example, providers are required to describe the amount of receipts they are purchasing as an "Estimated Total Payment Amount." This does not accurately describe the way sales-based financing works.<br><br>*Evidence*: Carlson I Depo. at 167:21- 169:1; Tumulty Depo. at 64:2-17, 141:13-142:8, 143:11-145:4, 172:13-173:2;  Brown Depo.  at  95:24-96:19, 101:7-16. | Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible, the underlying facts about how sales-based financing works are undisputed. It is only the description of those facts that SBFA questions. "Plaintiff cannot create a dispute of material fact based on immaterial semantic distinctions." *Ulrich v. Moody's Corp.*, No. 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, at *3 n.6 (S.D.N.Y. Mar. 31, 2017). |
| 13. | DFPI performed no analysis, research, or investigation whatsoever, before or after the Regulations were passed, to determine whether the compelled disclosures were confusing (or comprehensible) to small business owners. DFPI does not know and has not attempted to learn whether the disclosures allow small business owners to effectively comparison shop commercial finance products. Nor does it have any idea whether the disclosures increase small business owners' confidence in making financing decisions, or would help them in any way at all. DFPI issued an RFP for a study into the effectiveness and comprehensibility of the | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible and except as stated below, these facts are undisputed but immaterial. The effectiveness of the disclosures is not at issue on the Department's motion. *See*, e.g., *Cigar Ass'n of Am. v. United States FDA*, 315 F. Supp. 3d 143, 171 (D.D.C. 2018) ("Whereas the government would have to provide evidence of a measure's effectiveness to satisfy Central |

| SBFA's Additional Material Facts and Supporting Evidence | Department's Response |
|---|---|
| compelled disclosures but did not commission such a study because it determined that it would be too expensive and time consuming. DFPI performed no studies or research on its own as to the effectiveness and comprehensibility of the compelled disclosures. Indeed, they did no testing whatsoever. Remarkably, not a single small business participated in DFPI's rulemaking.<br><br>*Evidence*: Mattson Depo. at 14:25-15:5, 62:5-6, 67:11-14, 97:12-16, 99:18, 100:3,  100:25, 101:19,  140:14-148:9; Carriere Depo at 98:22-25, 100:13-15, 100:16-101:4. | Hudson, 'such evidentiary parsing is hardly necessary' under Zauderer") (*quoting Am. Meat Inst. v. United States Dep't of Agric.*, 760 F.3d 18, 26 (2014)).<br><br>In addition, the evidence does not support the fact that "not a single small business participated in DFPI's rulemaking." The evidence only shows that on the date of their deposition the Department's witnesses did not specifically recall such participation. |

77

| | **SBFA's Additional Material Facts and Supporting Evidence** | **Department's Response** |
|---|---|---|
| 14. | Separately, both before and after the Regulations were implemented, DFPI performed no analysis, research, or investigation whatsoever into whether the Regulations would cause some commercial finance providers to stop doing business in California, whether the Regulations would decrease the availability of financing for California businesses, or whether the Regulations would make financing more expensive for small businesses.<br><br>*Evidence:* Mattson Depo. at 76:1-12, 85:17-86:4, 86:5-25 | Inadmissible and immaterial.<br><br>This fact is not supported by admissible evidence and thus, should not be considered for purposes of the Department's motion. *See* Department's Objection No. 1 to SBFA's Evidence (SBFA failed to authenticate its deposition excerpts), Dkt. 83-2.<br><br>To the extent the evidence is admissible, this fact is undisputed but immaterial under *Zauderer*. |

Dated:  October 16, 2023

ROB BONTA
Attorney General of California
LISA W. CHAO
MICHAEL D. GOWE
Supervising Deputy Attorneys General


*/s/ Douglas J. Beteta*

Douglas J. Beteta
Rachel J. Yoo

Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

78

## CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |
|---|---|---|---|

I hereby certify that on <u>October 16, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

**DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.

<br>

| | |
|---|---|
| _____ | _____ |
| M. Aguilar | |
| Declarant | Signature |

SA2022803044
84201864.docx

1  ROB BONTA
   Attorney General of California
2  LISA W. CHAO
   MICHAEL D. GOWE
3  Supervising Deputy Attorneys General
   DOUGLAS J. BETETA (SBN: 260377)
4  RACHEL J. YOO (SBN: 293598)
   Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
              Rachel.Yoo@doj.ca.gov
8  *Attorneys for Defendant*
   *Clothilde Hewlett, solely in her official capacity as*
9  *Commissioner of the California Department of*
   *Financial Protection and Innovation*
10

11                IN THE UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                        WESTERN DIVISION

14

15 | **SMALL BUSINESS FINANCE** | Case No.: 2:22-cv-08775-RGK-SK |
16 | **ASSOCIATION,** | **DEFENDANT'S EVIDENTIARY** |
17 | Plaintiff, | **OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF** |
18 | **v.** | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN** |
19 | **CLOTHILDE HEWLETT, solely in** | **THE ALTERNATIVE PARTIAL** |
20 | **her official capacity as commissioner of the California Department of** | **SUMMARY JUDGMENT** |
   | **Financial Protection and Innovation,** | |
21 | | |
22 | | Date:        October 30, 2023 |
   | | Time:        9:00 a.m. |
23 | Defendant. | Courtroom:   850 |
   | | Judge:       Hon. R. Gary Klausner |
24 | | Trial Date:  December 12, 2023 |
   | | Action Filed: December 2, 2022 |
25

26         Defendant Clothilde Hewlett, solely in her official capacity as Commissioner

27 of the California Department of Financial Protection and Innovation (the

28 Department), submits the following evidentiary objections to Plaintiff Small

                                    1

1    Business Finance Association's (SBFA) Opposition and its supporting evidence

2    against the Department's Motion for Summary Judgment, or in the alternative

3    Partial Summary Judgment.

4                              **OBJECTION NO. 1:**

5    **Evidence Objected to:**

6         •    Deposition testimony submitted by SBFA in support of its Opposition.

7    Dkt. 72-3, -4, -5, -6, -7, -8, -9, -10.

8    **Grounds for Objection:**

9         •    Lack of Foundation, Authentication

10            In a motion for summary judgment, deposition testimony not

11   accompanied by a court report's signed certification is not properly authenticated

12   and thus, inadmissible. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th

13   Cir. 2002), Fed. R. Evid. 901, Fed. R. Civ. P. 56(e). *See also Pavone v. Citicorp*

14   *Credit Servs*., *Inc*., 60 F.Supp.2d 1040, 1045 (S.D.Cal. 1997) (excluding deposition

15   transcripts for failure to submit a signed certification from the reporter). SBFA

16   failed to submit a signed certification from the reporter with deposition testimony it

17   submitted, and thus, all deposition testimony it submitted is not properly

18   authenticated and inadmissible.

19                             **OBJECTION NO. 2:**

20   **Evidence Objected to:**

21        •    Deposition testimony of Justin Bakes at 269:22-271:6, 273:1-279:9 (Dkt.

22   72-3, cited in support of ¶ 36 of SBFA's Statement of Genuine Disputed of

23   Material Facts, Dkt. 72-1)

24   **Grounds for Objection:**

25        •    Hearsay

26            Justin Bakes' testimony concerns a spreadsheet showing allegedly

27   confused customers and their complaints regarding the required disclosures

28   collected by Forward. SBFA offers his testimony without submitting the

2

1   underlying spreadsheet.  When asked about who prepared the spreadsheet, Justin

2   Bakes, CEO of Forward, answered, "I don't know who drafted this.  I think it's a

3   combination of different people inputting based on feedback."  (Bakes Depo., p.

4   269:5-10; Dkt. 72-3.)  Thus, there are three layers of inadmissible hearsay regarding

5   Forward's spreadsheet: customer comments, Forward's employees summary of

6   those comments in the spreadsheet, and now Justin Bakes' summary of that

7   summary. Fed. R. Evid. 801, 802. SBFA does not attempt to show a hearsay

8   exception applies to any level of hearsay.

9       • Lack of Foundation

10      Bakes' testimony lacks foundation because he does not have personal

11  knowledge about the customer complaints and who gathered the comments

12  contained in the spreadsheet.  (Bakes Depo., p. 269:5-10; Dkt. 72-3.)

13  **<u>OBJECTION NO. 3:</u>**

14  **<u>Evidence Objected to:</u>**

15      • Declaration of Will Tumlty ¶ 3, at 2:17-21 (Dkt. 72-11)

16      • Declaration of Michael Jesse Carlson, ¶ 3, at 2:17-21 (Dkt. 72-12)

17      • Declaration of Justin Bakes, ¶¶ 3-4, at 2:17-26 (Dkt. 72-13)

18  **<u>Grounds for Objection:</u>**

19      • Hearsay

20      The declarants' summary of their respective company's data is double-

21  hearsay. Fed. R. Evid. 802. First, the declarants' description of the data and second,

22  the underlying data summarizing the companies' operations. See Fed. R. Evid. 801.

23  SBFA fails to present sufficient evidence that an exception to the hearsay rule

24  applies to either level of hearsay. *See, e.g.*, Fed. R. Evid. 803 (requirements of

25  business record's exception including that "the record was kept in the course of a

26  regularly conducted activity of a business . . . and making the record was a regular

27  practice of that activity").

28      • Lack of Foundation

3

1    The statements lack foundation because the declarants fail to establish that

2    they have personal knowledge to make proffered statements. Fed. R. Evid. 602.

3    Instead, they admit that the underlying data were "pulled … from [its' members']

4    databases … by or through [each member's] employees."  In addition, they fail to

5    show how they know the purported variances were calculated.

6    • Best Evidence Rule

7    These declarations, which summarize SBFA members' customer data,

8    violate the best evidence rule because they are offered to prove "the contents" of a

9    "writing" of which the original is not provided.  Fed. R. Evid. 1001, 1002.  SBFA

10    failed to show that the originals are "lost or destroyed" or otherwise

11    unobtainable. *Id*. 1004.  Nor did it show that the writings are "voluminous" to

12    justify the use of a summary. *Id*. 1006. *See U.S. v. Bennett*, 363 F.3d 947, 953 (9th

13    Cir. 2004 (excluding testimony based on observing GPS data for violating the best

14    evidence rule).

15    **OBJECTION NO. 4:**

16    **Evidence Objected to:**

17    • Deposition testimony of Jesse Carlson at 242:8-242:18 (Dkt. 72-6, cited

18    in support of ¶ 47 of SBFA's Statement of Genuine Disputed of Material Facts,

19    Dkt. 72-1)

20    **Grounds for Objection:**

21    • Lack of Foundation

22    Carlson's testimony is without foundation to the extent it is being offered

23    about contractual terms in any commercial context because SBFA has not shown

24    Carlson has such personal knowledge. Fed. R. Evid. 602. The only relevant

25    experience he has been shown to have is his work at Kapitus, a commercial lender

26    and provider of sales-based financing. His testimony should be accordingly limited.

27    • Lay person's opinion

28    Jesse Carlson is not testifying as an expert and thus, his opinion is limited

4

1  to what he perceived or what is helpful to understand his testimony.  Fed. R. Evid.

2  701.  The only relevant experience he has been shown to have is his work at

3  Kapitus, a commercial lender and provider of sales-based financing.

4  **OBJECTION NO. 5:**

5  **Evidence Objected to:**

6  • Deposition testimony of Jesse Carlson at 142:1-143:5 (Dkt. 72-6, cited in

7  support of ¶ 61 of SBFA's Statement of Genuine Disputed of Material Facts, Dkt.

8  72-1)

9  **Grounds for Objection:**

10  • Lack of Foundation

11  His testimony lacks foundation because he did not show that he had

12  personal knowledge to offer testimony about the accuracy of Excel functions in

13  calculating APR. Fed. R. Evid. 602.

14  • Lay person's opinion

15  Jesse Carlson is not testifying as an expert and thus, his opinion is limited

16  to what he perceived or what is helpful to understand his testimony.  Fed. R. Evid.

17  701.  SBFA has not shown that this testimony is based on Carlson's perception. In

18  addition, the proffered testimony is the accuracy of Excel functions in calculating

19  the APR, which is technical or other specialized knowledge within Rule 702, not

20  Rule 701, such testimony is outside the permitted bounds of lay person's opinion

21  testimony.

22  **OBJECTION NO. 6:**

23  **Evidence Objected to:**

24  • Expert Witness Report of Dr. Barbra Kingsley

25  **Grounds for Objection:**

26  • Failure to Authenticate

27  The proponent must produce authenticated evidence to support its claim.

28  Fed. R. Evid. 901.  Dr. Kingsley's report has not been presented by any party on the

1    Department's motion for summary judgment.  Thus, her report is not part of the

2    record for the purpose of the Department's motion and this court should not

3    consider any argument SBFA made on the basis of Dr. Kingsley's report.  In

4    addition, the report has not been properly authenticated. *See Wilborn v. CarMax*

5    *Auto Superstores Cal., LLC*, No. CV 17-1487 DMG (SSx), 2017 U.S. Dist. LEXIS

6    203597, at *7-9 (C.D. Cal. Dec. 11, 2017).

7        • Inadmissible expert testimony

8          Fed. R. Evid. 702; Department's Motion to Exclude Expert Report and

9    Testimony of Barbra Kingsley, Dkt. 64.

10

11   Dated: October 16, 2023          ROB BONTA
                                                Attorney General of California

12                                                   LISA W. CHAO
                                                MICHAEL D. GOWE

13                                                   Supervising Deputy Attorneys General

14

15                                             */s/ Douglas J. Beteta*

16                                                 Douglas J. Beteta
                                              Rachel J. Yoo

17                                                 Deputy Attorney General

18                                             *Attorneys for Defendant Clothilde Hewlett,*

19                                             *solely in her official capacity as Commissioner*
                                          *of the California Department of Financial*
                                          *Protection and Innovation*

20

21

22

23

24

25

26

27

28

6

## CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |
|---|---|---|---|

I hereby certify that on <u>October 16, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

**DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.

_____
M. Aguilar
Declarant

_____
Signature

SA2022803044
84201864.docx

1   ROB BONTA
    Attorney General of California
2   LISA W. CHAO
    MICHAEL D. GOWE
3   Supervising Deputy Attorneys General
    DOUGLAS J. BETETA (SBN: 260377)
4   RACHEL J. YOO (SBN: 293598)
    Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
              Rachel.Yoo@doj.ca.gov
8   *Attorneys for Defendant*
    *Clothilde Hewlett, solely in her official capacity as*
9   *Commissioner of the California Department of*
    *Financial Protection and Innovation*
10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15  | **SMALL BUSINESS FINANCE** | Case No.: 2:22-cv-08775-RGK-SK |
16  | **ASSOCIATION,** | |
    | | **DECLARATION OF RACHEL YOO** |
17  | Plaintiff, | **IN SUPPORT OF DEFENDANT'S** |
    | | **REPLY BRIEF IN SUPPORT OF** |
18  | **v.** | **MOTION FOR SUMMARY** |
    | | **JUDGMENT, OR IN THE** |
19  | **CLOTHILDE HEWLETT, solely in** | **ALTERNATIVE PARTIAL** |
    | **her official capacity as commissioner** | **SUMMARY JUDGMENT** |
20  | **of the California Department of** | |
    | **Financial Protection and Innovation,** | |
21  | | |
    | | Date:          October 30, 2023 |
22  | | Time:          9:00 a.m. |
    | Defendant. | Courtroom:   850 |
23  | | Judge:         Hon. R. Gary Klausner |
    | | Trial Date:    December 12, 2023 |
24  | | Action Filed: December 2, 2022 |

25

26

27

28

1

1  I, Rachel J. Yoo, declare are follows:

2    1.    I am a Deputy Attorney General at the Office of the California

3  Attorney General and am admitted to practice law before this court.  I am counsel

4  of record for Defendant Clothilde Hewlett, sued solely in her official capacity as

5  Commissioner of the California Department of Financial Protection and Innovation

6  (the Department), in this matter.  I make the following statement based on my

7  personal knowledge, except as explicitly stated otherwise.  If called as a witness, I

8  could and would competently testify under oath as to the facts set forth below.

9    2.    Attached as **Exhibit 26** are true and correct excerpts from deposition

10  testimony of Jesse Mattson and the notice of deposition directed at him in his

11  individual capacity and a 30(b)(6) witness for the Department.

12    I declare under penalty of perjury under the laws of the United States of

13  America that the foregoing is true and correct. Executed this 16th day of October

14  2023, at Los Angeles, California.

15    _/s/ *Rachel J. Yoo*_
16    Rachel. J. Yoo

## CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |
|---|---|---|---|

I hereby certify that on <u>October 16, 2023,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**
>
> **DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**
>
> **DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.

_____          _____
            M. Aguilar                                    Signature
             Declarant

SA2022803044
84201864.docx

*Small Business Finance Association v. Clothilde Hewlett*
22-cv-08775-RGK-SK

# EXHIBIT 26

Jesse Mattson
August 29, 2023

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION
Jesse Mattson
August 29, 2023

SMALL BUSINESS FINANCE
ASSOCIATION,

       Plaintiff,

                            Case No.
v.                        22-cv-08775-RGK-PLA

CLOTHILDE HEWLETT, solely in
her official capacity as
Commissioner of the California
Department of Financial
Protection and Innovation,

       Defendant.
_____


CONFIDENTIAL

VIDEOTAPED DEPOSITION OF JESSE MATTSON

Tuesday, August 29, 2023

9:08 a.m. - 2:21 p.m.



1300 I Street

Sacramento, California




REPORTED BY:

Ingrid Skorobohaty

U.S. Legal Support | www.uslegalsupport.com
CSR No. 11669

```
                            Jesse Mattson
                           August 29, 2023
 1   APPEARANCES:

 2

 3   For Plaintiff:               Jesse Mattson
                                 August 29, 2023
 4           BRODSKY FOTIU-WOJTOWICZ, PLLC
             BY:   BENJAMIN H. BRODSKY, ESQ.
 5               PHILIP T. MERENDA, ESQ.
                 (appearing via videoconference)
 6           200 SE 1st Street, Suite 400
             Miami, FL 33131
 7           305.503.5054
             bbrodsky@bfwlegal.com
 8

 9   For Defendant and the witness:

10           OFFICE OF THE ATTORNEY GENERAL
             BY:   DOUGLAS J. BETETA, DEPUTY ATTORNEY
11               GENERAL
                 RACHEL J. YOO, DEPUTY ATTORNEY
12               GENERAL
                 (appearing via videoconference)
13           300 S. Spring Street, Suite 1702
             Los Angeles, CA 90013
14           213.269.6014
             douglas.beteta@doj.ca.gov
15

16   Also present:

17           SAHIL SINGH, videographer

18           CHARLES CARRIERE
             (appearing via videoconference)
19
             NATALIE PAPPAS
20           (appearing via videoconference)

21           STEPHEN DENIS
             (appearing via videoconference)
22

23

24
                  U.S. Legal Support | www.uslegalsupport.com
25
```

Jesse Mattson
August 29, 2023

1      MR. BETETA:  And, for the record, I also

2   wanna represent that, on Zoom, are also Phil

3   Merenda, Natalie Pappas, and Stephen Davis, who will

4   be observe --

5      MR. BRODSKY:  Denis.

6      MR. BETETA:  Sorry.  Stephen Denis.

7      -- who will be observing the proceedings.

8                   EXAMINATION

9   BY MR. BRODSKY:

10     Q.   Good morning, Mr. Mattson.  Just to start

11   things off, do you prefer that I call you

12   "Mr. Mattson"?  May I call you "Jesse"?

13     A.   "Jesse's" fine.

14     MR. BRODSKY:  Okay.

15          So, Jesse, I'm going to show you what I

16   have marked as Exhibit 1.

17          (Exhibit 1 marked.)

18   BY MR. BRODSKY:

19     Q.   And I'll ask you if you recognize this

20   document.

21     A.   Vaguely, yes.  I did not read through it

22   in detail, but this appears to be the notice of the

23   deposition.

24     Q.   Okay.

25          This is the notice of your deposition

U.S. Legal Support | www.uslegalsupport.com

Jesse Mattson
August 29, 2023

1    today, correct?

2        A.    Yes.

3        Q.    And you are here today in both your

4    individual capacity and as a representative for the

5    defendant on certain designated topics, correct?

6        A.    Correct.

7        Q.    And those topics are listed on the second

8    and third pages of what's been marked as Exhibit 1,

9    correct?

10       A.    It looks like those topics, yes.

11             MR. BRODSKY:  Okay.

12             MR. BETETA:  And, for the record, I'm

13    gonna say that we've objected on Topic 9.  He is not

14    here representative on behalf of the Department on

15    Topic 9.

16             MR. BRODSKY:  Okay.  We'll deal with that

17    as it comes up, and we've noted your objection.

18    BY MR. BRODSKY:

19       Q.    And are you prepared to testify on behalf

20    of the defendant for all the Topics 1 through 12,

21    other than 9?

22       A.    I believe so.

23       Q.    Okay.

24             Tell me, what did you do to prepare to

25    give testimony on Topic 1?

Jesse Mattson
August 29, 2023

1          EXAMINATION

2    BY MR. BETETA:

3         Q.   Good afternoon, Mr. Mattson.  I just have

4    a couple of questions.

5              Earlier on, there was a discussion with

6    Mr. Brodsky about APR being controversial.  What did

7    you understand when that word "controversial" was

8    being used?

9         A.   Just that there are differences of

10   opinion.

11        Q.   About what?

12        A.   About --

13        Q.   APR?

14        A.    About whether or not APR's a good idea,

15   whether or not ACC is a good idea, what would be

16   best for small-business owners.

17        Q.   Do you think that the actual use of APR in

18   the regulations is controversial?

19        A.   I do not.

20             MR. BETETA:  Thank you.

21             MR. BRODSKY:  Okay.  Let's just do a lit

22   of little bit of housekeeping.

23             I'd like to keep the exhibits 'cause I'm

24   gonna use 'em again for Charlie tomorrow.

25             MR. BETETA:  Do you wanna go off the

**Jesse Mattson**
**August 29, 2023**

```
1    STATE OF CALIFORNIA        )
                                )
2    COUNTY OF SACRAMENTO       )

3

4         I, Ingrid Skorobohaty, a Certified

5    Shorthand Reporter, do hereby certify:

6         That prior to being examined, the witness

7    in the foregoing proceedings was by me duly sworn to

8    testify to the truth, the whole truth, and nothing

9    but the truth;

10        That said proceedings were taken before me

11   at the time and place therein set forth and were

12   taken down by me in shorthand and thereafter

13   transcribed into typewriting under my direction and

14   supervision.

15        I further certify that I am neither

16   counsel for, nor related to, any party to said

17   proceedings, nor in anywise interested in the

18   outcome thereof.

19        In witness whereof, I have hereunto

20   subscribed my name.

21   Dated:  September 5, 2023

22   _____

23   Ingrid Skorobohaty, CSR No. 11669

24

25
```

SER_138



1   BENJAMIN H. BRODSKY (*Pro Hac Vice*)
    Email: bbrodsky@bfwlegal.com
2   PHILIP T. MERENDA (*Pro Hac Vice*)
    Email: phil@bfwlegal.com
3   BRODSKY FOTIU-WOJTOWICZ, PLLC
    200 SE 1ST St., Suite 400
4   Miami, FL 33131
    Telephone:  305.503.5054
5   Facsimile:  786.749.7644

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION

10  SMALL BUSINESS FINANCE            Case No. 22-cv-08775-RGK-PLA
11  ASSOCIATION,
                                      Hon. R. Gary Klausner
12          Plaintiff,
                                      **AMENDED NOTICE OF**
13      v.                            **TAKING DEPOSITION: JESSE**
                                      **MATTSON**
14  CLOTHILDE HEWLETT, solely in her
    official capacity as Commissioner of the   Complaint Filed:  December 6, 2022
15  California Department of Financial          Trial Date:          December 12, 2023
    Protection and Innovation,
16
            Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT
Mattson
1
8·29·23

**TO:**  **Corporate Representative and Individual Witness, Jesse Mattson**
**c/o Rob Bonta**
**Attorney General of California**
**300 South Spring Street, Suite 1702**
**Los Angeles, CA 90013**

PLEASE TAKE NOTICE that at the below listed time and place, Plaintiff, Small Business Finance Association, by and through undersigned counsel, and pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the following deposition by oral examination before a person authorized to take depositions in accordance with the Federal Rules of Civil Procedure. The deposition will be recorded by stenographic and videographic means.

| NAME | DATE AND TIME | LOCATION |
|---|---|---|
| Jesse Mattson, in his individual capacity and as a Rule 30(b)(6) representative on the topics below | August 29, 2023 at 9:00 am PST | Office of the Attorney General 1300 I Street Sacramento, CA 95814 |

## RULE 30(B)(6) TOPICS

1.    The statutory purpose of Cal. Fin. Code §§ 22800-22805 ("SB 1235")

2.    The statutory requirements of SB 1235

3.    DFPI's mandate to issue regulations to implement SB 1235

4.    The use of a single disclosure form for all types of commercial financing covered by the Regulations

5.    The regulatory purpose of 10 Cal. Code Regs., tit. 10, ch. 3 (the "Regulations")

6.    The Statements of Reasons promulgated by DFPI with respect to the Regulations

1

PLAINTIFF SMALL BUSINESS FINANCE ASSOCIATION'S NOTICE OF TAKING DEPOSITION

1        7.     The extent to which providers may modify or add to the disclosures
2    required by the Regulations

3        8.     The burden, if any, imposed on providers by the Regulations

4        9.     The factual basis for DFPI's affirmative defense that SBFA lacks
5    standing

6        10.    DFPI's decision to withdraw or not proceed with Request for Proposal
7    (RFP) #19-SA010

8        11.    Any testing, surveys, or market research performed by or on behalf of
9    DFPI or others of business owners relating to the Regulations

10        12.    Alternatives to the disclosures requirements in the Regulations that
11    were considered by DFPI or the State of California

13    Dated: August 23, 2023

16                                   Respectfully submitted,
17                                   BRODSKY FOTIU-WOJTOWICZ,
                               PLLC

19                                   */s/ Benjamin H. Brodsky*

20                                   Benjamin Brodsky
                               Phil Merenda

22                                   *Attorneys for Plaintiff Small Business*
23                                   *Finance Association*

2

PLAINTIFF SMALL BUSINESS FINANCE ASSOCIATION'S NOTICE OF TAKING DEPOSITION

1                  **<u>PROOF OF SERVICE</u>**

2        I, Heather Shatzel, declare:

3        I am a citizen of the United States and employed in Miami, Florida. I am
4 over the age of eighteen years and not a party to the within-entitled action. My business address is 200 S.E. 1st Street, Suite 400, Miami, Florida 33131.

5        On the date listed below, I served the attached documents:

6      **PLAINTIFF SMALL BUSINESS FINANCE ASSOCIATION'S FIRST
7 REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CLOTHILDE HEWLETT**

8 on the interested parties in this action addressed as follows:

9     ROB BONTA
10 Attorney General of California
     LISA W. CHAO
11 CRAIG D. RUST
12 Supervising Deputy Attorneys General
     DOUGLAS J. BETETA (SBN: 260377)
13 RACHEL J. YOO (SBN: 293598)
14 Deputy Attorneys General
     300 South Spring Street, Suite 1702
15 Los Angeles, CA 90013-1230
16 Email: Douglas.Beteta@doj.ca.gov
     Email: Rachel.Yoo@doj.ca.gov
17 Email: Craig.Rust@doj.ca.gov

18
19 **Attorneys for Defendant Clothilde Hewlett**, solely in her official capacity as Commissioner of the California Department of Financial Protection and
20 Innovation

21

22     ☒    **(BY ELECTRONIC MAIL)** By transmitting such document(s)
23           electronically from my e-mail address, heather@bfwlegal.com at
          Brodsky Fotiu-Wojtowicz, PLLC, Miami, Florida, to the person(s) at
24           the electronic mail addresses listed above. The transmission was
25           reported as complete and without error.

26

27

28

1      **(BY MAIL)** By placing such document(s) in a sealed envelope, with
postage thereon fully prepaid for first class mail, for collection and
2      mailing at Brodsky Fotiu-Wojtowicz, PLLC in Miami, Florida
following ordinary business practice. I am readily familiar with the
3      practice at Brodsky Fotiu-Wojtowicz, PLLC for collection and
processing of correspondence for mailing with the United States Postal
4      Service, said practice being that in the ordinary course of business,
correspondence is deposited in the United States Postal Service the
5      same day as it is placed for collection.

6

7      I declare under penalty of perjury under the laws of the State of Florida that
the above is true and correct.
8
     Executed on August 23, 2023, at Miami, Florida.
9

10                  // *Heather Shatzel* //
                      Heather Shatzel
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

PLAINTIFF SMALL BUSINESS FINANCE ASSOCIATION'S NOTICE OF TAKING DEPOSITION

1  ROB BONTA
   Attorney General of California
2  LISA W. CHAO
   MICHAEL D. GOWE
3  Supervising Deputy Attorneys General
   DOUGLAS J. BETETA (SBN: 260377)
4  RACHEL J. YOO (SBN: 293598)
   Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA 90013-1230
6    Telephone: (213) 269-6622
     Fax: (916) 731-2128
7    E-mail: Douglas.Beteta@doj.ca.gov
             Rachel.Yoo@doj.ca.gov
8  *Attorneys for Defendant*
   *Clothilde Hewlett, solely in her official capacity as*
9  *Commissioner of the California Department of*
   *Financial Protection and Innovation*
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                       WESTERN DIVISION

14

15
   **SMALL BUSINESS FINANCE**          Case No.: 2:22-cv-08775-RGK-SK
16 **ASSOCIATION,**
                                       **DECLARATION OF ADAM J.**
17                         Plaintiff,  **LEVITIN IN SUPPORT OF**
                                       **DEFENDANT'S MOTION FOR**
18           **v.**                    **SUMMARY JUDGMENT OR, IN**
                                       **THE ALTERNATIVE, PARTIAL**
19 **CLOTHILDE HEWLETT, solely in**    **SUMMARY JUDGMENT**
   **her official capacity as commissioner**
20 **of the California Department of**
   **Financial Protection and Innovation,**
21                                     Date:         October 30, 2023
                                       Time:         9:00 a.m.
22                         Defendant.  Courtroom:    850
                                       Judge:        Hon. R. Gary Klausner
23                                     Trial Date:   December 12, 2023
                                       Action Filed: December 2, 2022
24

25

26

27

28

                                  1

I, Adam J. Levitin, declare are follows:

    1.    I am the Carmack Waterhouse Professor of Law and Finance at the Georgetown University Law Center in Washington, D.C., and have been retained to provide expert testimony in this matter by counsel for Defendant Clothilde Hewlett, sued solely in her capacity as commissioner of the California Department of Financial Protection and Innovation.  I make the following statement based on my personal knowledge.  If called as a witness, I could and would competently testify under oath as to the facts set forth below.

    2.    Attached as Exhibit 16 to the declaration of Rachel Yoo, previously filed as Dkt. No. 52-18, is a true and correct copy of the expert report that I prepared in this case.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12 day of October 2023, in the Town of Somerset, Montgomery County, Maryland.

Adam J. Levitin

## CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |
|---|---|---|---|

I hereby certify that on <u>October 16, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**
>
> **DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**
>
> **DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**
>
> **DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.

|  |  |
|---|---|
| M. Aguilar | |
| Declarant | Signature |

SA2022803044
84201864.docx

Case: 24-50, 09/13/2024, DktEntry: 24.1, Page 149 of 250

DocuSign Envelope ID: C6ADEBD6-8B9A-435C-B034-B6EC994D8012
Case 2:22-cv-08775-RGK-SK    Document 83-6    Filed 10/16/23    Page 1 of 4   Page ID
#:2369

1   ROB BONTA
    Attorney General of California
2   LISA W. CHAO
    MICHAEL D. GOWE
3   Supervising Deputy Attorneys General
    DOUGLAS J. BETETA (SBN: 260377)
4   RACHEL J. YOO (SBN: 293598)
    Deputy Attorneys General
5    300 South Spring Street, Suite 1702
    Los Angeles, CA 90013-1230
6    Telephone: (213) 269-6622
    Fax: (916) 731-2128
7    E-mail: Douglas.Beteta@doj.ca.gov
            Rachel.Yoo@doj.ca.gov
8   *Attorneys for Defendant*
    *Clothilde Hewlett, solely in her official capacity as*
9   *Commissioner of the California Department of*
    *Financial Protection and Innovation*
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15
    **SMALL BUSINESS FINANCE**              Case No.: 2:22-cv-08775-RGK-SK
16  **ASSOCIATION,**
                                            **DECLARATION OF CATHERINE**
17                          Plaintiff,      **O'NEIL IN SUPPORT OF**
                                            **DEFENDANT'S MOTION FOR**
18       v.                                 **SUMMARY JUDGMENT OR, IN**
                                            **THE ALTERNATIVE, PARTIAL**
19  **CLOTHILDE HEWLETT, solely in**        **SUMMARY JUDGMENT**
    **her official capacity as commissioner**
20  **of the California Department of**
    **Financial Protection and Innovation,**
21                                          Date:        October 30, 2023
                                            Time:        9:00 a.m.
22                          Defendant.      Courtroom:   850
                                            Judge:       Hon. R. Gary Klausner
23                                          Trial Date:  December 12, 2023
                                            Action Filed: December 2, 2022
24

25

26

27

28

                                   1

1   I, Catherine O'Neil, declare are follows:

2       1.    I am a mathematician and data scientist and have been retained to

3 provide expert testimony in this matter by counsel for Defendant Clothilde Hewlett,

4 sued solely in her capacity as commissioner of the California Department of

5 Financial Protection and Innovation.  I make the following statement based on my

6 personal knowledge.  If called as a witness, I could and would competently testify

7 under oath as to the facts set forth below.

8       2.    Attached as Exhibit 15 to the declaration of Rachel Yoo, previously

9 filed as Dkt. No. 52-17, is a true and correct copy of the expert report that I

10 prepared in this case.

11

12     I declare under penalty of perjury under the laws of the United States of

13 America that the foregoing is true and correct. Executed this $^{co}$___ day of October

14 2023, in Cambridge, Massachusetts.

15

16

17                        Catherine O'Neil

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |

I hereby certify that on <u>October 16, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

> **DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

> **DECLARATION OF ADAM J. LEVITIN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

> **DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2023</u>, at San Diego, California.


<u>       M. Aguilar       </u>        <u>                </u>
Declarant                                           Signature

SA2022803044
84201864.docx

ROB BONTA
Attorney General of California
LISA W. CHAO
MICHAEL D. GOWE
Supervising Deputy Attorneys General
DOUGLAS J. BETETA (SBN: 260377)
RACHEL J. YOO (SBN: 293598)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6622
  Fax:  (916) 731-2128
  E-mail:  Douglas.Beteta@doj.ca.gov
          Rachel.Yoo@doj.ca.gov
*Attorneys for Defendant*
*Clothilde Hewlett, solely in her official capacity as*
*Commissioner of the California Department of*
*Financial Protection and Innovation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SMALL BUSINESS FINANCE ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CLOTHILDE HEWLETT, solely in her official capacity as commissioner of the California Department of Financial Protection and Innovation,**<br><br>Defendant. | Case No.: 2:22-cv-08775-RGK-PLA<br><br>**EXHIBIT 17 TO DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date:          October 30, 2023<br>Time:          9:00 a.m.<br>Courtroom:   850<br>Judge:         Hon. R. Gary Klausner<br>Trial Date:    December 12, 2023<br>Action Filed: December 2, 2022 |

1

*Small Business Finance Association v. Clothilde Hewlett*
22-cv-08775-RGK-SK

# EXHIBIT 17

SFBA 01109 - Rapid Data CONFIDENTIAL

| | D | E | F | G | I | J | K | L | M | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ADVANCE_DATE | DATE_OF_FIRST_PAYMENT | LAST_PAYMENT_DATE | ESTIMATED_TERM_IN_MONTHS | IS_RENEWED_ADVANCE | IS_PIF | BDS_PIF | BDS_TERM | ENTITY_TYPE | ANNUAL_REVENUE | TYPE OF BUSINESS |
| 2 | 9/29/2021 | 10/25/2021 | 2/18/2039 | 12 | 0 | 1 | 4538 | 263 | Proprietorship | $ 126,045 | Eating and drinking places |
| 3 | 6/13/2022 | 6/13/2022 | 5/17/2023 | 12 | 1 | 1 | 243 | 264 | Proprietorship | $ 322,360 | Personal Services |
| 4 | 5/11/2021 | 6/9/2021 | 1/12/2022 | 6 | 0 | 1 | 177 | 139 | Proprietorship | $ 107,470 | Others |
| 5 | 7/13/2021 | 7/15/2021 | 8/11/2022 | 10 | 1 | 1 | 283 | 228 | Proprietorship | $ 120,000 | Personal Services |
| 6 | 1/14/2022 | 1/14/2022 | #N/A | 11 | 0 | 0 | #N/A | 251 | Proprietorship | $ 332,560 | Building Materials, Hardware, Garden |
| 7 | 11/18/2021 | 11/18/2021 | 9/28/2022 | 7 | 0 | 0 | 225 | 157 | Proprietorship | $ 104,423 | Personal Services |
| 8 | 4/7/2023 | 4/10/2023 | #N/A | 13 | 0 | 0 | #N/A | 291 | Limited Liability Company | $ 1,123,896 | Eating and drinking places |
| 9 | 4/15/2022 | 4/18/2022 | 5/8/2023 | 10 | 1 | 1 | 277 | 232 | Proprietorship | $ 121,561 | Eating and drinking places |
| 10 | 11/17/2021 | 11/17/2021 | 7/11/2022 | 6 | 1 | 1 | 169 | 142 | Proprietorship | $ 324,267 | Eating and drinking places |
| 11 | 8/4/2020 | 8/5/2020 | 2/17/2021 | 7 | 0 | 1 | 142 | 152 | Proprietorship | $ 504,000 | Others |
| 12 | 4/28/2022 | 5/12/2022 | 3/7/2023 | 8 | 0 | 1 | 224 | 177 | C-Corporation | $ 926,926 | Eating and drinking places |
| 13 | 11/26/2021 | 12/8/2021 | 2/18/2022 | 3 | 1 | 1 | 61 | 74 | S-Corporation | $28,562,354 | Others |
| 14 | 7/17/2020 | 7/20/2020 | 2/1/2021 | 5 | 1 | 1 | 142 | 126 | Proprietorship | $ 135,504 | Others |
| 15 | 6/15/2022 | 6/16/2022 | 7/7/2023 | 13 | 1 | 1 | 278 | 280 | General Partnership | $ 286,758 | Eating and drinking places |
| 16 | 3/31/2021 | 4/1/2021 | 12/20/2022 | 8 | 0 | 0 | 450 | 180 | Limited Liability Company | $ 555,374 | Eating and drinking places |
| 17 | 12/3/2020 | 12/7/2020 | 6/28/2021 | 8 | 1 | 1 | 148 | 172 | Proprietorship | $ 132,909 | Others |
| 18 | 11/23/2021 | 11/24/2021 | 9/17/2022 | 9 | 1 | 1 | 214 | 207 | Proprietorship | $ 104,737 | Eating and drinking places |
| 19 | 7/13/2021 | 7/14/2021 | 3/8/2022 | 11 | 1 | 1 | 171 | 238 | S-Corporation | $ 685,582 | Eating and drinking places |
| 20 | 2/14/2022 | 2/24/2022 | 8/3/2022 | 5 | 1 | 1 | 123 | 110 | C-Corporation | $ 926,926 | Eating and drinking places |
| 21 | 10/20/2021 | 10/21/2021 | 11/21/2022 | 12 | 1 | 1 | 284 | 261 | Proprietorship | $ 124,920 | Others |
| 22 | 8/11/2021 | 8/12/2021 | 3/3/2022 | 9 | 1 | 1 | 147 | 207 | Proprietorship | $ 120,000 | Others |
| 23 | 4/28/2023 | 5/2/2023 | #N/A | 12 | 0 | 0 | #N/A | 268 | Proprietorship | $ 180,000 | Eating and drinking places |
| 24 | 2/10/2023 | 2/13/2023 | #N/A | 12 | 0 | 0 | #N/A | 273 | Proprietorship | $ 152,277 | Others |
| 25 | 6/29/2021 | 6/30/2021 | 4/29/2022 | 9 | 1 | 1 | 219 | 197 | Proprietorship | $ 104,737 | Eating and drinking places |
| 26 | 10/27/2021 | 10/28/2021 | 10/21/2022 | 12 | 1 | 1 | 258 | 268 | Proprietorship | $ 402,661 | Eating and drinking places |
| 27 | 7/14/2022 | 7/15/2021 | 12/9/2021 | 5 | 1 | 1 | 107 | 109 | Limited Liability Company | $ 1,123,896 | Eating and drinking places |
| 28 | 1/6/2022 | 1/6/2022 | 7/10/2022 | 4 | 1 | 1 | 132 | 94 | S-Corporation | $27,846,732 | Others |
| 29 | 12/12/2022 | 12/13/2022 | #N/A | 12 | 0 | 0 | #N/A | 263 | C-Corporation | $ 867,900 | Personal Services |
| 30 | 9/9/2020 | 9/10/2020 | 5/2/2022 | 7 | 1 | 1 | 168 | 157 | Proprietorship | $ 180,000 | Eating and drinking places |
| 31 | 9/14/2020 | 9/15/2020 | 2/8/2021 | 4 | 1 | 1 | 106 | 87 | Proprietorship | $ 420,842 | Building Materials, Hardware, Garden |
| 32 | 7/2/2021 | 7/6/2021 | 3/10/2022 | 10 | 1 | 1 | 180 | 225 | Limited Liability Company | $ 931,229 | Eating and drinking places |
| 33 | 10/11/2022 | 10/12/2022 | 6/15/2023 | 9 | 1 | 1 | 178 | 199 | Proprietorship | $ 96,000 | Eating and drinking places |
| 34 | 1/12/2022 | 1/18/2022 | 8/23/2022 | 9 | 1 | 1 | 160 | 203 | Proprietorship | $ 120,000 | Others |
| 35 | 1/20/2022 | 1/27/2022 | 9/9/2022 | 6 | 1 | 1 | 167 | 130 | S-Corporation | $ 830,471 | Personal Services |
| 36 | 6/10/2021 | 6/11/2021 | 5/31/2022 | 9 | 0 | 1 | 254 | 214 | Proprietorship | $ 83,066 | Others |
| 37 | 9/27/2022 | 9/28/2022 | 7/25/2023 | 12 | 1 | 1 | 216 | 274 | Proprietorship | $ 152,277 | Others |
| 38 | 12/23/2020 | 12/24/2020 | 11/2/2021 | 10 | 1 | 1 | 225 | 223 | Proprietorship | $ 120,000 | Personal Services |

1   ROB BONTA
    Attorney General of California
2   LISA W. CHAO
    MICHAEL D. GOWE
3   Supervising Deputy Attorneys General
    DOUGLAS J. BETETA (SBN 260377)
4   RACHEL J. YOO (SBN: 293598)
    Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
             Rachel.Yoo@doj.ca.gov
8   *Attorneys for Defendant*
    *Clothilde Hewlett, solely in her official capacity as*
9   *Commissioner of the California Department of*
    *Financial Protection and Innovation*
10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15   | | |
     |---|---|
16   **SMALL BUSINESS FINANCE ASSOCIATION,** | Case No.: 2:22-cv-08775-RGK-PLA

**EXHIBIT 11 TO DECLARATION OF RACHEL YOO IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

17                                    Plaintiff,

18        **v.**

19   **CLOTHILDE HEWLETT, solely in her official capacity as commissioner**
20   **of the California Department of Financial Protection and Innovation,**

21                                              Date:         October 30, 2023
22                                              Time:         9:00 a.m.
                                                Courtroom:    850
23                                    Defendant.  Judge:        Hon. R. Gary Klausner
                                                Trial Date:   December 12, 2023
24                                              Action Filed: December 2, 2022

25

26

27

28

1

*Small Business Finance Association v. Clothilde Hewlett*
22-cv-08775-RGK-SK

# EXHIBIT 11

DocuSign Envelope ID: 48189FF6-899B-433D-BC58-D610A38F5B3F

1   NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
2   MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
3   Los Angeles, California 90017-3543
Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   Attorneys for Non-Party
REWARDS NETWORK
6   ESTABLISHMENT INC.

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   SMALL BUSINESS FINANCE
ASSOCIATION,
             Case No. 22-cv-08775-RGK-SK

12             Plaintiff,
             **NON-PARTY REWARDS**

13                 **NETWORK ESTABLISHMENT**
            v.
             **SERVICES INC.'S**

14                **SUPPLEMENTAL RESPONSE**
      CLOTHILDE HEWLETT, solely in her   **TO SUBPOENA TO PRODUCE**

15   official capacity as Commissioner of the   **DOCUMENTS, INFORMATION,**
California Department of Financial       **OR OBJECTS OR TO PERMIT**

16   Protection and Innovation,           **INSPECTION OF PREMISES IN**
                **A CIVIL ACTION**

17             Defendant.

18

19       Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party

20   Rewards Network Establishment Services Inc. (Rewards Network) objects and

21   responds to the subpoena for production of documents, information, or objects or to

22   permit inspection on premises in a civil action served by Defendant Clothilde

23   Hewlett, in her official capacity as the Commissioner of the California Department

24   of Financial Protection and Innovation (DFPI) on July 14, 2023 (the "Subpoena").

25   Defendant, through counsel, agreed to continue Rewards Network's deadline to

26   respond to the Subpoena to August 4, 2023. Defendant served its Response and

27   responsive documents numbered RN 0001-RN 0013 on August 4, 2023.

28       As reflected in the Joint Status Report filed by DFPI and Rewards Network

1

sf-5628477

DocuSign Envelope ID: 48189FF6-899B-433D-BC58-D610A38F5B3F

1    on September 1, 2023, DFPI and Rewards Network agreed on the scope of Rewards

2    Network's further response to the Subpoena.  (*Small Business Finance Ass'n v.*

3    *Clothilde Hewlett, solely in her official capacity as Commissioner of the*

4    *Department of Financial Protection and Innovation*, Misc. Case No. 23-cv-05469

5    (N.D. Ill) (ECF No. 7.)

6       Without waiving and instead expressly preserving all objections to the

7    Subpoena stated in its written Response, Rewards Network provides this

8    Supplemental Response per the agreement set out in the Joint Status Report.

9                         **SUPPLEMENTAL RESPONSE**

10    **AGREED REQUEST NO. 1:**

11       Sample Receivables Purchase and Marketing Agreements ("Agreements")

12    for each of the years from 2018-2021.

13    **RESPONSE TO AGREED REQUEST NO. 1:**

14       On September 6, 2023, Rewards Network produced documents responsive to

15    this Request.  The documents are Bates numbered RN 0014-RN 0087 and are

16    designated "Confidential" under the Protective Order in this action.

17    **AGREED REQUEST NO. 2:**

18       75 randomly selected Agreements and accompanying disclosures Rewards

19    Network entered into with California customers since December 9, 2022, with

20    redacted customer name and contact information.

21    **RESPONSE TO AGREED REQUEST NO. 2:**

22       Along with this Supplemental Response, Rewards Network is producing the

23    responsive redacted Agreements and accompanying disclosures.  The documents

24    are Bates numbered RN0088-RN1347 and are designated "Confidential" under the

25    Protective Order in this action.

26

27

28

sf-5628477

DocuSign Envelope ID: 48189FF6-899B-433D-BC58-D610A38F5B3F

1  **AGREED REQUEST NO. 3:**

2      Provide a verified discovery response stating that there have not been any

3  complaints from customers regarding the disclosures required by the California

4  regulations at issue.

5  **RESPONSE TO AGREED REQUEST NO. 3:**

6      Rewards Network responds that it has not received any formal written

7  complaints from customers regarding the disclosures required by the California

8  regulations at issue.

9  **AGREED REQUEST NO. 4:**

10      Rewards Network will search and produce emails with its customers

11  containing the word "owed" for the months of October 2019 and March 2023.

12  Rewards Network will conduct searches from randomly selected ten custodians

13  who exchanged emails with California customers during the two selected months.

14  **RESPONSE TO AGREED REQUEST NO. 4:**

15      Rewards responds that there are no responsive emails.

16

17  Dated:  September 12, 2023          MORRISON & FOERSTER LLP

18

19                                  By: _____

20                                      Nancy R. Thomas

21                                      *Attorneys for Non-Party*
                                        ***Rewards Network***
22                                      ***Establishment Inc.***

23

24

25

26

27

28

3

sf-5628477

DocuSign Envelope ID: 48189FF6-899B-433D-BC58-D610A38F5B3F

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I, Dan Badie, declare:

I am Director of Due Diligence at Rewards Network Establishment Services Inc. (Rewards Network).  I make this verification on behalf of Rewards Network and am authorized to do so.  I have read the foregoing

**RESPONSE TO AGREED REQUEST NO. 3 IN NON-PARTY REWARDS NETWORK ESTABLISHMENT SERVICES INC.'S SUPPLEMENTAL RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

and am aware of the contents.  Based on reasonable inquiry, the facts set forth in Response No. 3 are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Chicago, Illinois on September 12, 2023.


_Dan Badie_
Dan Badie

4

sf-5628477

1

## PROOF OF SERVICE

2      I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 707 Wilshire Boulevard, Suite 6000, Los Angeles, California 90017-3543.  I am not a party to

3   the within cause, and I am over the age of eighteen years.

4      I further declare that on September 12, 2023, I served a copy of:

5   **NON-PARTY REWARDS NETWORK ESTABLISHMENT SERVICES**

6   **INC.'S SUPPLEMENTAL RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

7

8   ☒      **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by electronically uploading a true and correct copy through the State of  California,

9   Department of Justice, secure FTP (Rachel Yoo Filedrop) (https://fx.doj.ca.gov/filedrop/~r4nH7k) in accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

10

11                         Rachel J. Yoo
                         Deputy Attorney General
12                         State of California
                         Department of Justice
13                         300 South Spring Street
                         Suite 1702
14                         Los Angeles, CA 90013

15                         Attorneys for Defendant
                         Clothilde Hewlett

16

17      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18

19      Executed at Los Angeles, California, this 12th day of September, 2023.

20

21

22   _____        _____
         Alicia C. Vargas
23             (typed)                        (signature)

24

25

26

27

28

5

PROOF OF SERVICE

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

## OFFER SUMMARY: PREMIER RESTAURANT FUNDING CASH ADVANCE

| | | |
|---|---|---|
| Funding Provided | $6,000 | This is how much funding Rewards Network will provide. |
| Estimated Annual Percentage Rate (APR) | 216.3% | APR is the estimated cost of your financing expressed as a yearly rate. APR incorporates the amount and timing of the funding you receive, fees you pay, and the periodic payments you make. This calculation assumes your estimated average monthly income through your credit card receivables will be $34,802. Since your actual income may vary from our estimate, your effective APR may also vary.<br><br>APR is not an interest rate. The cost of this financing is based upon fees charged by Rewards Network rather than interest that accrues over time. |
| Finance Charge | $4,200 | This is the dollar cost of your financing. Your finance charge will not increase if you take longer to pay off what you owe. |
| Estimated Total Payment Amount | $10,200 | This is the total dollar amount of payments we estimate you will make under the contract. |
| Estimated Monthly Cost | $1,740.10 | Although you do not make payments on a monthly basis, this is our calculation of your average monthly cost based upon the payment amounts disclosed below. Rewards Network also provides marketing services to promote your restaurant to our members, at no added cost. |
| Estimated Payment | $58.00 | |
| Payment Terms | Your credit card processor provides us with transaction details about your Card Receivables on a daily basis. We invoice you and debit your bank account for 5% of each transaction per our agreement on a daily/weekly basis. This financing does not have a fixed payment schedule and there is no minimum payment amount. | |
| Estimated Term | 178 days | This is our estimate of how long it will take to collect the Estimated Total Payment Amount based upon the assumption that you will receive $34,802 in monthly income through your Card Receivables. |
| Prepayment | If you pay off the financing faster than required, you still must pay all of the finance charge, up to $4,200 based upon our estimates. | |
| | If you pay off the financing faster than required, you will not be required to pay additional fees. | |

Applicable law requires this information to be provided to you to help you make an informed decision. By signing below, you are confirming that you received this information.

Recipient Signature: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Date: 1/24/2023

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



Date of Agreement:    1/24/2023

## REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT

This Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement") is between Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network," "We," and/or "Us"), and each of the legal entities set forth below (collectively, "Merchant" and/or "You").

| | | |
|---|---|---|
| ███████████████ | ███████████████ | ███████████████ |
| Legal Name of Merchant | Public Name of Merchant | State of Formation |
| ███████████████ | ███████████████ | ███████████████ |
| Location Address | City | State    Zip Code |

### Primary Terms

In this Agreement, you are selling to us a percentage of the payments your customers make with credit, debit, and other types of payment cards ("Card Receivables").  You are selling Card Receivables from (check one):

| **Premier Restaurant Funding:** | **Dining Credits:** |
|---|---|
| [✓] All of your customers | [ ] Rewards Network Members only |

We agree to buy from you (and you agree to sell to us) the amount of future Card Receivables shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below.  In order to deliver to us the Amount Sold, you assign to us the share of your Receivables ("Specified Percentage") shown below, for the customers indicated above, every day from the date we deliver the Purchase Price until we have received the entire Amount Sold.

**Purchase Price:**          $6,000

**Amount Sold:**            $10,200

**Specified Percentage:**      5%

CONFIDENTIAL                                                    RN0185

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT TERMS**

We are buying Card Receivables from you, not loaning you money. One advantage to you of selling Card Receivables instead of borrowing money is that there are no minimum payments, payment schedules, or due dates. If your business is slow, you will not have to worry about having to make a loan payment by a due date, since this is not a loan.

We take some risks in this deal, like the possibility of not getting the Card Receivables we bought as quickly as we thought we would, or not getting them at all if you go out of business. However, you are not allowed to engage in "bad acts" that unfairly prevent us from receiving what we paid for. For example, you are not allowed to stop taking payment cards as a form of payment, change your payment card processor without our approval, or close your business and start up another similar business right away. The details on this are below.

We also will provide you with marketing services as part of this Agreement. Rewards Network currently has millions of diners who participate in our dining rewards programs ("Members"). When Members dine at participating restaurants, we provide them with rewards such as cash back or frequent flyer miles. This gives our Members an incentive to dine at participating restaurants, including yours. We promote participating restaurants through various media, including social media, digital advertising and targeted emails to our Members. In addition to marketing, we also will provide you with Member data, and access to our Comment Management System, allowing you to read and respond to Member reviews. Every review we publish is verified as written by an actual diner at your establishment. The marketing services we provide will continue throughout your program participation and can be terminated upon 30 days' written notice after the Card Receivables we purchased have been reduced to zero.

**Detailed Terms and Conditions**

**PURCHASE OF RECEIVABLES AND SERVICES**

1. **Assignment of Receivables**. Upon your receipt of the Purchase Price, we will own all right, title and interest in the Card Receivables we bought. You will no longer have any rights in those Card Receivables. As long as there is no Event of Non-Performance as set out in Section 12 below, we will take delivery of the Card Receivables as they are generated in the ordinary course of your business, regardless of how long it may take for the Card Receivables to be generated and delivered. We expressly assume the risk that your establishment(s) may not generate the entire Amount Sold, in which case we will not receive some or all of the Card Receivables we bought.

2. **Multiple Merchants/Locations**. If the Merchant consists of more than one legal entity or location, then you agree that each of those entities and/or locations will continue to remit to us the Specified Percentage of Card Receivables from that entity or location every day for Premier Restaurant Funding or every week for Dining Credits until we have received the entire Amount Sold. You will do this regardless of how you chose to allocate the Purchase Price among the entities or locations, and regardless of whether any of the entities or locations went out of business. However, when an entity or location goes out of business, that entity or location will have no obligation to continue to remit Card Receivables or make payments to us unless it breached this Agreement by committing any of the "bad acts" set forth below before going out of business. You acknowledge and agree that: (i) there is a direct and tangible benefit to each entity and location from entering into this Agreement, including from the marketing services described above; (ii) you are entering into this Agreement collectively in order to sell a larger amount of Card Receivables to us than we would buy from the entities or locations separately; (iii) each entity or location will benefit from our payment of the Purchase Price, regardless of how it is allocated (or not allocated) among you; and (iv) the fair saleable value of each of your assets exceeds its liabilities, and each of you is meeting your current liabilities as they mature. If the Merchant has allocated the Purchase Price and Amount Sold among multiple entities or locations comprising the Merchant on page 1 of this Agreement, Merchant is hereby requesting that Rewards Network provide separate account statements to each entity or location comprising the Merchant based on this allocation. Each entity or location comprising the Merchant acknowledges and agrees that (a) Rewards Network is providing separate account statements; and (b) notwithstanding our provision of such account statements or the fact that the Merchant has made an allocation for administrative convenience, each entity or location comprising the Merchant is obligated to continue to remit to us the Specified Percentage of Card Receivables from that entity or location every day for Premier Restaurant Funding or every week for Dining Credits until we have received the entire Amount Sold set forth at the bottom of page 1 of this Agreement.

3. **Payment**. We will pay the Purchase Price to you after we have accepted this Agreement. If the Merchant consists of more than one legal entity or location, we may deliver the Purchase Price to you by delivering the Purchase Price to the first legal entity listed on page 1 of this Agreement (the "Merchant Representative"). Upon our delivery of the Purchase Price to the Merchant Representative, the Merchant shall be deemed to have received the Purchase Price regardless of how the Merchant Representative distributes (or does not distribute) these funds among the entities or locations constituting the Merchant.

4. **Marketing and Other Services**. ███████████████████████████████████████████

8/22                                          Page 2 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

**MERCHANT PAYMENT PROCESS**

**5.  Merchant Payment Amount**. After we pay you the Purchase Price and beginning on a date determined in our sole discretion, you will deliver to us the Specified Percentage of Card Receivables generated by all of your Participating Locations (the "Merchant Payment") every day for Premier Restaurant Funding or every week for Dining Credits until you have delivered to us the Amount Sold. For Premier Restaurant Funding, on days when banks are not open, the Specified Percentage will be delivered to us on the next banking day. If you have more than one Participating Location, you understand that some Participating Locations may remit more Card Receivables to us than others. If the amounts that result from the Specified Percentage include fractional cents, you authorize us to round the amounts up or down to the nearest penny.

**6. Authorized Processors; Disclosures to American Express; Processor Changes.**

a. Use of Authorized Processors. You agree to accept Payment Cards for business transactions at all Participating Locations, to use only Payment Card processors authorized by us ("Authorized Processor(s)") to process all of your Payment Card transactions, and to provide us with information for all Payment Card transactions at such locations through the Authorized Processors. During the term of this Agreement and for up to ninety (90) days prior to the date this Agreement is executed and ninety (90) days after its termination, you authorize the Authorized Processor(s) and any other entity that provides Payment Card-related services and has access to information on Payment Card transactions at such locations (including a payment card network), to provide us any information we request concerning your Payment Card transactions, including, but not limited to, aggregate Payment Card transactions and transaction amounts, so that during the term of the Agreement we can monitor your compliance with this Agreement and identify Qualified Transactions for the purpose of providing rewards to our Members. After the termination of the Agreement, unless you opt-out by emailing us at clientservices@rewardsnetwork.com, we may monitor transactions that would constitute Qualified Transactions to provide you insight on those transactions. During the term of this Agreement, you agree not to use Payment Card processors that are not Authorized Processors, either in addition to or in lieu of Authorized Processors.

b. American Express Authorization

c. Processor Changes; Effect of Missed Transaction Data on Merchant Payments. You recognize that, if a change from an Authorized Processor is carried out without any advance notice to us, we will lose our ability to collect the Card Receivables through Merchant Payments and reward our Members for Qualified Transactions at your Participating Locations. For this reason, if you change to another Payment Card processor during your program participation, you must give us 15 days advance written notice of any such change. The notice must be directed to clientservices@rewardsnetwork.com If you do not give us the required notice, you must pay us a $500 administrative processor change fee.

**7. Certification of Bank Account; Authorization to Initiate Electronic Debits to Bank Account**

a. Certification and Designation of Bank Account. You certify that the deposit account information ("Bank Account") provided to us is a checking account in good standing; that the Bank Account is used primarily for business purposes and was not established primarily for personal, family or household purposes; that you are the owner, holder or authorized user of the Bank Account; that you are authorized to withdraw funds from the Bank Account; and that you have designated the Bank Account as the Bank Account to be used for your participation in the program.

b. Authorization to Initiate Electronic Debits to Bank Account ("Authorization"). You irrevocably authorize us (which includes for the

8/22                                     Page 3 of 10

**CONFIDENTIAL**                                                                                          **RN0187**

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



purposes of this authorization, our agents, service providers, successors and assigns) to initiate electronic debit entries via the Automated Clearing House ("ACH") network or similar network to the Bank Accounts or any substitute bank account you later specify (collectively, "Bank Account") for any amounts due to us, including Merchant Payments and Substitute Merchant Payments (defined in Section 13(b) below), on or after the dates such amounts are created or come due. If you deliver on a daily basis, you authorize us to initiate a single debit for the combined amounts of different days' Merchant Payments (e.g., initiate a single debit on Monday for Merchant Payments that were created on Friday, Saturday and Sunday) or to initiate individual debits for such Merchant Payments. You will not allow a Bank Account to be closed or replaced unless you provide us at least 10 days advance written notice and sufficient information and documentation for us to update our records relating to a replacement Bank Account. The notice must be directed to clientservices@rewardsnetwork.com. **If we are unable to withdraw amounts from a Bank Account for any reason, you agree to pay us a $25 returned transaction fee for each such occurrence in addition to all other remedies available to us.** You authorize us to initiate a separate debit to the Bank Account for this fee or to add this fee to a debit for a subsequent Merchant Payment. In the event that any debit is not successful, you authorize us to reinitiate the debit up to two additional times. In the event we make an error in initiating a debit or credit, you authorize us to initiate a credit or debit to correct the error. To the extent that we initiate debits over the ACH network, you agree to be bound by the rules governing the ACH network. You agree that you will not cancel this Authorization or instruct any depository holding Card Receivables we have purchased to reject our debits. You acknowledge that the origination of ACH debits from the Bank Account and Substitute Bank Account(s), if applicable, must comply with U.S. law and the Rules and Operating Guidelines of NACHA (formerly known as the National Automated Clearing House Association). You agree to be bound by the Rules and Operating Guidelines of NACHA.

**8.** Method of Payment to RN. You will receive full payment for all Payment Card transactions from your Authorized Processor(s), but an amount equal to the Merchant Payment will be held by you in trust on our behalf and you will remit that amount to us. We may debit the amount of Merchant Payments or Substitute Merchant Payments, as defined below, from the Bank Account at any time.

**9.** Collection of Card Receivables through Program Participation. We will take delivery of Merchant Payments and Substitute Merchant Payments (if applicable) until we receive an amount equal to the Amount Sold. We will transmit statements to you indicating the amount of Merchant Payments due to us for the collection of Card Receivables during the statement period and the balance of undelivered Card Receivables at the end of the statement period after the application of the Merchant Payments. You agree to review each statement promptly after we send it to you and notify us if there is any discrepancy or error. If you do not notify us within thirty (30) days, you agree that the information in our statement is accurate. You agree to respond to reasonable inquiries regarding the current status of your business, and to notify us in writing if you cease operating your business.

**10. Continued Marketing Services and Program Fees Following Collection of Card Receivables.  When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, we will continue to provide our Marketing Services to you until this Agreement is terminated under Section 15.  During that period, you agree to perform your obligations and to pay us a "Program Fee" for our Marketing Services in the amount of 15.0 % ("Program Fee Percentage") of each Qualified Transaction.**

**REPRESENTATIONS**

**11.** Representations. You represent to us that: (a) you are the sole and lawful owner of the Card Receivables and you own the Card Receivables free and clear of any liens, encumbrances, and adverse claims of any other person or entity ("Person"); (b) you have the full right to sell to us the Card Receivables free and clear of any liens encumbrances, and adverse claims of any other Person; (c) you have not entered into any agreements or made any offers to any person or entity to (i) sell, transfer or otherwise encumber the Card Receivables or (ii) sell, transfer or otherwise encumber all, or substantially all, of your assets; (d) the fair market value of your assets exceeds your liabilities; (e) you are meeting your current liabilities as they mature; (f) execution of this Agreement and your participation in our Program does not constitute a breach of your obligations to another Person; (g) you have no reason to believe that your business will cease operations within the next year, and you have not considered or discussed with anyone the possibility of filing a bankruptcy petition; (h) your legal name(s), DBA name(s), location address(es) and state of incorporation or formation are accurately set forth above; (i) all of the information provided on your Application for participation in our Program is true and correct; (j) each Bank Account is used for business purposes and not for personal, family or household purposes and you are an authorized signor on each Bank Account, and (k) you will use the Purchase Price solely for business or commercial purposes, and not for personal/consumer, family, or household purposes. You agree that, in the event that your Participating Location goes out of business or is the subject of a voluntary or involuntary filing for protection under the United States Bankruptcy Code within forty-five (45) days of us delivering the Purchase Price to you, there shall be a rebuttable presumption that your representations in Sections 11(d), (e), (g) and (i) were materially untrue when they were made to us.

**NON-PERFORMANCE**

**12.** Events of Non-Performance. You agree not to commit any of the following "bad acts," each of which is an event of non-performance

8/22                                    Page 4 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



under this Agreement ("Event of Non-Performance"), during the term of this Agreement: (a) you sell, transfer, or grant a security interest in Card Receivables to anyone other than us; (b) you allow any lien or other encumbrance to attach to our interest (or that of our transferee) in your Card Receivables; (c) you sell your business, any of the locations used by your business, or all or substantially all of your assets used by your business or any Participating Location to a third party before delivering to us all of the Card Receivables we purchased under this Agreement; (d) you materially change the operation of your business at any Participating Location (e.g., changes in concept, size, etc.); (e) you stop taking Payment Cards as an accepted method of payment for transactions, or discourage the use of Payment Cards, at any Participating Location; (f) you change your legal name or jurisdiction of formation without giving us advance notice of the change; (g) we are unable to debit the Bank Account for the full amount of any Merchant Payment or Substitute Merchant Payment, as defined below; (h) you change Payment Card processors without giving us advance notice as provided in Section 6(c); (i) we revoke the authorization of an Authorized Processor and you do not obtain a replacement Authorized Processor within fifteen (15) days after receiving notice from us; (j) you utilize one or more Payment Card processors that is not an Authorized Processor to process any of your Payment Card transactions; and (k) any representation set forth in your Application, in Section 11 above and/or in Section 19 below shall be false or misleading in any material respect; provided, however, that none of the foregoing (except for subpart 12(k)) shall constitute an Event of Non-Performance if it occurred because a Participating Location went out of business in the ordinary course. These Events of Non-Performance are intended only to prevent you from interfering with our bargained-for right to collect the Card Receivables we purchased as they are created in the ordinary course of your business. They do not create any obligation for you to deliver Card Receivables to us if they are simply not generated by your business.

13. **Obligations Upon an Event of Non-Performance.**

a. Upon any Event of Non-Performance, and except as provided in subpart 13(b) below, we may exercise any and all rights and remedies available to us under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code (UCC). You agree that each Event of Non-Performance has the effect of preventing us from obtaining the Card Receivables we purchased from you, and that the full undelivered Card Receivables balance therefore constitutes a reasonable amount of liquidated damages to which we shall be entitled if any Event of Non-Performance occurs. You further agree that we shall be entitled to recover all unpaid fees and other amounts due to us under this Agreement. All of these amounts are immediately due and payable if an Event of Non-Performance occurs, and you agree that we are authorized to withdraw these amounts from the Bank Account without further notice to you. In the event that a legal proceeding is brought to enforce or obtain a declaration of our rights under this Agreement, you agree to pay all reasonable attorneys' fees, costs, and expenses we incur in any and all such proceedings. All rights and remedies available to us are cumulative and not exclusive of any other remedies available to us in law or equity, or under other sections of this Agreement.

b. If an Event of Non-Performance under Section 12(h) occurs, and a Participating Location remains open for business, we may elect, at our sole discretion, and without waiving our right to pursue the remedies set forth in subpart 13(a) above, to pursue the remedy set forth in this subpart 13(b). If we do not receive Payment Card transaction information for three (3) or more consecutive days due to a change in Payment Card Processors without giving us advance notice, you authorize us, at our sole discretion, to initiate daily debits from your Bank Account equal to the average amount of the prior successful ten (10) Merchant Payment debits from your Bank Account until such time as we begin receiving Payment Card transaction data from an Authorized Processor or until we elect to proceed with our remedies under subpart 13(a) above. If the number of successful Merchant Payment debits from your Bank Account prior to our first missed Payment Card transaction fee resulting from your change of processors is less than ten, then the daily debits that you authorize us to initiate shall be equal to the average of all such prior successful Merchant Payments. Any debits successfully completed in accordance with the previous sentences will be treated as Merchant Payments and referred to as "Substitute Merchant Payments" under this Agreement. During the period that Substitute Merchant Payments are being made, we will stop our Marketing Services. If we are able to resume Merchant Payments using Payment Card transaction information from an Authorized Processor that you have selected, we will reinstate your program participation, at which time you will resume making Merchant Payments to us and we will resume our Marketing Services as if the Event of Non-Performance had not occurred.

14. **Discontinuation of Marketing Services.** ████████████████████████████████████████
████████████████████

## TERMINATION OF AGREEMENT

15. **Termination.** When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, you may terminate our Marketing Services by sending a written request via electronic mail to clientservices@rewardsnetwork.com. This Agreement will terminate and Rewards Network will have no further obligation to you at the close of your business on the 30th day after the written notice is received.

16. **Survival after Termination.** Notwithstanding the termination of this Agreement, Sections 20, 23, 24, 25 and 26 will survive termination and remain in full force and effect.

8/22                                          Page 5 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



## REPURCHASE OF CARD RECEIVABLES

**17. Repurchase of Card Receivables.** If there are Card Receivables sold to us but undelivered, and no Event of Non-Performance under Section 12 has occurred, you have the option to repurchase the undelivered Card Receivables ("Repurchase Option"). You can repurchase the undelivered Card Receivables by paying to us an amount ("Repurchase Amount") equal to (i) the full undelivered Card Receivables balance, plus (ii) any other fees and other amounts due to us under this Agreement. You must provide at least seven (7) days' prior written notice to us of your intent to exercise your Repurchase Option ("Repurchase Notice") by sending a written request via electronic mail to clientservices@rewardsnetwork.com.

## SECURITY INTEREST PLEDGED IN COLLATERAL

**18. Security Interest and Collateral Pledged.** As security for the prompt, full and timely performance and observance of the obligations and agreements set out in Sections 12 and 13 of this Agreement, you hereby grant to us a continuing security interest (the "Security Interest"), which will remain in full force and effect until the balance of Card Receivables we purchased has been reduced to zero and all fees and other amounts due to us under this Agreement have been paid, in the following:  All of your personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not we are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that you grant us is being given solely for the purpose of ensuring that you do not act to deprive us of our bargained-for ability to collect the Card Receivables as they are generated in the ordinary course of your business, as your business was described to us when we considered your Application to participate in our Program. The Security Interest does not secure repayment of a debt obligation and we have no right to demand payment of the balance of the Amount Sold in the absence of an Event of Non-Performance under Section 12.

**19. Financing Statements, Covenants and Remedies.** You authorize us (or any designee, nominee, transferee or servicer) to file UCC-1 or comparable statements as we deem necessary or appropriate to: (a) provide notice of our purchase of the Card Receivables under this Agreement, noting that the transaction is intended as a sale and not an assignment for security; and (b) perfect the security interest granted by you to us under this Agreement. You agree to promptly furnish upon our request written statements and schedules identifying and describing the Collateral in such detail as we may require. All of the Collateral is and will continue to be located at your place of business until the balance of Card Receivables we purchased has been reduced to zero and all fees and other amounts due to us under this Agreement have been paid, unless we consent in writing prior to any removal. You represent/warrant that you are the legal and beneficial owner of the Collateral and have the sole right to grant a security interest therein or other encumbrance; and you will not permit anything to be done that may impair or lessen the value of any of the Collateral or the Security Interest granted herein. You will, at your own expense, maintain insurance covering the Collateral in an amount not less than the full replacement value of such Collateral and against such risks, in such form and with such insurers, as will be satisfactory to us. Upon the occurrence of an Event of Non-Performance, we may pursue any and all rights and remedies we may have under the law including, without limitation, the rights of a secured party under the Uniform Commercial Code. Upon demand, you will pay all costs and expenses and reimburse us for all costs and expenditures, including without limitation attorneys' fees and legal expenses, in connection with enforcing our rights under this Agreement; all our costs and expenses incurred will be fully secured hereby; and you will indemnify and hold us harmless from any and all such costs and expenses. After deducting all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral, any residue of the proceeds of any sale or other disposition will be applied to payment of the liquidated damages, fees, and other amounts you owe us, except as otherwise provided by law or directed by any court of competent jurisdiction thereof. You will be liable for any deficiency in payment of the liquidated damages, fees, and other amounts you owe us, including all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral.

## OTHER TERMS AND CONDITIONS

**20. Indemnification.** You agree to indemnify, defend and hold us and our affiliates harmless from and against all losses and expenses incurred by us or our affiliates in connection with (a) any Event of Non-Performance under the Agreement, and (b) any claim initiated by any third party in connection with any alleged act or failure to act by you.

**21. Intellectual Property and Data Rights.** ████████████████████████████

8/22                                    Page 6 of 10

**CONFIDENTIAL**                                                              **RN0190**

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**22. Billing Disputes.** You will be responsible for all billing disputes relating to Payment Card transactions.

**23. Limitation on Liability.** We will not be liable for any loss of profits or special, consequential, incidental or punitive damages arising out of or relating to this Agreement to the maximum extent permitted under Illinois law.

**24. Governing Law.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**25. Arbitration Agreement** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



8/22                              Page 7 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**26. Contacting You.**

**MISCELLANEOUS**

**27. Transfer of Rights and Assignment of Agreement.** We may sell, pledge, assign or otherwise transfer (a) any or all of the Card Receivables, (b) the right to receive Merchant Payments or Substitute Merchant Payments, (c) this Agreement, and/or (d) any other rights under this Agreement to any person (each, a "Transferee") without your consent. Any Transferee will be entitled to exercise any and all of our rights and receive all benefits afforded us hereunder, including the collection of the Merchant Payments or Substitute Merchant Payments, the collection of Card Receivables and the collection of any amounts due under Section 13 arising from an Event of Non-Performance. We may also delegate any of our duties and engage any service providers to perform any of our obligations or exercise any of our rights under this Agreement. This Agreement and your obligations under this Agreement are not assignable or transferable by you without our express written consent. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

**28. Authority; Further Assurances; Operation of Business.**

**29. Privacy Policy.**

**30. Notices.**

**31. Entire Agreement; Amendments.**

**32. Partial Invalidity and Waiver.**

8/22                                    Page 8 of 10

**CONFIDENTIAL**                                    **RN0192**

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

rewards
network.

**33. Third-Party Beneficiary; No Agent.** Except as otherwise specifically stated herein, nothing in this Agreement will operate to confer benefits on entities other than you, us, or our respective successors or assigns; except that American Express is the intended third party beneficiary with respect to the "Authorized Processors; Disclosures to American Express; Processor Changes" section of this Agreement and reserves all rights to assert any and all claims in connection with such section, as if it were a party to this Agreement. The parties hereby expressly agree that we are not your fiduciary or partner.

**34. Non-Disclosure Obligations.**

**35. Counterparts and Facsimile Signature.**

**BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT AS OUTLINED ABOVE, INCLUDING THE ARBITRATION CLAUSE IN SECTION 25 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT.**

By: _____    _____    _____
      Authorized Signature                    Print Name                              Title

**Yes, call or text me for marketing purposes.** I consent to receive texts and telemarketing calls using an autodialer or a prerecorded message from Rewards Network or its affiliates for information and/or marketing purposes related to Rewards Network's product or services to the phone number provided above. Consent to receive marketing messages is not required as a condition of purchasing goods or services from Rewards Network. Message and data rates may apply and Rewards Network is not liable for such charges. I may unsubscribe or stop such communications by emailing clientservices@rewardsnetwork.com or by replying "STOP" to any text messages from Rewards Network.

_____    _____    1/24/2023
Authorized Signature                    Print Name                              Date

_____
Cell Phone Number

CONFIDENTIAL                                                                 RN0193

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**ADDITIONAL MERCHANT INFORMATION**

_____

Mailing Address (Street)

_____

Mailing City

_____

Mailing State

_____

Mailing Zip Code

Day-to-Day Contact Name

Alternate Phone/Cell Phone (Not Restaurant Phone)

Email Address

CONFIDENTIAL                                                      RN0194

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**PERSONAL LIABILITY AGREEMENT & CONSUMER REPORT AUTHORIZATION**

In order to induce Rewards Network Establishment Services Inc. ("Rewards Network") to enter into the foregoing Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement"), each person, whose name and signature appear below (individually, a "Signatory"), "), represents to Rewards Network that he/she was substantively involved in the application process for the Agreement and represents and warrants that all documents and information provided to Rewards Network in the application process were true and accurate. The Signatory understands and affirms that Rewards Network reasonably relied on the documents and information provided in the application process and all such documents and information were considered by Rewards Network to be material to its decision to enter the Agreement. The Signatory further states that he/she has read the Agreement identified and dated below and personally agrees to be immediately liable to Rewards Network for misrepresentations or omissions in those documents and information as well as any and all sums due by the Merchant under Section 13 of the Agreement occasioned by an Event of Non-Performance under Section 12 of the Agreement. Rewards Network is not required to first seek to collect any sums due from the Merchant(s) selling the Card Receivables. This responsibility is continuing, irrevocable, unconditional and joint and several among each person identified below.  Sections 20, 23, 24, 25 (**which is an arbitration provision with a class action waiver**), 26 and 29 of the Agreement are specifically incorporated into this Personal Liability Agreement.

By signing below, each Signatory expressly authorizes Rewards Network (which includes, for the purpose of this paragraph, Rewards Network's successors, assigns, agents and service providers) to obtain consumer reports about the Signatory in connection with the Agreement and any dealings between Rewards Network and Signatory.  Any such reports may contain personal information about the Signatory, including, but not limited to, public record information and information about Signatory's credit-worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, criminal history, citizenship status or fraudulent activity.  If adverse action is taken, based in whole or in part on the information contained in the consumer report, Signatory will be provided with the name, address, and telephone number of the consumer reporting agency as well as a summary of Signatory's rights under the Fair Credit Reporting Act.  Signatory voluntarily and knowingly authorizes and requests any consumer reporting agency engaged by Rewards Network to furnish the above mentioned information to Rewards Network.  Signatory understands that the above-mentioned information may be obtained from a variety of sources, including, but not limited to, public records, vendors credit bureaus and financial institutions.  Signatory further authorizes Rewards Network to obtain the above-mentioned reports at any time during which the Agreement is in effect or Card Receivables remain undelivered.

In the event that we hold any Signatory personally liable, Signatory understands that Rewards Network may report information about Signatory's personal liability to consumer reporting agencies and such information may have a negative impact on Signatory's personal credit.

Rewards Network Receivables Purchase and Marketing Agreement dated    1/24/2023

Signature of Signatory

Printed Name of Signatory

1/24/2023

Date

8/22                                              Page 1 of 1

DocuSign Envelope ID: 48189FF6-899B-433D-BC58-D610A38F5B3F

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS**
**Rule 902(11) of the Federal Rules of Evidence**

I, Dan Badie, am Director of Due Diligence at Rewards Network Establishment Services Inc.
(Rewards Network).  I am familiar with Rewards Network's practices with respect to creation
and maintenance of customer contracts and disclosures, and I am authorized by Rewards
Network to make this certification.  I state that each of the records numbered RN 0001—
RN 1347 is a true duplicate of the original record in the custody of Rewards Network.

I further state that:

      A.    the records numbered RN 0001—RN  1347 were made at or near the time of the
occurrence of the matters set forth in those records by individuals with knowledge;

      B.    such records are kept in the course of regularly conducted business activities of
Rewards Network; and

      C.    such records were made by Rewards Network as a regular practice.

      I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.  Executed on September 12, 2023, at Chicago, Illinois.

*Dan Badie*
Dan Badie

sf-5625918

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:22-cv-08775-RGK-SK Small Business Finance Association v. Clothilde Hewlett Sealed Declaration in SupportDeclaration |
| **Date:** | Monday, October 9, 2023 4:00:22 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Levin, Paul on 10/9/2023 at 12:58 PM PDT and filed on 10/9/2023

| | |
|---|---|
| **Case Name:** | Small Business Finance Association v. Clothilde Hewlett |
| **Case Number:** | 2:22-cv-08775-RGK-SK |
| **Filer:** | Small Business Finance Association |

**Document Number:** 73

**Docket Text:**
**SEALED DECLARATION IN SUPPORT OF APPLICATION to file document** *Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of Departments Opposition to SBFAs motion to exclude certain opinions of the Departments expert Adam Levitin* **under seal[69] filed by Plaintiff Small Business Finance Association.(Levin, Paul)**

**2:22-cv-08775-RGK-SK Notice has been electronically mailed to:**

Benjamin H. Brodsky     bbrodsky@bfwlegal.com, docketing@bfwlegal.com

Craig Damon Rust     craig.rust@doj.ca.gov

Dan E. Marmalefsky     dmarmalefsky@mofo.com, dan-marmalefsky-8634@ecf.pacerpro.com, Docket-LA@mofo.com, mmendoza@mofo.com

David Sidney Shaffer Nahmias     dnahmias@law.berkeley.edu

Douglas J Beteta     Douglas.Beteta@doj.ca.gov

Ji Yeon Yoo     rachel.yoo@doj.ca.gov

Lauren M. Gibbs     lauren@markmigdal.com, eservice@markmigdal.com

Nancy R Thomas     nthomas@mofo.com, alicia-vargas-9157@ecf.pacerpro.com, avargas@mofo.com, Docket-LA@mofo.com, nancy-thomas-4464@ecf.pacerpro.com

Paul A Levin     paul@markmigdal.com, eservice@markmigdal.com

Philip T. Merenda     phil@bfwlegal.com, docketing@bfwlegal.com

**2:22-cv-08775-RGK-SK Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Declaration of Steven Denis in Support of Sealing.doc.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=10/9/2023] [FileNumber=36678828-0
] [186f374afcf79191cdb2a00cc2bb2b19b26902c17a38977dfe296b37847dc03c9dd
c07fbb0d5e946663743ee4087aa553d744973801b78704725b06ab2334578]]

1   ROB BONTA
    Attorney General of California
2   LISA W. CHAO
    MICHAEL D. GOWE
3   Supervising Deputy Attorneys General
    DOUGLAS J. BETETA (SBN: 260377)
4   RACHEL J. YOO (SBN: 293598)
    Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
             Rachel.Yoo@doj.ca.gov
8   *Attorneys for Defendant*
    *Clothilde Hewlett, solely in her official capacity as*
9   *Commissioner of the California Department of*
    *Financial Protection and Innovation*
10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14

| | |
|---|---|
| 15 **SMALL BUSINESS FINANCE** | Case No.: 2:22-cv-08775-RGK-SK |
| 16 **ASSOCIATION,** | |
| | **DEFENDANT'S APPLICATION TO** |
| 17                          Plaintiff, | **FILE UNDER SEAL** |
| | **CONFIDENTIAL DOCUMENTS** |
| 18       **v.** | **AND INFORMATION SUBMITTED** |
| | **IN OPPOSITION TO MOTION TO** |
| 19 **CLOTHILDE HEWLETT, solely in** | **EXCLUDE CERTAIN OPINIONS** |
| **her official capacity as commissioner** | **OF DEFENDANT'S EXPERT** |
| 20 **of the California Department of** | **ADAM J. LEVITIN** |
| **Financial Protection and Innovation,** | |
| 21 | |
| 22 | Date:         October 30, 2023 |
| | Time:         9:00 a.m. |
| 23                       Defendant. | Courtroom:   850 |
| | Judge:        Hon. R. Gary Klausner |
| 24 | Trial Date:  December 12, 2023 |
| | Action Filed: December 2, 2022 |
| 25 | |

26

27

28

1

**APPLICATION**

Pursuant to section 5 of the Stipulated Protective Order entered in this matter on July 10, 2023 (Dkt. No. 37), any party or non-party producing documents or testimony in this matter may designate such information "CONFIDENTIAL." In addition, paragraph 12.3 of the Protective Order provides for the parties to comply with Local Rule 79-5 to file documents designated confidential under seal. In connection with its opposition to Plaintiff Small Business Finance Association's (SBFA) motion to exclude certain opinions of Defendant's expert Adam Levitin (the Opposition), Defendant Clothilde Hewlett, solely in her capacity as commissioner of the California Department of Financial Protection and Innovation (the Department), is submitting certain emails that SBFA designated "CONFIDENTIAL" pursuant to the Stipulated Protective Order. Thus, pursuant to Local Rule 79-5.2.2, the Department hereby submits this application to file under seal documents designated "CONFIDENTIAL" by other parties:

1.    Emails from Steve Denis, Executive Director of SBFA, to SBFA's membership dated September 5, 2018, October 1, 2018, August 14, 2019, November 15, 2019, April 13, 2021. The emails reveals communications and discussions between SBFA and its members. SBFA designated the entire emails CONFIDENTIAL and requested that the Department file them conditionally under seal. The Department has redacted portions of the emails that are not required for its Opposition. These emails are included in Exhibit 6 to the declaration of Rachel Yoo filed in support of the Opposition. See Declaration of Rachel Yoo In Support of Opposition to Motion to Exclude Certain Opinions of Defendant's Expert Adam J. Levitin, ¶ 7, Dkt. No. 68-1.

2.    Quotations from the emails above in the Department's Opposition. See Opposition to Motion to Exclude Certain Opinions of Defendant's Expert Adam J. Levitin, p. 10:6-11, Dkt. No. 68.

1    No party opposes this application. The Department respectfully requests that

2  the Court grant this application and order the documents listed above to be filed

3  under sealed. In the alternative, to the extent the application is denied, the

4  Department requests leave to file these documents in the public record.

5

6   Dated:  October 6, 2023                    ROB BONTA
                                             Attorney General of California
7                                            LISA W. CHAO
                                             MICHAEL D. GOWE
8                                            Supervising Deputy Attorneys General

9

10                                           */s/ Douglas J. Beteta*

11                                           Rachel J. Yoo
                                             Douglas J. Beteta
12                                           Deputy Attorney General

13                                           *Attorneys for Defendant Clothilde
                                             Hewlett, solely in her official*
14                                           *capacity as Commissioner of the*
                                             *California Department of Financial*
15                                           *Protection and Innovation*

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | October 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order Re: Defendant's Application to File Under Seal [DE 53]**

On September 27, 2023, Defendant filed an Application to file under seal two documents designed as confidential by other parties: (1) Nonparty Rewards Network's Receivables Purchase and Marketing Agreement ("Agreement"), and (2) Nonparty Rapid Financing's dataset of consumer information ("Consumer Dataset"). (ECF No. 53.) The materials were designated by Rewards Network and Rapid Financing, respectively, pursuant to a protective order.

Under Local Rule 79-5.2.2(b), a party may file an application to file under seal documents designated by another as confidential pursuant to a protective order. C.D. Cal. L.R. 79-5.2.2(b). After an application is filed, "[w]ithin 4 days . . . the Designating Party must file a declaration establishing that all or part of the designated material is sealable, by showing good cause or demonstrating compelling reasons why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard." *Id.* 79-5.2.2(b)(i).

Here, as the designating parties, Rewards Network and Rapid Financing had until October 2, 2023, to file a response establishing that the designated materials are sealable. On September 29, 2023, Rewards Network filed a statement in support of the Application and included a redacted version of the Agreement which would render sealing unnecessary. (ECF No. 60.) Defendant does not oppose using this redacted version. (*Id.* at 2.) The Court finds that this version would suffice for Defendant's purposes, obviating the need to seal. Moreover, the Court finds that Rewards Network's request to seal extensive portions of the Agreement, much of which include boilerplate terms, overbroad.

Meanwhile, Rapid Financing failed to file any response to support the sealing of the Consumer Dataset. If an application to file under seal is submitted for no other reason than compliance with a protective order, "**the Court will automatically deny the application** if the party designating the material as confidential does not file a declaration pursuant to L.R. 79-5.2.2.(b)(i)." (Standing Order ¶ 17, ECF No. 15.) (emphasis in original).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-08775-RGK-SK | Date | October 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

Accordingly, the Court **DENIES** Defendant's Application to File Under Seal. Pursuant to Local Rule 79-5.2.2(b)(ii), Defendant may file the unredacted materials in the public case file no earlier than 4 days, and no later than 10 days, from the issuance of this Order. However, upon the filing of a joint stipulation by Defendant and Rewards Network that a redacted version of the Agreement is sufficient, Defendant may file the redacted version, as provided in Rewards Network's September 29 filing, instead.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer        JRE/dc

1   DAN MARMALEFSKY (CA SBN 95477)
    DMarmalefsky@mofo.com
2   NANCY R. THOMAS (CA SBN 236185)
    NThomas@mofo.com
3   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
4   Los Angeles, California 90017-3543
    Telephone: 213.892.5200
5   Facsimile: 213.892.5454

6   Attorneys for Non-Party
    REWARDS NETWORK
7   ESTABLISHMENT SERVICES INC.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12   SMALL BUSINESS FINANCE ASSOCIATION, | Case No. 22-cv-08775-RGK-SK |
| 13 | **DESIGNATING NON-PARTY** |
|         Plaintiff, | **REWARDS NETWORK** |
| 14 | **ESTABLISHMENT SERVICES** |
|     v. | **INC.'S STATEMENT** |
| 15 | **REGARDING FURTHER** |
|   CLOTHILDE HEWLETT, solely in her | **REDACTED VERSION THAT** |
| 16   official capacity as Commissioner of the | **AVOIDS THE NEED FOR** |
|   California Department of Financial | **SEALING OR, IN THE** |
| 17   Protection and Innovation, | **ALTERNATIVE, IN SUPPORT** |
| | **OF DEFENDANT'S** |
| 18         Defendant. | **APPLICATION TO FILE** |
| 19 | **PORTIONS OF DISCLOSURES** |
| | **AND AN AGREEMENT UNDER** |
| 20 | **SEAL** |

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

Pursuant to Local Rule 79-5.2.2(b)(i), Non-Party Rewards Network Establishment Services Inc. (Rewards Network) submits this Statement regarding its proprietary and confidential Receivables Purchase and Marketing Agreement (the "Agreement") and disclosures made pursuant to the California regulations, numbered RN0184-0195, both subject to Defendant's Application to Seal. (ECF No. 53.)

Defendant's Statement of Undisputed Facts (SUF) establishes that the Agreement is cumulative of up to nine other pieces of evidence in the record, so there was no need for Defendant to submit it in the first place. Defendant's SUF also confirms that Defendant could and should have redacted the disclosures and almost all of the provisions in the Agreement, as contemplated by Local Rule 79-5.2.2(b)(i), because those portions of the documents were not cited in its Motion for Summary Judgment. This would have left only provisions that are not do not have to be filed under seal. Rewards Network has attached a version of the Agreement that can be filed in the public record as Exhibit A (the "Redacted Version") and respectfully requests that the Court either strike its Agreement from the record as redundant, or order Defendant to file the Redacted Version, for the reasons discussed below.

Even if that were not the case, in the alternative, Rewards Network has identified the portions of the Agreement that are proprietary and confidential and would cause competitive disadvantage if disclosed in Exhibit 1 to the supporting Declaration of Dan Badie. Rewards Network asks that if the Court does not strike the Agreement from the record or order filing of the Redacted Version, that it grant the Application as to the highlighted text in Exhibit 1. Defendant and non-party Rewards Network have conferred about filing under seal, and Defendant does not oppose it.

DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS ESTABLISHES THAT THERE WAS NO NEED FOR DEFENDANT TO FILE RETHAT WARDS NETWORK'S CONFIDENTIAL DOCUMENT AT ALL OR DEFENDANT COULD AND SHOULD HAVE FILED A REDACTED VERSION THAT DID NOT REQUIRE SEALING.**

With its Motion for Summary Judgment (MSJ), Defendant filed Rewards Network's entire Agreement and disclosures, which Rewards Network designated as Confidential under the Protective Order entered in this action.  (ECF No. 52-13, MSJ Ex. 11-165-176.)  As reflected in the chart below, Defendant cites to the Agreement only for broad generalizations, which it supports with at least two and up to nine additional citations, rendering Rewards Network's Agreement superfluous.  There is not one SUF for which Defendant relies solely on Rewards Network's confidential and proprietary agreement.  Therefore, the Court should strike Rewards Network's confidential and proprietary Agreement from the record as cumulative and unnecessary.

Even if that were not the case, Defendant does not cite to the disclosures at issue in the case at all, and cites only to five paragraphs of the Agreement plus the Primary Terms on the first page the Agreement (but not any of the actual pricing terms on that page).  (ECF No. 52-28, SUF Nos. 2, 6, 15, 16, 17, 19, 20, 56.) Defendant does not cite to anything in the rest of the Agreement.  Accordingly, all of the pages and provisions other than, at most, the five cited paragraphs plus the initial summary page can be and should have been redacted since they have no bearing on Defendant's arguments.[1]  *See, e.g.*, C.D. Cal. Local Rule 79-5.2.2(b) (requiring the filing party and designating party to "attempt to eliminate or minimize the need for filing under seal by means of redaction" and to the need to file an  application for sealing *only* if "the document cannot be suitably redacted"); *cf. DeMartini v. Microsoft Corp.*, No. 22-CV-08991-JSC, 2023 WL 4205770, at *6 (N.D. Cal. June 26, 2023) (granting application to seal information for which "[t]he

---

[1] The Redacted Version excludes pages of the Agreement for which all text would be redacted because there are no provisions on those pages cited by Defendant.

1  public's interest in disclosure . . . is minimal given that the [information to be

2  sealed] . . . is not central to the ongoing merits of the case").[2]

3       Turning to the parts of the Agreement cited in the SUF, as set forth in the

4  following chart and as reflected in the Redacted Version (attached as Exhibit A),

5  the broad, general statements in the SUFs that cite to the Agreement concern very

6  limited parts of the Agreement that are not Confidential:

| **SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176)** | **Number of Cites for the SUF** | **Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed]** |
|---|---|---|
| SUF2:  small business sells portion of its future sales receipts to purchaser for lump sum advance (citing ¶ 1) | 10 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version specifies that the small business is selling a percentage of future Card Receivables for the Purchase Price.<br><br>DFPI does not refer in any way to the actual pricing or the other language on this page, all of which is proprietary and confidential information of a non-party. |
| SUF6:  small business pays the purchaser a | 9 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version indicates that Rewards Network buys the Amount Sold and |

[2] As reflected in the meet and confer emails, Rewards Network's counsel asked Defendant's counsel to identify the specific paragraphs of the Agreement Defendant would be citing in the Motion, and urged him to redact entire sections of the Agreement that have no bearing on the Motion, but Defendant's counsel declined to do so.  (ECF No. 54-1, Ex. A to Decl. of D. Beteta in Supp. of Def.'s Appl. to Seal.)

4

DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| percentage of its sales from a designated account on a daily or weekly basis until it pays back the amount sold (citing Primary Terms on p. 1, but not any pricing terms specific to the Agreement, and ¶ 6) | | that the small business assigns a percentage of its Receivables until Rewards Network has received the Amount Sold. Unredacted portion of ¶ 5 in the Redacted Version provides that the small business will deliver the Specified Percentage of Card Receivables generated daily or weekly until it has delivered the Amount Sold. Defendant also cites to pages 166, 167 and 168 of the Agreement, but does not cite to any particular paragraph; nor is there any need to put all three pages into the public record since the statement in this SUF is covered by the unredacted portion of the first page and ¶ 5. |
| SUF15: a variable payment contract does not specify a fixed payment and | 2 | Unredacted portion of first page of Agreement in the Redacted Version indicates a fixed percentage and not a fixed payment amount. DFPI does not refer in any way to the actual pricing or the other |

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| only specifies a fixed percentage (citing Primary Terms on first page, but not any pricing terms specific to the Agreement) | | language on this page, all of which is proprietary and confidential information of a non-party. |
| SUF16: small business gives purchaser "almost real time access" to a designated account to allow for payments without adjustment (citing ¶ 6) | 3 | Unredacted first sentence of the cited paragraph in the Redacted Version provides authorization for the payment processor to provide information for all Payment Card transactions.  Nothing else in the cited paragraph refers to access to an account. |
| SUF17: Contracts allow | 6 | Unredacted first sentence of the cited paragraph in the Redacted Version provides for a repurchase |

DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| prepayment and some offer discount (citing ¶ 17) | | option.  Nothing else in the cited paragraph concerns the SUF. |
| SUF19: Contracts provide various remedies in the event of default (citing ¶ 13) | 6 | The cited paragraph is unredacted in the Redacted Version and can be filed in the public record. |
| SUF20:  some purchasers take a security interest in the receivables and deem the small business in breach on all contracts that are not current (citing ¶ 18) | 3 | The cited paragraph is unredacted in the Redacted Version and can be filed in the public record. |

7

DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| SUF56: some contracts do not show "these metrics" (citing Primary Terms on p. 1 of the Agreement, but not any pricing terms specific to the Agreement) | 2 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version appears to be the cited material.<br><br>DFPI does not refer in any way to the actual pricing or the other language on this page, all of which is proprietary and confidential information of a non-party. |

Accordingly, Rewards Network respectfully requests that the Court either strike its confidential and proprietary Agreement as superfluous, or that the Court order Defendant to file the Redacted Version in the public record because nothing else in the Agreement is cited in Defendant's Motion and per the Local Rules, those portions should have been redacted to avoid the need for filing under seal.

## II. IN THE ALTERNATIVE, PORTIONS OF THE AGREEMENT SHOULD BE SEALED BECAUSE THEY ARE CONFIDENTIAL AND PROPRIETARY AND WOULD CAUSE COMPETITIVE DISADVANTAGE IF DISCLOSED TO REWARDS NETWORK'S COMPETITORS.

The supporting Declaration of Dan Badie establishes that there are compelling reasons to seal portions of the Agreement, which Rewards Network will refer to these portions of the Agreement as the "Confidential Information."

8

1   Rewards Network requests sealing only select portions of the Agreement, as

2   reflected in Exhibit 1 to the Designating Non-Party's Declaration in support of

3   Application to File Under Seal, filed concurrently.[3]

4        Under Federal Rule of Civil Procedure 26(c), this Court may seal court

5   documents to protect "a trade secret or other confidential research, development, or

6   commercial information."  Fed. R. Civ. P. 26(c)(1)(G).  Sealing is appropriate

7   where "compelling reasons" exist to protect the information from being disclosed to

8   the public.  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–80 (9th

9   Cir. 2006).

10       The Confidential Information reflects confidential, proprietary information

11  that Rewards Network designated as "Confidential" under the Stipulated Protective

12  Order (ECF No. 37.) and that Rewards Network treats as highly confidential in the

13  ordinary course of its business, and does not disclose to other customers or its

14  competitors.  (Designating Non-Party's Dan Badie Decl. in Supp. of Appl. to File

15  Under Seal ¶ 6.)  Specifically, the Confidential Information contains information

16  regarding Rewards Networks' proprietary pricing and contract terms—the

17  disclosure of which would put Rewards Network at a competitive disadvantage.

18  (*Id*. ¶¶ 4-5.)  A competitor could and likely would copy the contractual provisions

19  and product design reflected in those terms to avoid the need to spend the

20  significant time and expense Rewards Network spent to develop those terms and its

21  product design and to compete unfairly based on pricing information in the

22  Confidential Information.  (*Id*.)

23       For example, in SUF 16, DFPI cites to Agreement paragraph 6 regarding

24  Authorized Processors for the purported "Undisputed Fact" that a small business

25

26  [3] Note that the redactions in the Redacted Version (Ex. A) are different in some instances than the portions Rewards Network would ask to seal if the Court does not authorize filing of the Redacted version (Ex. 1 to the Designating Non-Party's

27  Decl.).  This is because the Redacted Version, as contemplated by Local Rule 79-5.2.2(b), redacts all provisions that are not relevant to Defendant's Motion.  The

28  proposed version for filing under seal identifies portions of the Agreement that meet the requirements for filing under seal.

1   that enters into an MCA agreement is required to give the purchaser "almost real-

2   time access to a designated account where its sales receipts accumulate," as the

3   method by which the small business pays the purchaser from the small business's

4   credit card receipts.  The mechanism by which Rewards Network obtains

5   information regarding a small business's credit card receivables is set out in detail

6   in the Agreement.  Rewards Network uses a different mechanism than many other

7   MCA providers and its mechanism is more accurate than other methods.  A

8   competitor who has access to those details could copy them and obtain those

9   efficiencies without the need to spend the time and effort Reward Network spent to

10  develop its process.  This would allow competitors to gain an unfair advantage.  (*Id.*

11  ¶ 5.)

12          Courts routinely grant motions to seal documents containing this type of

13  information.  *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-

14  BAS-AGS, 2018 WL 3629945, at *2 (S.D. Cal. July 31, 2018 (granting application

15  to seal contract terms because designating party met the "compelling reasons

16  standard to warrant filing the [contract] under seal" because it "contain[s] business

17  information which competitors could potentially misuse if disclosed"); *Stout v.*

18  *Hartford Life & Acc. Ins. Co.*, No. CV 11-6186 CW, 2012 WL 6025770, at *2

19  (N.D. Cal. Dec. 4, 2012) (granting application to seal contract terms because

20  designating party established "compelling reasons for sealing" contract terms that

21  would allow competitors to use the confidential information that would

22  "undermin[e the designating party's] ability to compete")

23          The risk of competitive disadvantage is particularly acute here given that

24  Defendant has involved many of Rewards Network's competitors in this lawsuit

25  such that there is good reason to expect competitors will be reviewing the docket

26  and will therefore have access to Rewards Network's proprietary pricing and

27  contractual terms if it is not sealed.  Moreover, as a third party, Rewards Network is

28  entitled to even more protections than would be the case for a party whose claims

1    and defenses are at issue in the suit.

2           Counsel for Rewards Network has discussed this Application with

3    Defendant's counsel and confirmed that Defendant does not oppose sealing of the

4    Agreement.  Accordingly, Rewards Network respectfully requests that if the Court

5    does not strike its Agreement from the record or order Defendant to file the

6    Redacted Version, that the Court grant Defendant's Application and seal the

7    Confidential Information reflected in the version of the Agreement attached to the

8    Badie Declaration as Exhibit 1.

9     Dated:  September 29, 2023              MORRISON & FOERSTER LLP

10

11                                           By: /s/ Nancy R. Thomas
                                                 Nancy R. Thomas
12
                                             *Attorneys for Non-Party*
13                                           ***Rewards Network
                                             Establishment Services Inc.***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

1

## CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Non-Party Rewards Network

3  Establishment Services Inc., certifies that this brief contains 2470 words, which

4  complies with the word limit of L.R. 11-6.1

5

6  Dated:  September 29, 2023          MORRISON & FOERSTER LLP

7                                                        By: /s/ Nancy R. Thomas

8                                                              Nancy R. Thomas

9                                                        *Attorneys for Non-Party*
                                                         ***Rewards Network***
10                                                       ***Establishment Services Inc.***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



Date of Agreement:   1/24/2023

## REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT

This Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement") is between Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network," "We," and/or "Us"), and each of the legal entities set forth below (collectively, "Merchant" and/or "You").

| | | |
|---|---|---|
| Legal Name of Merchant | Public Name of Merchant | State of Formation |

| | | | |
|---|---|---|---|
| Location Address | City | State | Zip Code |

### Primary Terms

In this Agreement, you are selling to us a percentage of the payments your customers make with credit, debit, and other types of payment cards ("Card Receivables").

We agree to buy from you (and you agree to sell to us) the amount of future Card Receivables shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below. In order to deliver to us the Amount Sold, you assign to us the share of your Receivables ("Specified Percentage") shown below, ████████████████████████████ from the date we deliver the Purchase Price until we have received the entire Amount Sold.

Purchase Price:

Amount Sold:

Specified Percentage:

8/22                          Page 1 of 10

CONFIDENTIAL                                                      RN0185

Exhibit A, Page 13

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**MERCHANT PAYMENT PROCESS**

**5. Merchant Payment Amount.** After we pay you the Purchase Price and beginning on a date determined in our sole discretion, you will deliver to us the Specified Percentage of Card Receivables generated [redacted] every day [redacted] or every week [redacted] until you have delivered to us the Amount Sold. [redacted] If the amounts that result from the Specified Percentage include fractional cents, you authorize us to round the amounts up or down to the nearest penny.

**6.** [redacted]

a. Use of Authorized Processors. You agree to accept Payment Cards for business transactions at all Participating Locations, to use only Payment Card processors authorized by us ("Authorized Processor(s)") to process all of your Payment Card transactions, and to provide us with information for all Payment Card transactions at such locations through the Authorized Processors.

b. [redacted]

c. [redacted]

7. [redacted]

Page 3 of 10

**CONFIDENTIAL**

**RN0187**

Exhibit A, Page 14

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**13. Obligations Upon an Event of Non-Performance.**

a. Upon any Event of Non-Performance, and except as provided in subpart 13(b) below, we may exercise any and all rights and remedies available to us under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code (UCC). You agree that each Event of Non-Performance has the effect of preventing us from obtaining the Card Receivables we purchased from you, and that the full undelivered Card Receivables balance therefore constitutes a reasonable amount of liquidated damages to which we shall be entitled if any Event of Non-Performance occurs. You further agree that we shall be entitled to recover all unpaid fees and other amounts due to us under this Agreement. All of these amounts are immediately due and payable if an Event of Non-Performance occurs, and you agree that we are authorized to withdraw these amounts from the Bank Account without further notice to you. In the event that a legal proceeding is brought to enforce or obtain a declaration of our rights under this Agreement, you agree to pay all reasonable attorneys' fees, costs, and expenses we incur in any and all such proceedings. All rights and remedies available to us are cumulative and not exclusive of any other remedies available to us in law or equity, or under other sections of this Agreement.



**TERMINATION OF AGREEMENT**

**CONFIDENTIAL**                                                      **RN0189**

Exhibit A, Page 15

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



## REPURCHASE OF CARD RECEIVABLES

**17. Repurchase of Card Receivables.** If there are Card Receivables sold to us but undelivered, and no Event of Non-Performance under Section 12 has occurred, you have the option to repurchase the undelivered Card Receivables ("Repurchase Option").

## SECURITY INTEREST PLEDGED IN COLLATERAL

**18. Security Interest and Collateral Pledged.** As security for the prompt, full and timely performance and observance of the obligations and agreements set out in Sections 12 and 13 of this Agreement, you hereby grant to us a continuing security interest (the "Security Interest"), which will remain in full force and effect until the balance of Card Receivables we purchased has been reduced to zero and all fees and other amounts due to us under this Agreement have been paid, in the following:  All of your personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not we are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that you grant us is being given solely for the purpose of ensuring that you do not act to deprive us of our bargained-for ability to collect the Card Receivables as they are generated in the ordinary course of your business, as your business was described to us when we considered your Application to participate in our Program. The Security Interest does not secure repayment of a debt obligation and we have no right to demand payment of the balance of the Amount Sold in the absence of an Event of Non-Performance under Section 12.



## OTHER TERMS AND CONDITIONS

8/22                                    Page 6 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



**BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT AS OUTLINED ABOVE, INCLUDING THE ARBITRATION CLAUSE IN SECTION 25 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT.**

By: _____  _____  _____
    Authorized Signature    Print Name    Title

_____  _____  1/24/2023
Authorized Signature    Print Name    Date

_____
Cell Phone Number

**CONFIDENTIAL**                                    **RN0193**

Exhibit A, Page 17

1  Stephanie Carroll, Esq. (S.B. # 263698)
   scarroll@publiccounsel.org
2  Ghirlandi Guidetti, Esq. (S.B. #307342)
   gguidetti@publiccounsel.org
3  PUBLIC COUNSEL
   610 S. Ardmore Avenue
4  Los Angeles, California 90005
   Tel: (213) 385-2977; Fax: (213) 201-4722

5  Seth E. Mermin, Esq. (S.B. # 189194)
   tmermin@law.berkeley.edu
6  David S. Nahmias, Esq. (S.B. # 324097)
   dnahmias@law.berkeley.edu
7  U.C. BERKELEY CENTER FOR CONSUMER LAW
   & ECONOMIC JUSTICE
8  308 Law Building
   Berkeley, CA 94720
9  Tel: (510) 643-3519

10 *Attorneys for Amici Curiae*

11

12                **UNITED STATES DISTRICT COURT**

13                **CENTRAL DISTRICT OF CALIFORNIA**

14 SMALL BUSINESS FINANCE              Case No.:  2:22-cv-08775-RGK-SK
   ASSOCIATION,
15                                     **NOTICE OF MOTION AND**
              *Plaintiff*,            **MOTION FOR LEAVE TO FILE**
16                                     **MEMORANDUM OF POINTS AND**
        vs.                           **AUTHORITIES OF PUBLIC**
17                                     **COUNSEL, UC BERKELEY**
   CLOTHILDE HEWLETT, solely in her   **CENTER FOR CONSUMER LAW &**
18 official capacity as Commissioner of the  **ECONOMIC JUSTICE,**
   California Department of Financial  **CALIFORNIA ASSOCIATION FOR**
19 Protection and Innovation,          **MICROENTERPRISE**
                                       **OPPORTUNITY, THE**
20            *Defendant*.            **RESPONSIBLE BUSINESS**
                                       **LENDING COALITION AND THE**
21                                     **OFFICE OF KAT TAYLOR AS**
                                       **AMICI CURIAE IN SUPPORT OF**
22                                     **DEFENDANT'S MOTION FOR**
                                       **SUMMARY JUDGMENT**
23
                                       Date:          October 30, 2023
24                                     Time:          9:00 AM
                                       Courtroom:     850
25                                     Judge:         Hon. R. Gary
                                       Klausner
26                                     Complaint filed:  December 2, 2022
                                       Disc. Cut-Off:    September 13, 2023
27                                     Mtn. Cut-Off:     September 27, 2023
                                       Trial Date:       December 12, 2023
28

## NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
## MEMORANDUM OF POINTS AND AUTHORITIES AS AMICI CURIAE

Please take notice that on September 27, 2023, Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition, and the Office of Kat Taylor (collectively, "amici") will and hereby do move the Court for leave to file the accompanying brief in support of Defendant Clothilde Hewlett's motion for summary judgment. (ECF No. 52).

Counsel for proposed amici curiae conferred with counsel for Plaintiff Small Business Finance Association ("SBFA") on September 21, 2023 but could not reach an agreement, thereby necessitating the filing of this motion. Declaration of Ghirlandi Guidetti ("Guidetti Decl.") ¶¶ 3-7; *see* Civ. L.R. 7-3. Defendant consents to the filing of this motion for leave; Plaintiff neither consents nor opposes the motion. Guidetti Decl. ¶¶ 7; *see* Fed. R. App. Proc. 29(a)(2).

### <u>LEGAL STANDARD</u>

Courts have broad discretion to admit or deny briefing of amicus curiae. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). Amici should "assist[] in a case of general public interest, supplement[] the efforts of counsel, and draw[] the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). Moreover, "[d]istrict courts frequently welcome amicus briefs from non-parties . . . if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Sonoma Falls Dev., LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003). While there are no strict

requirements to qualify as amici, the movant must at least "make a showing that [its] participation is useful to or otherwise desirable to the court." *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991) (internal quotation omitted).

The Federal Rules of Civil Procedure do not address requests to participate as amici curiae, therefore, district courts "rely on Federal Rule of Appellate Procedure 29 (Rule 29) when considering such requests." *Stoyas v. Toshiba Corp.*, No. 15-CV-4194 DDP (JCX), 2021 WL 2315200, at *2 (C.D. Cal. June 7, 2021) (quoting *United States v. State Water Res. Control Bd.*, No. 219CV000547 DAD EPG, 2020 WL 9144006, at *3 (E.D. Cal. Apr. 23, 2020)). Under Federal Rule of Appellate Procedure 2 (a)(3), a motion for leave to file an amicus brief must state: (A) the movant's interest; and (B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.

## DISCUSSION

## I.    INTERESTS OF PROPOSED AMICI CURIAE.

Proposed amici curiae Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition, and the Office of Kat Taylor, are a group of organizations with expertise in small business lending and a strong interest in preserving price transparency in that market. Their experience with disclosure requirements in this and other contexts will assist the Court because they can explain the extent to which the assertions of Plaintiff Small Business Finance Association (SBFA) are contradicted by the actual business practices of sales-based lenders.

**Public Counsel** is the nation's largest provider of pro bono legal services. Its Consumer Rights & Economic Justice project represents consumers and advocates

for their protection from unfair business practices. In addition, the Community Development Project provides critical technical and legal support to nonprofits and small businesses.

The **U.C. Berkeley Center for Consumer Law & Economic Justice** is the leading law school research and advocacy center dedicated to ensuring safe, equal, and fair access to the marketplace. Through regular participation as amicus curiae in the U.S. Supreme Court and other federal courts, the Center seeks to develop and enhance protections for consumers and small businesses. The Center appears in this case because of its interest in promoting transparency in credit markets and preserving the enforceability of the Department of Financial Protection and Innovation's commercial lending regulations.

The **California Association for Microenterprise Opportunity** is California's statewide micro-business network made up of over 395 organizations, agencies, and individuals dedicated to furthering Micro-Business development in California with small and micro-business financing such as loans and credit, technical assistance, and business management training.

The **Responsible Business Lending Coalition** is a network of nonprofit and for-profit lenders, investors, and small business advocates that share a commitment to innovation in small business lending and express concerns about the rise of irresponsible small business lending.

**The Office of Kat Taylor's** principal is a co-founder and board chair of Beneficial State Bank, a Community Development Financial Institution and certified B Corporation. She is also a co-founder investor and special limited partner at Radicle Impact and an advocate for fairness in lending markets.

## II.  AMICI CURIAE'S PERSPECTIVE IS RELEVANT AND WILL BENEFIT THE COURT.

The proposed memorandum will benefit the Court by offering independent expertise in the small business financial (SBF) market, particularly around Estimated APR disclosures, and how the DFPI's regulations compel disclosures that are fully in accord with the First Amendment. Amici elaborate on the predatory schemes that often mislead small business owners into harmful high-interest lending and detail exactly how APR disclosures provide potential borrowers with vital information. Moreover, amici explain how SBF providers already possess and regularly disseminate the information that is used to calculate the Estimated APR for their products. Because it is information that the providers already use internally and even publicly share, it is factual and uncontroversial, and disclosing that information in accordance with the DFPI's regulations is not unduly burdensome.

Amici curiae's contributions are relevant to the disposition of the case. Because amici advocate for and advise on small business lending, their broad collective experiences will provide the Court with a fuller perspective of the lending market and illustrate how the absence of disclosures in these products harm small businesses.

## CONCLUSION

For the foregoing reasons, the motion for leave to file the attached memorandum of points of authorities as amici curiae should be granted.

Dated:  September 27, 2023                    Respectfully submitted,

                                            PUBLIC COUNSEL

                                            By:   ___/s/ Ghirlandi Guidetti_____
                                                    Ghirlandi Guidetti
                                                    *Attorney for Proposed Amici Curiae*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stephanie Carroll, Esq. (S.B. # 263698)
scarroll@publiccounsel.org
Ghirlandi Guidetti, Esq. (S.B. #307342)
gguidetti@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Tel: (213) 385-2977; Fax: (213) 201-4722

Seth E. Mermin, Esq. (S.B. # 189194)
tmermin@law.berkeley.edu
David S. Nahmias, Esq. (S.B. #324097)
dnahmias@law.berkeley.edu
BERKELEY CENTER FOR
CONSUMER LAW
& ECONOMIC JUSTICE
308 Law Building
Berkeley, CA 94720
Tel: (510) 643-3519

1   Stephanie Carroll, Esq. (S.B. # 263698)
    scarroll@publiccounsel.org
2   Ghirlandi Guidetti, Esq. (S.B. # 307342)
    gguidetti@publiccounsel.org
3   PUBLIC COUNSEL
    610 S. Ardmore Avenue
4   Los Angeles, California 90005
    Tel: (213) 385-2977; Fax: (213) 201-4722
5
    Seth E. Mermin, Esq. (S.B. # 189194)
6   tmermin@law.berkeley.edu
    David S. Nahmias, Esq. (S.B. # 324097)
7   dnahmias@law.berkeley.edu
    U.C. BERKELEY CENTER FOR CONSUMER LAW
8   & ECONOMIC JUSTICE
    308 Law Building
9   Berkeley, CA 94720
    Tel: (510) 643-3519
10

11   *Attorneys for Amici Curiae*

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14   SMALL BUSINESS FINANCE          Case No.:  2:22-cv-08775-RGK-SK
     ASSOCIATION,
15                                   **[PROPOSED] MEMORANDUM OF**
                 *Plaintiff,*        **POINTS AND AUTHORITIES OF**
16                                   **PUBLIC COUNSEL, UC BERKELEY**
        vs.                          **CENTER FOR CONSUMER LAW &**
17                                   **ECONOMIC JUSTICE, CALIFORNIA**
     CLOTHILDE HEWLETT, solely in her **ASSOCIATION FOR**
18   official capacity as Commissioner of the **MICROENTERPRISE OPPORTUNITY,**
     California Department of Financial **THE RESPONSIBLE BUSINESS**
19   Protection and Innovation,      **LENDING COALITION, AND THE**
                                     **OFFICE OF KAT TAYLOR AS AMICI**
20               *Defendant.*        **CURIAE IN SUPPORT OF**
                                     **DEFENDANT'S MOTION FOR**
21                                   **SUMMARY JUDGMENT**

22                                   Date:            October 30, 2023
                                     Time:            9:00 AM
23                                   Courtroom:       850
                                     Judge:           Hon. R. Gary Klausner
24                                   Complaint filed: December 2, 2022
                                     Disc. Cut-Off:   September 13, 2023
25                                   Mtn. Cut-Off:    September 27, 2023
                                     Trial Date:      December 12, 2023
26

27

28

---

2:22-CV-08775-RGK-SK | NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MEMORANDUM OF POINTS
& AUTHORITIES AS AMICI CURIAE IN SUPPORT OF DEFENDANT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

INTERESTS OF AMICI CURIAE...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

ARGUMENT ..................................................................................................2

    I.     THE DFPI'S REGULATIONS ADDRESS CONFUSION
          AND OPACITY IN THE SALES-BASED LENDING MARKET.............2

    II.    SBF PROVIDERS KNOW HOW TO RELIABLY
          CALCULATE THE VARIOUS ESTIMATES REQUIRED
          BY THE REGULATIONS ...........................................................6

    III.   THE REGULATIONS REQUIRE ROUTINE INFORMATIONAL
          DISCLOSURES THAT COMPORT WITH THE
          FIRST AMENDMENT. ..................................................................8

        A.   The Regulations Do Not Limit Speech. ...................................8

        B.   The Regulations Also Withstand *Central Hudson* Scrutiny...................9

CONCLUSION ................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Am. Beverage Ass'n v. City & Cty. of S.F.*,
   916 F.3d 749 (9th Cir. 2019) ...................................................................... 1, 9

*Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022) ................................................................. 1, 6, 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Servs. Comm'n*, 447 U.S. 557,
   447 U.S. 557 (1980) .................................................................................. 10

*CTIA - The Wireless Ass'n v. City of Berkeley*,
   928 F.3d 832 ........................................................................................ 6, 7, 9

*Essex Partners Ltd. v. Merch. Cash & Cap.*,
   2011 WL 13123326 (C.D. Cal. Aug. 1, 2011) ............................................ 3

*Fla. Bar v. Went For It, Inc.*,
   515 U.S. 618, 626 (1995) .......................................................................... 10

*Nat'l Cable & Telecommc'ns Ass'n v. F.C.C.*,
   555 F.3d 996 (D.C. Cir. 2009) .................................................................. 10

*Nationwide Biweekly Admin., Inc. v. Owen*,
   873 F.3d 716 (9th Cir. 2017) ................................................................... 7, 9

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ................................................................. 9

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ............................................................................ 1, 6, 9

### STATUTES

California Financial Code,
   § 22804 ...................................................................................................... 5
   § 22806 ...................................................................................................... 5
   §§ 22800-22805 ....................................................................................... 5

### REGULATIONS

California Code of Regulations, Title 10
   § 901 .......................................................................................................... 1
   § 931(a)(3), (a)(7)(A) ............................................................................. 6, 7

## INTERESTS OF AMICI CURIAE

Proposed amici curiae Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition, and the Office of Kat Taylor are a group of organizations with expertise in small business lending and a strong interest in preserving price transparency in that market. Individual statements of interest are in proposed amici's motion for leave.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The regulations promulgated by the Department of Financial Protection and Innovation (DFPI), Cal. Code Regs. tit. 10, § 901 *et seq.* (the "Regulations") responded to a clear need identified by the California Legislature to address predatory practices in the small business lending market and help small businesses better understand sales-based financing (SBF) products. Pursuant to the Legislature's detailed statutory provisions requiring transparent pricing standards, the DFPI mandated estimated annualized percentage rate (APR) as well as other cost disclosures that SBF providers often already make public to their own borrowers and investors. Accordingly, they satisfy the First Amendment's compelled speech standards because they were reasonably and carefully designed to forestall deception of small businesses. *See Am. Beverage Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc). Specifically, the Regulations obligate "purely factual and uncontroversial" information already disclosed by SBF providers like those that Plaintiff Small Business Finance Association (SBFA) represents and are thus not "unduly burdensome." *Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022); *see Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985).

## ARGUMENT

### I.    THE DFPI'S REGULATIONS ADDRESS CONFUSION AND OPACITY IN THE SALES-BASED LENDING MARKET.

The Regulations require clear disclosures of basic terms for all types of small business financing, including SBF products, in accordance with the Legislature's goal to rein-in an industry that has long preyed on California's small businesses and entrepreneurs. SBF products such as merchant cash advances ("MCA") advance funds to small businesses in exchange for a share of future sales.[1] However, the unregulated SBF industry has historically relied on "aggressive, and often misleading" tactics to ensnare small business borrowers in financing schemes with obscure and abusive financing terms that often conceal high prices of those products.[2]

Federal regulators have observed that commercial loan products like MCAs often charge extraordinarily high estimated APR rates; sometimes "in the triple digits."[3] Yet, because these financing products are not ordinary loans that charge interest but, rather, obligate the borrower repay their cash advance plus a "factor" percentage of their

---

[1] *See* Def's Req. for Judicial Notice ("RJN") Ex. B at 4 (defining MCAs in SB 1235's legislative history) (ECF No. 12-2); *see also, e.g.,* Alexander J. Callen, Danielle Reyes, & Juliana Gerrick, *CFPB Deems Merchant Cash Advances to Be "Credit" Under ECOA,* Goodwin Law (April 27, 2023) https://perma.cc/5CTQ-SZRA; DFPI, *Advisory to Small Businesses with Merchant Cash Advance Contracts,* https://perma.cc/W6PD-ZRGC; Randa Kriss & Steve Nicastro, *Is a Merchant Cash Advance Right for Your Business?,* Nerd Wallet (Sept. 7, 2023), https://perma.cc/5EP5-ARGE.

[2] Evan Zullow, Sandhya Brown, & Malini Mithal, FTC, *Strictly Business Forum Staff Perspective* 6 (Feb. 2020), https://perma.cc/2WMU-DRXE/; *see also* Joyce Klein, *We protect individuals from predatory lending practices — why not small businesses too?* Aspen Inst. (Feb. 17, 2022), https://perma.cc/3XA6-D5MW.

[3] Zullow, Brown, & Mithal, *supra* note 2, at 6; Barbara J. Lipman & Ann Marie Wiersch, *Alternative Lending Through the Eyes of "Mom-and-Pop" Small-Business Owners,* Fed. Rsrv. Bank of Clev., 4 (Aug. 25, 2015), https://perma.cc/F6EW-HFKB (cautioning that "these credit products are unsecured and often carry effective interest rates that exceed those of traditional bank products").

---

**2:22-CV-08775-RGK-SK  MEMORANDUM OF POINTS & AUTHORITIES OF
AMICI CURIAE IN SUPPORT OF DEFENDANT**                                                    2

revenues,[4] SBF providers have managed to skirt traditional financing laws.[5] Significantly, providers have long confused customers in the same way they now attempt to confuse this Court.[6] Providers regularly use arcane semantic distinctions and unfamiliar terminology to sell what Federal Reserve researchers have described as "potentially higher-cost and less-transparent credit products."[7] For example, SBFA claims that small business owners do not "owe" the financing amount if their business's sales fall as in a traditional loan, Compl. ¶ 28, but providers' sharp practices in collecting every penny even if the business's sales fall have been the subject of significant scrutiny, including in a series of articles by *Bloomberg News*.[8] Ultimately, any distinctions between MCAs and loans matter little to potential borrowers. The Regulations are accordingly designed to help small business owners compare the prices, regardless of how money advanced is repaid.

    For small businesses, the results of unregulated SBF products are often devastating. One analysis of their contracts found that the average undisclosed APR charged was 94 percent, and that some APRs exceeded 350 percent.[9] Moreover, the

---

[4] Zullow, Brown, & Mithal, *supra* note 2, at 6.

[5] Whether SBF products are loans and thus subject to lending laws is heavily litigated; however, some courts have suggested that they are loans and thus subject to state usury laws. *See, e.g.*, *Essex Partners Ltd. v. Merch. Cash & Cap.*, 2011 WL 13123326, at *6-7 (C.D. Cal. Aug. 1, 2011).

[6] For instance, SBFA's description to this Court of its mission, Compl. ¶ 4, disingenuously changes the word "lending" to "financing" in the phrase "small business *lending* market," which is how it describes itself on its website. *Small Business Finance Association*, https://perma.cc/54T7-555C; *see* Def.'s Mot. for Summ. J. ("MSJ") at 13-14 (ECF No. 52).

[7] Mels de Zeeuw, *Small Business Credit Survey Report on Minority-Owned Firms*, Fed. Rsrv. Bank of Atl. at p. IV (Dec. 2019), https://perma.cc/XA9B-WRAG.

[8] *Sign Here to Lose Everything: The Predatory Lending Machine Crushing Small Businesses Across America*, Bloomberg, https://tinyurl.com/wpyjhpv4.

[9] Eric Weaver et al., *Unaffordable and Unsustainable: The New Business Lending on*

average payment was 178 percent of the business's net income. In other words, the *average* payment was about *double* what the small business could afford, pushing them into unprofitability and, sometimes, even bankruptcy.

SBF providers, moreover, mislead their customers by concealing their known APR rates, and, therefore, make it nearly impossible for small businesses to compare the prices of the products with other options—something that they have regularly asked for. The Federal Reserve has repeatedly documented that small businesses are, at best, confused by how SBF compares to traditional financing and, at worst, lured into buying ruinously expensive SBF products.[10] The lack of clear disclosures, especially the absence of an estimated APR, can mislead customers into accepting higher-priced financing. For example, three different providers' publicly advertised products with a 1.15 factor rate, 4 percent fee, and 9 percent simple interest rate had hidden estimated APR equivalents of about 70 percent, 45 percent, and 46 percent.[11] Another study found that 700 personal and business bankruptcies in the past 10 years have been associated with large SBF providers.[12] In one case, a popular Oakland restaurant had to file for

---

*Main Street,* Opportunity Fund, 3 (May 2016) https://perma.cc/X9G4-DHFD.
[10] *See, e.g.*, Ann Marie Wiersch et al., *Clicking for Credit: Experiences of Online Lender Applicants from the Small Business Credit Survey*, Fed. Rsrv. Bank of Clev., 4 (Aug. 2022), https://perma.cc/WYT2-6L7C; Barbara J. Lipman & Ann Marie Wiersch, *Uncertain Terms: What Small Business Borrowers Find When Browsing Online Lender Websites*, Bd. of Governors of the Fed. Rsrv. Sys. (Dec. 2019) (hereafter *Uncertain Terms*), https://perma.cc/37Q6-J3F5; Barbara J. Lipman et al., *Searching for Small Business Credit Online: What Prospective Borrowers Encounter on Fintech Lender Websites*, Consumer & Cmty. Context 3, 7 (2019), https://perma.cc/W938-C8EK; Lipman & Wiesch, *Alternative Lending Through the Eyes of "Mom-and-Pop" Small-Business Owners, supra* note 3, at 5-6.
[11] Lipman & Wiersch, *Uncertain Terms, supra* note 9, at 18.
[12] Ben Wieder, *Their Bakery Faced a Cash Crisis. The Solution Nearly Cost Them The Business*, The Sacramento Bee, July 2, 2023. **Attached as Exhibit A.**

---

**2:22-CV-08775-RGK-SK  MEMORANDUM OF POINTS & AUTHORITIES OF
AMICI CURIAE IN SUPPORT OF DEFENDANT**                                          4

1  bankruptcy after its owner could not repay an $85,000 merchant receivables purchase
2  agreement that the owner had mistakenly believed was a loan.[13] And as a San Francisco
3  fitness studio owner describes his experience using an MCA: "They do everything in
4  their power to make sure that you can't compare A to B."[14] In light of these concerns,
5  small business owners have requested "clearly stated product features and costs to make
6  it easier to compare product offerings," including expressing interests rates like APR.[15]
7  In the Federal Reserve study mentioned above, small business owners reported that
8  "APR was among [the] most helpful details" in different disclosures presented to
9  them.[16] *See also* Def.'s MSJ at 16.
10
11         California heard these concerns and acted. In 2018, the Legislature sought to
12  make it easier for small businesses to compare the prices of commercial financing
13  products by passing SB 1235, which mandated more transparency.[17] *See* RJN Ex. B at 4
14  (quoting statement by the bill's author that "Surveys show that many business owners
15  do not understand the interest rates, prepayment rules and other terms of the financing
16  that is available today and support more disclosure").[18] The DFPI, following the
17  legislature's clear instructions—including how commercial financers must disclose
18  their annualized rate, *see* Cal. Fin. Code § 22804—thereafter issued the Regulations in
19
20
21
22  ───────────────
23  [13] Paolo Bicchieri, *This Popular Oakland-Based Vegan Restaurant Has Filed for
    Bankruptcy Protection*, Eater S.F. (Mar. 21, 2022) https://perma.cc/ZGY4-V89M.
24  [14] Ben Weider, *Even finance whizzes say it's impossible to compare online small
    business loan options*, The Sacramento Bee, June 19, 2023. **Attached as Exhibit B.**
25  [15] Lipman & Wiersch, *Alternative Lending Through the Eyes of "Mom-and-Pop"
    Small-Business Owners*, *supra* note 3, at 7.
26  [16] Lipman & Wiersch, *Uncertain Terms*, *supra* note 10, at 26
27  [17] S.B. 1235, 2017-2018 Sess. (Cal. 2018) (codified at Cal. Fin. Code §§ 22800-22805).
28  [18] The Legislature also recently unanimously passed SB 33, which removes the sunset
    date from SB 1235, emphasizing the state's strong interest in regulating the industry.
    S.B. 33, 2023-2024 Sess. (Cal. 2023) (codified at Cal. Fin. Code § 22806).

───────────────
**2:22-CV-08775-RGK-SK  MEMORANDUM OF POINTS & AUTHORITIES OF
AMICI CURIAE IN SUPPORT OF DEFENDANT**                                    5

response to a legitimate government interest identified by the Legislature.[19]

## II.  SBF PROVIDERS KNOW HOW TO RELIABLY CALCULATE THE VARIOUS ESTIMATES REQUIRED BY THE REGULATIONS

SBF providers already possess and regularly disseminate the information—i.e., Estimated Term and Estimated Payment, as those terms are characterized in the Regulations—that is used to calculate the Estimated APR, which allow small businesses to compare the price of the product. Because this data is based on numbers supplied by the provider itself, it constitutes purely factual and uncontroversial information. *See CTIA*, 928 F.3d at 842 (allowing "truthful disclosures in commercial speech" under *Zauderer* in those circumstances). The Regulations simply require a factually accurate statement of the Estimated APR, using the "best information reasonably available" at the time of the disclosure. *See, e.g.*, Cal. Code Regs., tit. 10, § 931(a)(3), (a)(7)(A). The opposition of high-price lenders to disclosing their high prices does not make these disclosures "controversial," as the information at issue—an Estimated APR, which is calculated with a mathematical formula—does not involve "robust disagreement," *see Cal. Chamber*, 29 F.4th at 478, nor does it require SBF providers to "take sides in a heated political controversy," *see CTIA*, 928 F.3d at 848. Indeed, it is disingenuous to argue that any calculations based on numbers that the providers themselves maintain or use internally are false or misleading. *See* Def.'s MSJ at 10-11.

---

[19] SBFA has rightly not argued that the disclosures are not reasonably related to the government's interest in protecting small businesses from predatory commercial lenders, *see e.g.*, Pl.'s Opp'n to Mot. to Dismiss (ECF No. 19), only that the required disclosures might be non-factual or controversial, discussed below. Indeed, California has a legitimate (indeed, substantial) state interest to protect small businesses against predatory and deceptive practices that conceal high interest rates. See *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 842-43 (permitting disclosures that are "reasonably related to the State's interest in preventing deception of consumers" (quoting *Zauderer*, 471 U.S. at 651))

---

1
2
3
4
5
6
7
8
9
10
11
12

Providers already calculate and rely on estimates required by the Regulations. For example, they commonly explain their products to investors and prospective customers by using estimated terms to compare SBF to traditional lending products. Providers cannot credibly claim that disclosures enabling a comparison of their products to traditional loans are inaccurate or misleading *to customers* while simultaneously comparing their own products to traditional loans *to investors*. *See e.g.*, *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 734 (9th Cir. 2017) (a lender "cannot credibly hold out this disclaimer as evidence that it is already providing potential customers with accurate information while also claiming that the required disclosures are misleading").

13
14
15
16
17
18
19
20
21

Financiers also provide to their investors the information required by the Regulations, such as the Estimated Payment, Estimated Term, and estimated annualized rate they expect to earn from their products. This information is analogous to the Estimated APR the borrowers pay.[20] For example, CAN Capital, which is credited with inventing the modern MCA[21], provided prospective investors with a table comparing their sales-based MCAs and closed-end loans that provided the collateral for the bond.[22] The table, attached as **Exhibit C**, essentially compares the Estimated Term lengths of the MCAs to those of the closed-end loans, estimated to two decimal points.[23] This

22
23
24
25
26
27
28

---

[20] SBFA argues that providing an estimate is misleading, Compl. ¶¶ 22-23, but the Regulations require providers to state that it is an estimate and how it is calculated. Cal. Code Regs. tit. 10, § 931(a) (obligating estimates "only" for SBF products).

[21] Ed McKinley, <u>CAN Capital: Beyond Hyperbole,</u> *deBanked* (Dec. 11, 2015), <u>https://debanked.com/2015/12/can-capital-beyond-hyperbole/</u>.

[22] Eric Rapp, Chuck Weilamann & Kathy Tillwitz, *CAN Capital Funding LCC Series 2014-1: Presale Report* 20 (2014), <u>https://perma.cc/66Q7-HWXU</u> (emphasis added).

[23] In Exhibit A, CAN Capital refers to Estimated Term as "Estimated Underwritten Turn" for MCAs showing that the "estimate" was determined when the MCA was "underwritten."

---

2:22-CV-08775-RGK-SK  **MEMORANDUM OF POINTS & AUTHORITIES OF AMICI CURIAE IN SUPPORT OF DEFENDANT**                                                7

information shows that the SBF providers compare their loan and SBF products on an "apples to apples" basis using informed estimates when communicating to investors. The same document stated that CAN's collateral pool of MCAs had an "expected weighted-average annual return [i.e., an Estimated APR] . . . of approximately 48%."[24]

Furthermore, prior to the enactment of the Regulations, numerous websites selling leads to SBF companies offered a variety of free, online calculators to help small business owners compute the APRs of MCAs.[25] The existence of those online calculators demonstrates the demand from small businesses—and market recognition of the demand—for help deciphering the Estimated APRs of SBF products, as well as the standard practice in the industry to help small businesses attempt to calculate APRs too. It also shows that compliance with the Regulations would not be unjustified or unduly burdensome for SBF providers, as some already provided those calculations publicly. In fact, SBFA member company RapidFinance now sells software to help providers "efficiently" calculate the figures required by the Regulations.[26]

## III.    THE REGULATIONS REQUIRE ROUTINE INFORMATIONAL DISCLOSURES THAT COMPORT WITH THE FIRST AMENDMENT.

### A.    The Regulations Do Not Limit Speech.

As described above, the DFPI's Regulations mandate factual and noncontroversial statements. They are also not unduly burdensome and therefore meet

---

[24] Rapp, Weilamann & Tillwitz, *supra* note 22, at 3.

[25] *See, e.g.*, *APR Calculator*, American Merchant Brokers (last visited Sept. 26, 2023) https://perma.cc/BVJ8-TV5T.

[26] Will Tumulty, CEO of Rapid Finance, described their calculator as giving Industry "the tools they need to help ensure that they can continue to efficiently and compliantly meet the financing needs of their customers." Businesswire, Rapid Finance Announces Availability of API Service to Support State-Level Business Lending Disclosure Requirements (Dec. 9, 2022),  https://tinyurl.com/4suct43f.

---

the remaining requirements to satisfy the First Amendment under the *Zauderer* standard. *See Cal. Chamber of Comm.*, 29 F.4th at 477.[27]

The required disclosures provide potential borrowers vital information that they need to make informed decisions about Financiers' products. The difficulty of understanding the cost of SBF products discussed above underscores the critical need for these disclosures and fully justifies the minimal burden that they place on providers.

Under *Zauderer*, a required disclosure is "unduly burdensome" only when it "effectively rules out the speech it accompanies," *Owen*, 873 F.3d at 734, or will "chill [the speaker's] protected speech." *Am. Beverage Ass'n*, 916 F.3d at 757. An Estimated APR disclosure poses no such threat to the protected speech of SBF providers. In addition, the Regulations offer borrowers more information, not less, thereby *advancing* the First Amendment's principles. *See, e.g., id.* (providing consumers with more information in the form of truthful and non-misleading disclosures is a legitimate government interest and aligns with First Amendment principles). Moreover, the disclosures place no limitations on providers' capacity to provide additional speech explaining any circumstances in which the APR may not accurately express the cost of their products. *See CTIA*, 928 F.3d at 849 (finding required disclosure not unduly burdensome particularly because retailer could supplement it with more speech).

**B.    The Regulations Also Withstand *Central Hudson* Scrutiny.**

Even this Court determines the required disclosures are not "factual and uncontroversial" under *Zauderer*, the inquiry is not over—the Court must then apply the intermediate standard set forth in *Central Hudson*. *See United States v. Philip Morris*

---

[27] As noted above, SBFA does not dispute that the Regulations are reasonably related to a legitimate government interest.

*USA Inc.*, 566 F.3d 1095, 1143 (D.C. Cir. 2009). The Regulations still withstand scrutiny because: (1) the Government has asserted an undisputed substantial interest in protecting borrowers; (2) the regulation directly advances that interest; and (3) and the regulation is not more extensive than necessary to serve the interest. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Servs. Comm'n*, 447 U.S. 557, 566 (1980). SB 1235's legislative history demonstrates that the Regulations directly and materially advance California's interest in protecting small businesses. *See* RJN Exs. A-B; *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995) (holding this element satisfied by the government's offering of statistical and anecdotal data). And the Regulations are sufficiently tailored to achieve their objective. The government has to demonstrate only that the disclosure is "proportionate to the interests sought to be advanced." *Nat'l Cable & Telecommc'ns Ass'n v. F.C.C.*, 555 F.3d 996, 1002 (D.C. Cir. 2009). The Regulations go no further than to provide small businesses the information they currently lack when comparing financial products. Accordingly, they fully comport with the requirements of the First Amendment.

## **CONCLUSION**

For the foregoing reasons, the Court should grant DFPI's Motion for Summary Judgment and deny SBFA's motion.

Dated:  September 27, 2023              Respectfully submitted,

                                       PUBLIC COUNSEL

                                       By:    /s/ Ghirlandi Guidetti
                                              Ghirlandi Guidetti
                                              *Attorney for Proposed Amici Curiae*

                                       Stephanie Carroll, Esq. (S.B. # 263698)
                                       scarroll@publiccounsel.org
                                       Ghirlandi Guidetti, Esq. (S.B. #307342)



1    gguidetti@publiccounsel.org
     PUBLIC COUNSEL
2    610 S. Ardmore Avenue
     Los Angeles, California 90005
3    Tel: (213) 385-2977; Fax: (213) 201-4722

4    Seth E. Mermin, Esq. (S.B. # 189194)
     tmermin@law.berkeley.edu
5    David S. Nahmias, Esq. (S.B. #324097)
     dnahmias@law.berkeley.edu
6    BERKELEY CENTER FOR
     CONSUMER LAW
7    & ECONOMIC JUSTICE
     308 Law Building
8    Berkeley, CA 94720
     Tel: (510) 643-3519

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2:22-CV-08775-RGK-SK  MEMORANDUM OF POINTS & AUTHORITIES OF
AMICI CURIAE IN SUPPORT OF DEFENDANT**                                            11

1

## CERTIFICATE OF COMPLIANCE

2

Pursuant to Civ. L.R. 11-6.1, the undersigned, counsel of record for proposed

3

amici curiae Public Counsel, U.C. Berkeley Center for Consumer Law & Economic

4

Justice, California Association for Microenterprise Opportunity, the Responsible

5

6

Business Lending Coalition, and the Office of Kat Taylor certifies that this brief

7

contains 2,115 words, which complies with the word limit of Civ. L.R. 11-6.1, the

8

Standing Order of the Hon. R. Gary Klausner, paragraph 6, and Federal Rule of

9

Appellate Procedure 29(a)(5).

10

11

Dated:  September 27, 2023

12

13

14

By:   /s/  Ghirlandi Guidetti
Ghirlandi Guidetti

15

*Attorney for Proposed Amici Curiae*

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

9/27/23, 8:5 AM Case 2:22-cv-08775-RGK-SK Their bakery Document 57-4 a cash crisis. The solution Filed 09/27/23 nearly cost them the business. Page 2 of 31 McClatchy Washington Page Bure ID #:1378

Get 93% off your first month. Subscribe today for $1.     GET ACCESS

LOG IN     SUBSCRIBE NOW

# McClatchy DC

**Part of the McClatchy Media Network**

White House   Politics   Nation/World   Political Cartoons

NATIONAL

# Their bakery faced a cash crisis. The solution nearly cost them the business.

**BY BEN WIEDER**

UPDATED JULY 05, 2023 11:25 AM



When unexpected construction costs threw their budget off, married co-owners Mariana Cortez and Sebastian Ghiragossian turned to a couple of online companies that promised them all the cash they needed in a matter of days. It started a world of hurt. BY EMILY MICHOT



▶  Only have a minute? Listen instead    ⟲  ⟳    1.0x
Powered by **Trinity Audio**
00:00                                                          13:11

*First of two stories on unregulated online financing options for small businesses: They're quick and available even to those with imperfect credit ratings. But some say their high costs make them akin to payday loans; bankruptcies tied to these offerings are on the rise. Read the second story* [here](here)*.*

WASHINGTON — The good news for Miami entrepreneurs Mariana Cortez and husband Sebastian Ghiragossian was that Whole Foods wanted to sell their popular vegan cupcakes in local stores – a highly-sought measure of success for any small-scale food producer.

**TOP VIDEOS**

AD



Fresh. Affordable. Community First.

AdChoices ▷

Then an electrical problem threw a needed expansion of their Bunnie Cakes bakery six months behind schedule and wrecked the project's budget. The couple turned to two online companies that promised them all the cash they needed in a matter of days.

That speed came at a cost. They received $133,000 and were on the hook for paying back a total of $193,000 – roughly one-and-a-half times what they had taken out. And the companies providing the funding, Can Capital and Yellowstone Capital, were given direct access to Bunnie Cakes' bank account; they sucked out a portion of the bakery's receipts each day until the full amount was repaid – in a matter of months, not years.

**READ NEXT**

NATIONAL

Even finance whizzes say it's impossible to compare online small business loan options

JUNE 08, 2018 5:00 AM

9/27/23, 8:52 AM

Yellowstone and Can are among the most prominent providers of online loans and so-called merchant cash advances that are increasingly popular with small businesses.

Unfortunately, a growing number of small business owners who have turned to these largely unregulated suppliers of capital have also filed for bankruptcy in the past five years, particularly in Florida.

Call them payday loans for your corner grocer.

"These things have the same functional problems as payday loans, except they're worse," said Mike Calhoun, president of the Center for Responsible Lending, a consumer advocacy group. "There's very manipulative pricing."

Why sign up for this costly type of financing? For one thing, despite the old bromide that small business is the backbone of the U.S. economy, many of those who run or are trying to start such an effort find it exceedingly difficult to get a traditional bank loan.

X

Community and regional banks approved just under 50 percent of their small business loan applications, while the rate was a much lower 25 percent at big banks, according to an April survey by online lending marketplace Biz2Credit.

Those aren't great odds, and leave a lot of small businesses – over four hundred thousand of which are started each year, the U.S. Census Bureau estimates – looking elsewhere for financing.

Enter merchant cash advances and other online options.

SER_224

Their industry faced a cash crunch that cost nearly every business. Nearly. Washington, ahead.

The contracts typically carry the equivalent of what most would consider a hefty interest rate. The effective annual rate on Bunnie Cakes' biggest contract was roughly 60 percent, an amount that would be considered usurious for similar consumer products in 38 states and Washington D.C., according to the National Consumer Law Center. And experts say it's not uncommon to see rates for these products that reach into the triple digits.

For Bunnie Cakes, the high costs and daily withdrawals associated with their agreements made it hard to stay afloat.

"That almost put us into bankruptcy," Ghiragossian said. "It was horrible."

[Have you taken out any merchant cash advances or online business loans? Tell us about your experience here.]

**SLEEPLESS NIGHTS**

Individuals who take out payday loans are getting no bargain. But at least those loans are regulated by the federal Consumer Financial Protection Bureau and most states. Five states and Washington D.C. outright ban them, according to the National Conference on State Legislatures.

Small business financing attracts far less scrutiny.

"Small business borrowers are not afforded protections that consumer borrowers rely on," said Karen Mills, the former head of the Small Business Administration and a senior fellow at the Harvard Business School.

Merchant cash advance providers, in particular, slip through the regulatory framework, which has led industry observers to label this kind of financing the "Wild, Wild West."

"And many of them do prove to be bad actors," Mills said.

Little attention has been paid at the federal level. But California, where the state Senate passed a bill last week to ensure uniform disclosure of the costs of these less conventional offerings, could be on its way to being the first state in the nation to impose rules on the providers.

The high cost of the quick capital infusions can prove to be a death knell for small businesses already struggling to pay their bills.

"There were nights when we couldn't even sleep," Ghiragossian said. "I remember that and it gives me chills."

Business owners watching payments disappearing from their accounts often wind up in a ditch. A McClatchy analysis found more than 700 personal and business bankruptcies in the past 10 years associated with major merchant cash advance companies, as identified by industry trade publication deBanked.

And that tally may undercount how many businesses actually have gone under. Because merchant cash advances aren't technically loans, their providers don't necessarily appear as creditors in a bankruptcy filing. And many smaller businesses don't even go through the trouble of filing for bankruptcy if they fail.

"It will just be a sale and the proceeds will be distributed to creditors informally," said Craig Goldblatt, a D.C.-based bankruptcy lawyer at WilmerHale.

The number of bankruptcies has increased each year and there were nearly four times as many in 2017 -- 193 -- as five years earlier.

**BANKRUPTCIES ASSOCIATED WITH MERCHANT CASH PROVIDERS**



Chart: Ben Wieder • Source: Federal Court Filings • Get the data

One feature that likely contributes to the failures: Merchant cash advance providers and other nonbank lenders don't have to ensure that small business borrowers can afford to repay the funds. That sets these instruments apart from most other types financing, including home mortgages.

Experts say some of the blame rests with the borrowers themselves.

"There are small businesses looking for credit who probably shouldn't be given credit," Mills said.

But when a customer does run aground, these cash providers often are out less than other lenders, because they are repaid directly from the daily receipts of the business, even in its final days.

No state has seen more small businesses fail in connection with this kind of financing, even adjusted for population, than Florida, which accounted for nearly one in five of the bankruptcies reviewed by McClatchy. The Sunshine State saw nearly 40 associated with merchant cash advance companies in 2017 alone.

Miguel Pena's Miami home health care company closed in 2015, but he continued to be pursued by the merchant cash companies and online lenders whose high fees had been part of what drove him out of his business. He was forced to file for bankruptcy both personally and on behalf of the company in 2016.

"It was the worst experience in my life," he said.

**CREDIT GAPS**

Some entrepreneurs have appreciated the cash these companies provide.

Ainsley and Johnny Tsokos don't regret the cash advances they took out to pay for unexpected costs as they transformed a former beauty salon into Cream Parlor, their ice cream shop and cafe in Miami's Upper Eastside neighborhood.

"The value is that you can make your dreams come true," Johnny Tsokos said. "I would not be here talking to you if we had not had those opportunities."

Industry experts say that the popularity of these products that provide financing in exchange for a percentage of sales -- as well as other nonbank alternatives -- took off around a decade ago, when the recession brought a decline in small business lending from traditional banks.

"Even now, bank lending hasn't fully recovered," said Ann Marie Wiersch, a senior policy analyst at the Federal Reserve Bank of Cleveland.

She co-authored a 2013 report that pointed to tighter lending standards, decreased borrower demand and long-term consolidation in the banking industry as some of the factors creating a tight market for bank loans to small businesses.

Mills has done research that shows that small businesses have an especially hard time getting traditional loans under $250,000, which come with many of the same costs for banks as larger loans, but less potential for profit.

"If banks were doing their jobs, companies like us probably wouldn't need to exist," said Jason Fleming, vice president of direct sales at Mulligan Funding, a San Diego-based online funder that mainly offers short-term small business loans.

Some of the slack is taken up by groups known as community development financial institutions, which are banks, credit unions and other groups that offer capital to small businesses owned by minorities or based in economically distressed areas.

SER_227

After they had paid off their advances, the owners of Cream Parlor turned to one of these groups, a local nonprofit called the Miami Bayside Foundation, for both loans and financial advice.

"They really got in the trenches with us," Tsokos said. "We are very grateful to these guys."

But the funding for those nonprofits, which comes in part from grants and tax credits from the U.S. Treasury Department, only goes so far.

"Last year we had 40,000 people reach out for capital," said Gina Harman, CEO of Accion's U.S. network of four such lenders. "We can't make 40,000 loans."



If you're a small business owner, here are some things to know before you decide to take a merchant cash advance. BY JOSÉ A. IGLESIAS

And the growth of the online cash providers isn't just a question of need, it also has a lot to do with the fact that they offer a faster, more user-friendly experience. And they provide funding big and small to a wider range of borrowers, including many who have less-than-stellar credit ratings.

"You don't have to xerox a pile of paperwork and go from bank to bank," said Mills. "You can now go online and get offers of credit with the touch of button, and you can get the money in your bank account within days or minutes."

The providers are scattered around the country, though most heavily concentrated in the New York tri-state area and South Florida. One company was run out of a Long Island office shared with former Trump Organization associate Felix Sater, who had been working on a proposal to develop a Trump Tower in Moscow during the 2016 presidential campaign.

SER_228

These new offerings still represent a small portion of the overall credit market, but not an insignificant one. In 2016, Treasury estimated that merchant cash advance companies alone offer $3 billion in credit each year, not counting similar online lenders.

Private equity firms and hedge funds have taken note. New York-based Pearl Capital was acquired in 2015 by Capital Z Partners; Strategic Funding Source, also in New York, got a $35 million investment in 2014 from Pine Brook Partners; and Maryland-based RapidAdvance was acquired by Rockbridge Growth Equity – co-founded by Quicken Loans founder Dan Gilbert – in 2013. Some of that enthusiasm has dimmed, however, in response to the disappointing performance of online lender On Deck Capital, which is now trading at roughly $7.00, one-third the amount of its $20 initial public offering in late 2014.

**PUTTING BUSINESSES IN THE GRAVE**

A number of factors account for the higher costs associated with merchant cash advances and other online options.

The biggest one: These companies have to pay more than traditional banks to get money to lend out -- often borrowing cash from private equity or hedge funds.

They also tend to take on riskier borrowers than banks, with lower credit scores and shorter business histories.

But another key driver of costs: Often, there's a middleman.

Brokers can earn commissions of up to 10 or 15 percent on each advance or loan they sell, and are under no obligation to share the best offer available with borrowers.

One trade group that represents a number of merchant cash and online loan providers -- including RapidAdvance, Strategic Funding and BFS Capital – is currently formulating guidelines on best practices for brokers.

"We want to be able to really help small businesses understand what a good broker is and what a bad broker is," said Stephen Denis, executive director of the Small Business Finance Association.

Many point to brokers as the culprits behind a practice known as stacking, in which borrowers are encouraged to take on multiple advances or loans.

"It creates a spiraling, vicious cycle of debt," said Jackson Mueller, associate director of the Milken Institute's Center for Financial Markets.

The reality, though, is that some merchant cash providers themselves don't believe it's their job to help entrepreneurs succeed, said Levi King, CEO of Nav, a web site that collects financial information from small businesses and provides recommendations on the best loans or credit products available to them.

He recalled a conversation with the CEO of one merchant cash company based in New York, in which the CEO compared his company's small business borrowers to patients with stage 4 cancer.

"Does our product put them in the grave faster?" King remembered the CEO saying.
"Yeah, but that's a service to them."



When unexpected construction costs threw their budget off, married co-owners Mariana Cortez and Sebastian Ghiragossian turned to a couple of online companies that promised them all the cash they needed in a matter of days. It started a world of hurt. BY EMILY MICHOT

## Your Merchant Cash Advance Experience

McClatchy now wants to hear from you. If you have had experience with merchant cash advances or online business loans, please tell us your story. (We will not use any of the information your provide without your explicit permission.)

advocates4consumerjustice@gmail.com Switch account

Not shared

* Indicates required question                                          X

Has your small business taken out a merchant cash advance or online business   *
loan?

○ Yes

○ No

*Ben Wieder: 202-383-6125, @benbwieder*

This story was originally published June 7, 2018, 5:00 AM.

---

## Take Us With You

Real-time updates and all local stories you want right in the palm of your hand.

 MCCLATCHY WASHINGTON BUREAU APP →

VIEW NEWSLETTERS →

SER_230

Washington Page

SUBSCRIPTIONS

Start a Subscription

LEARN MORE

Customer Service

Securely Share News Tips

About Us

Contact Us

Part of the McClatchy Media Network

COPYRIGHT     PRIVACY POLICY     TERMS OF SERVICE

X

SER_231

1  Rob Bonta
   Attorney General of California
2  Lisa W. Chao
   Michael D. Gowe
3  Supervising Deputy Attorneys General
   Douglas J. Beteta (SBN: 260377)
4  Rachel J. Yoo (SBN: 293598)
   Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA 90013-1230
6    Telephone: (213) 269-6622
     Fax: (916) 731-2128
7    E-mail: Douglas.Beteta@doj.ca.gov
             Rachel.Yoo@doj.ca.gov
8  *Attorneys for Defendant*
   *Clothilde Hewlett, solely in her official capacity as*
9  *Commissioner of the California Department of*
   *Financial Protection and Innovation*

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15  | | |
16  **SMALL BUSINESS FINANCE ASSOCIATION,** | Case No.: 2:22-cv-08775-RGK-SK
17  Plaintiff, | **DEFENDANT'S APPLICATION TO FILE UNDER SEAL CONFIDENTIAL DOCUMENTS**
18  v. | **AND INFORMATION SUBMITTED IN SUPPORT OF ITS MOTION**
19  **CLOTHILDE HEWLETT, solely in her official capacity as commissioner** | **FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL**
20  **of the California Department of Financial Protection and Innovation,** | **SUMMARY JUDGMENT**
21  |
22  Defendant. | Date:        October 30, 2023
23  | Time:        9:00 a.m.
    | Courtroom:   850
24  | Judge:       Hon. R. Gary Klausner
    | Trial Date:  December 12, 2023
25  | Action Filed: December 2, 2022

26

27

28

1

**APPLICATION**

Pursuant to section 5 of the Stipulated Protective Order entered in this matter on July 10, 2023 (Dkt. No. 37), any party or non-party producing documents or testimony in this matter may designate such information "CONFIDENTIAL." In addition, paragraph 12.3 of the Protective Order provides for the parties to comply with Local Rule 79-5 to file documents designated confidential under seal. Thus, pursuant to Local Rule 79-5.2.2, Defendant Clothilde Hewlett, solely in her capacity as commissioner of the California Department of Financial Protection and Innovation (the Department), hereby submits this application to file under seal documents designated "CONFIDENTIAL" by other parties:

1.    A Rewards Network Receivables Purchase and Marketing Agreement as well as the accompanying Regulations-required disclosure, which is included in Exhibit 11 to the Declaration of Rachel Yoo. The documents reveal the terms of Non-party Rewards Network's agreement as well as its financial terms. Rewards Network designated the entire agreement and disclosure CONFIDENTIAL and requested that the Department file it conditionally under seal.

2.    A selection of aggregate consumer data produced in this action by Non-Party Rapid Financing, which is attached as Exhibit 17 to the declaration of Rachel Yoo. The document reveals data about a selection of 37 of Rapid Financing's customers, including dates of first and last payment, estimated and actual terms, annual revenue, and type of business. Rapid Financing designated this data confidential and requested that the Department file it conditionally under seal.

2

1    No party opposes this application. The Department respectfully requests that

2  the Court grant this application and order the documents listed above to be filed

3  under sealed. In the alternative, to the extent the application is denied, the

4  Department requests leave to file these documents in the public record.

5

6   Dated:  September 27, 2023                ROB BONTA
                                             Attorney General of California
7                                            LISA W. CHAO
                                             MICHAEL D. GOWE
8                                            Supervising Deputy Attorneys General

9

10                                           */s/ Douglas J. Beteta*

11                                           Rachel J. Yoo
                                             Douglas J. Beteta
12                                           Deputy Attorney General

13                                           *Attorneys for Defendant Clothilde*
                                             *Hewlett, solely in her official*
14                                           *capacity as Commissioner of the*
                                             *California Department of Financial*
15                                           *Protection and Innovation*

16

17

18

19

20

21

22

23

24

25

26

27

28

3

CM/ECF - California Central District                    https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

**Query    Reports    Utilities    Help    Log Out**

ACCO,(SKx),APPEAL,CLOSED,DISCOVERY,MJDAP_OUT,PROTORD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:22-cv-08775-RGK-SK

| | |
|---|---|
| Small Business Finance Association v. Clothilde Hewlett | Date Filed: 12/02/2022 |
| Assigned to: Judge R. Gary Klausner | Date Terminated: 12/06/2023 |
| Referred to: Magistrate Judge Steve Kim | Jury Demand: None |
| Cause: 28:2201 Constitutionality of State Statute(s) | Nature of Suit: 950 Constitutional - State Statute |
| | Jurisdiction: Federal Question |

### Plaintiff

**Small Business Finance Association**          represented by   **Paul A. Levin**
Mark Migdal and Hayden
11150 Santa Monica Boulevard, Suite 1670
Los Angeles, CA 90025
213-344-1793
Email: paul@markmigdal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott M Pearson**
Manatt Phelps and Phillips
2049 Century Park East Suite 1700
Los Angeles, CA 90067
310-312-4283
Fax: 310-312-4224
Email: spearson@manatt.com
*TERMINATED: 07/21/2023*
*LEAD ATTORNEY*

**Benjamin H. Brodsky**
Brodsky Fotiu-Wojtowwicz PLLC
200 SE 1st Street Suite 400
Suite 400
Miami, FL 33131
305-503-5054
Fax: 786-749-7644
Email: bbrodsky@bfwlegal.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brad W Seiling**
Manatt Phelps and Phillips LLP

https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

2049 Century Park East Suite 1700
Los Angeles, CA 90067
310-312-4000
Fax: 310-312-4224
Email: bseiling@manatt.com
*TERMINATED: 07/21/2023*

**Lauren M. Gibbs**
Mark Migdal and Hayden
11150 Santa Monica Boulevard Suite 1670
Los Angeles, CA 90025
213-344-2418
Email: lauren@markmigdal.com
*ATTORNEY TO BE NOTICED*

**Misa Kanik Eiritz**
Manatt Phelps and Phillips LLP
2049 Century Park East Suite 1700
Los Angeles, CA 90067
310-312-4000
Fax: 310-Facsimile: (310)
Email: meiritz@manatt.com
*TERMINATED: 07/21/2023*

**Philip T. Merenda**
Morgan and Morgan PA
8151 Peters Road, 4th Floor
Plantation, FL 33324
754-285-3182
Email: philip.merenda@forthepeople.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition & the Office of Kat Taylor**
Public Counsel
610 S. Ardmore Avenue
Los Angeles, CA 90005
213-385-2977

represented by **David Sidney Shaffer Nahmias**
Center for Consumer Law and Economic Justice
308 Law Building
Berkeley, CA 94720
510-664-7200
Email: dnahmias@law.berkeley.edu
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | |
|---|---|
| **Clothilde Hewlett** <br> *solely in her official capacity as* <br> *Commissioner of the California* <br> *Department of Financial Protection and* <br> *Innovation* | represented by **Douglas J Beteta** <br> California Attorney General's Office <br> Business and Tax Section <br> 300 South Spring Street Suite 1702 <br> Los Angeles, CA 90013 <br> 213-269-6014 <br> Email: Douglas.Beteta@doj.ca.gov <br> *ATTORNEY TO BE NOTICED* <br><br> **Ji Yeon Yoo** <br> California Department of Justice <br> 1300 I Street <br> Sacramento, CA 95814 <br> 916-210-7359 <br> Email: rachel.yoo@doj.ca.gov <br> *ATTORNEY TO BE NOTICED* <br><br> **Craig Damon Rust** <br> California Department of Justice <br> 1300 I Street <br> Sacramento, CA 95814 <br> 916-210-7359 <br> Email: craig.rust@doj.ca.gov <br> *ATTORNEY TO BE NOTICED* |
| **Interested Party** | |
| **Rewards Network Establishment Services Inc.** <br> *Non-Party* | represented by **Dan E. Marmalefsky** <br> Morrison and Foerster LLP <br> 707 Wilshire Boulevard Suite 6000 <br> Los Angeles, CA 90017-3543 <br> 213-892-5200 <br> Fax: 213-892-5454 <br> Email: dmarmalefsky@mofo.com <br> *ATTORNEY TO BE NOTICED* <br><br> **Nancy R Thomas** <br> Davis Wright Tremaine LLP <br> 865 South Figueroa Street Suite 2400 <br> Los Angeles, CA 90017 <br> 213-655-9689 <br> Email: nancythomas@dwt.com <br> *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/06/2024 | 103 | BILL OF COSTS. Costs Taxed in amount of $ 24,449.19 in favor of defendant and against plaintiff. RE: APPLICATION to the Clerk to Tax Costs against Plaintiff Small Business Finance Association 99 (jcw) (Entered: 02/06/2024) |

CM/ECF - California Central District          https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| | | |
|---|---|---|
| 01/08/2024 | 102 | Notice filed by Plaintiff Small Business Finance Association. *THAT NO TRANSCRIPTS WILL BE ORDERED* (Levin, Paul) (Entered: 01/08/2024) |
| 01/04/2024 | 101 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 100 filed by Small Business Finance Association. CCA # 24-50. The Mediation Program of the Ninth Circuit Court of Appeals facilitates settlement while appeals are pending. See Fed. R. App. P. 33 and Ninth Cir. R. 33-1. [See Order for further information.] (car) Modified on 1/5/2024 (car). (Entered: 01/05/2024) |
| 12/29/2023 | 100 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Small Business Finance Association. Appeal of Judgment 98 . (Appeal Fee - $605 Fee Paid, Receipt No. ACACDC-36647361.) (Levin, Paul) (Entered: 12/29/2023) |
| 12/20/2023 | 99 | APPLICATION to the Clerk to Tax Costs against Plaintiff Small Business Finance Association filed by Defendant Clothilde Hewlett. (Beteta, Douglas) (Entered: 12/20/2023) |
| 12/06/2023 | 98 | JUDGMENT by Judge R. Gary Klausner. IT IS ORDERED AND ADJUDGED that the plaintiff take nothing, the action be dismissed on the merits and Defendant Department recover its costs. (MD JS-6, Case Terminated). (jp) (Entered: 12/07/2023) |
| 12/04/2023 | 97 | MINUTES (IN CHAMBERS) Order Re: Defendant's Motion for Summary Judgment and Related Motions [DEs 52 , 57 , 59 , 64 ] by Judge R. Gary Klausner: The Court GRANTS Defendant's Motion for Summary Judgment, DENIES the Motion for Leave to File an Amicus Brief, and DENIES as moot both Plaintiffs Motion to Exclude and Defendant's Motion in Limine. Defendant shall lodge a proposed judgment consistent with this order within 7 days from the issuance of this order. The Court Trial set for 12/12/2023 is hereby vacated and taken OFF-CALENDAR. (jp) (Entered: 12/04/2023) |
| 11/27/2023 | 96 | MINUTES OF Pretrial Conference held before Judge R. Gary Klausner: The case is called and counsel make their appearances. As more fully reflected on the record, the Pretrial Conference is held. A Court Trial is confirmed for 12/12/23 at 9:00 a.m. The Court tentatively gives the parties 2 hours per side for examination of witnesses. (Court Reporter: Marea Woolrich. Attorney for Plaintiff: Paul Levin/Benjamin Brodsky. Attorney for Defendant: Ji Yoo/Douglas Beteta. Courtroom Deputy: Joseph Remigio. Time in Court: 5 min.) Court Reporter: Marea Woolrich. (jre) (Entered: 11/27/2023) |
| 11/21/2023 | 95 | NOTICE OF LODGING filed re Pretrial-Trial Scheduling Order - form only 29 (Attachments: # 1 Exhibit Proposed Findings of Fact and Conclusions of Law)(Levin, Paul) (Entered: 11/21/2023) |
| 11/21/2023 | 94 | NOTICE OF LODGING filed *of Defendant's [Proposed] Findings of Fact and Conclusions of Law* re Pretrial-Trial Scheduling Order - form only 29 (Attachments: # 1 [Proposed] Findings of Fact and Conclusions of Law)(Beteta, Douglas) (Entered: 11/21/2023) |
| 11/16/2023 | 93 | NOTICE OF LODGING Proposed Pretrial Conference Order Defendant Clothilde Hewlett. (Attachments: # 1 Proposed Order)(Beteta, Douglas) (Entered: 11/16/2023) |
| 11/06/2023 | 92 | MEMORANDUM of CONTENTIONS of FACT and LAW filed by Defendant Clothilde Hewlett. (Beteta, Douglas) (Entered: 11/06/2023) |
| 11/06/2023 | 91 | MEMORANDUM of CONTENTIONS of FACT and LAW filed by Plaintiff Small Business Finance Association. (Levin, Paul) (Entered: 11/06/2023) |

         9/3/2024, 12:01 PM

| | | |
|---|---|---|
| 11/06/2023 | 90 | Joint Exhibit List filed by Plaintiff Small Business Finance Association.. (Levin, Paul) (Entered: 11/06/2023) |
| 11/06/2023 | 89 | Witness List filed by Plaintiff Small Business Finance Association.. (Levin, Paul) (Entered: 11/06/2023) |
| 11/03/2023 | 88 | EXHIBIT Filed filed by Defendant Clothilde Hewlett. *Exhibit 6 to Declaration of Rachel Yoo in Support of Defendants* as to Objection/Opposition (Motion related),,, 68 . (Yoo, Ji) (Entered: 11/03/2023) |
| 11/03/2023 | 87 | OPPOSITION to Corrected NOTICE OF MOTION AND MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN *AND DECLARATION OF BENJAMIN H. BRODSKY* 59 filed by Defendant Clothilde Hewlett. (Yoo, Ji) (Entered: 11/03/2023) |
| 10/26/2023 | 86 | SCHEDULING NOTICE TO ALL PARTIES AND ORDER (IN CHAMBERS)by Judge R. Gary Klausner: The hearings on 1) Defendants Motion for Summary Judgment 52 ; 2) Movant Public Counsels Motion to File Amicus Brief 57 ; 3) Plaintiffs Motion to Exclude Certain Opinions of Defendants Expert, Adam Levitin 59 and 4) Dendants Motion in Limine No. 1 to Exclude Expert Report and Testimony of Barbra Kingsley 64 calendared for hearing on 10/30/2023, have been taken under submission and off the motion calendar. No appearances by counsel are necessary. The Court will issue a ruling after full consideration of properly submitted pleadings. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jre) TEXT ONLY ENTRY (Entered: 10/26/2023) |
| 10/26/2023 | 85 | MINUTES (IN CHAMBERS) Order Re: Defendant's Application to File Under Seal [DE 69 ) by Judge R. Gary Klausner: The Court DENIES the Application. Pursuant to Local Rule 79-5.2.2(b)(ii), Defendant may file the unredacted materials in the public case file no earlier than 4 days, and no later than 10 days, from the issuance of this Order. (jp) (Entered: 10/26/2023) |
| 10/18/2023 | 84 | Notice OF ERRATA RE: OPPOSITION TO SUMMARY JUDGMENT MOTION filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Exhibit) (Levin, Paul) (Entered: 10/18/2023) |
| 10/16/2023 | 83 | REPLY In Support of NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* 52 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Defendants Responses to Plaintiffs Statement of Genuine Disputes of Material Fact, # 2 Defendants Evidentiary Objections to Plaintiffs Evidence in Support of Defendants Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, # 3 Declaration of Rachel Yoo in Support of Defendants Reply Brief in Support of Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, # 4 Exhibit 26_Mattson Depo Excerpts, # 5 Declaration of Adam J. Levitin in Support of Defendants Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, # 6 Declaration of Catherine ONeil in Support of Defendants Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment)(Beteta, Douglas) (Entered: 10/16/2023) |
| 10/16/2023 | 82 | REPLY In Support MOTION IN LIMINE (#1) to Exclude Expert Report and Testimony of Barbra Kingsley 64 filed by Defendant Clothilde Hewlett. (Beteta, Douglas) (Entered: 10/16/2023) |

| | | |
|---|---|---|
| 10/16/2023 | 81 | REPLY in support of NOTICE OF MOTION AND MOTION to File Amicus Brief 57 filed by Movant Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition & the Office of Kat Taylor. (Nahmias, David) (Entered: 10/16/2023) |
| 10/16/2023 | 80 | REPLY in Support of Corrected NOTICE OF MOTION AND MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN *AND DECLARATION OF BENJAMIN H. BRODSKY* 59 filed by Plaintiff Small Business Finance Association. (Levin, Paul) (Entered: 10/16/2023) |
| 10/13/2023 | 79 | MINUTES OF FURTHER SETTLEMENT CONFERENCE held before Magistrate Judge Steve Kim. Held via Zoom videoconference. The Court and counsel conduct settlement discussions off the record. Counsel is advised that all discussions were, and are, deemed to be confidential settlement discussions. Court Recorder: Not recorded. (clee) (Entered: 10/13/2023) |
| 10/13/2023 | 78 | Notice of Non-Settlement filed by Defendant Clothilde Hewlett. *Joint* (Beteta, Douglas) (Entered: 10/13/2023) |
| 10/13/2023 | 77 | EXHIBIT 17 to NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* 52 filed by Defendant Clothilde Hewlett. (Yoo, Ji) (Entered: 10/13/2023) |
| 10/13/2023 | 76 | EXHIBIT 11 to NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* 52 filed by Defendant Clothilde Hewlett. (Yoo, Ji) (Entered: 10/13/2023) |
| 10/11/2023 | 75 | MINUTES OF SETTLEMENT CONFERENCE held before Magistrate Judge Steve Kim. The Court and parties conduct settlement discussions off the record. (see document for further details) Court Recorder: CS 10/11/23. (hr) (Entered: 10/12/2023) |
| 10/09/2023 | 74 | CERTIFICATE OF SERVICE filed by Plaintiff Small Business Finance Association, re Sealed Declaration in SupportDeclaration, 73 served on October 9, 2023. (Levin, Paul) (Entered: 10/09/2023) |
| 10/09/2023 | 73 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of Departments Opposition to SBFAs motion to exclude certain opinions of the Departments expert Adam Levitin* under seal 69 filed by Plaintiff Small Business Finance Association. (Levin, Paul) (Entered: 10/09/2023) |
| 10/06/2023 | 72 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* 52 filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Statement Of Genuine Disputes Of Material Fact And Additional Material Facts In Opposition To Defendants Motion For Summary Judgment, # 2 Declaration of Benjamin H Brodsky in Support of Plaintiffs Opposition to Defendants Motion for Summary Judgment, # 3 Bakes Deposition, # 4 Tumulty Deposition, # 5 Brown Deposition, # 6 Carlson Deposition 08.31.2023, # 7 Mattson Deposition, # 8 Carlson Deposition 09.01.2023, # 9 Carriere Deposition, # 10 Narayan Deposition, # 11 Declaration of Will Tumulty, # 12 Declaration of Michael Jesse Carlson, # 13 Declaration of Justin Bakes, # 14 |

CM/ECF - California Central District        https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

|  |  | Proposed Order)(Levin, Paul) (Entered: 10/06/2023) |
|---|---|---|
| 10/06/2023 | 71 | CERTIFICATE OF SERVICE filed by Defendant Clothilde Hewlett, re APPLICATION to file document *Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of Departments Opposition to SBFAs motion to exclude certain opinions of the Departments expert Adam Levitin* under seal 69 , Sealed Declaration in SupportDeclaration,, 70 served on October 6, 2023. (Yoo, Ji) (Entered: 10/06/2023) |
| 10/06/2023 | 70 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of Departments Opposition to SBFAs motion to exclude certain opinions of the Departments expert Adam Levitin* under seal 69 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Unredacted Document Ex.6_Brown Depo Excerpts [Unredacted Version], # 2 Redacted Document Ex.6_Brown Depo Excerpts_ [Redacted Version], # 3 Unredacted Document Defendants Opposition to Plaintiffs Motion to Exclude Certain Opinions of Expert A. Levitin [Unredacted Version], # 4 Redacted Document Defendants Opposition to Plaintiffs Motion to Exclude Certain Opinions of Expert A. Levitin [Redacted Version])(Yoo, Ji) (Entered: 10/06/2023) |
| 10/06/2023 | 69 | APPLICATION to file document *Portions of Exhibit 6 to Declaration of Rachel Yoo and Portions of Departments Opposition to SBFAs motion to exclude certain opinions of the Departments expert Adam Levitin* under seal filed by Defendant Clothilde Hewlett. (Attachments: # 1 Proposed Order Regarding Defendants Application to File Under Seal Confidential Documents and Information Submitted in Support of its Opposition to Motion to Exclude Certain Opinions of Defendants Expert Adam J. Levitin)(Yoo, Ji) (Entered: 10/06/2023) |
| 10/06/2023 | 68 | OPPOSITION Opposition re: Corrected NOTICE OF MOTION AND MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN *AND DECLARATION OF BENJAMIN H. BRODSKY* 59 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Declaration of Rachel Yoo in Support of Defendants Opposition to Plaintiffs Motion to Exclude Levitins Expert Report, # 2 Exhibit 1_Sales-Based Financing Providers Registrants, # 3 Exhibit 2_Court Statement of Decision After Court Trial, # 4 Exhibit 3_Senate Bill-1235 analysis May 7 2018, # 5 Exhibit 4_Senate Bill-1235 analysis October 4 2023, # 6 Exhibit 5_Carlson Depo Excerpts, # 7 Exhibit 6_Brown Depo Excerpts [Public Version], # 8 Declaration Declaration of Douglas Beteta In Support of Defendants Opposition to Plaintiffs Motion to Exclude Levitins Expert Report, # 9 Certificate of Service)(Yoo, Ji) (Entered: 10/06/2023) |
| 10/06/2023 | 67 | OPPOSITION to MOTION IN LIMINE (#1) to Exclude Expert Report and Testimony of Barbra Kingsley 64 filed by Plaintiff Small Business Finance Association. (Levin, Paul) (Entered: 10/06/2023) |
| 10/05/2023 | 66 | OPPOSITION to NOTICE OF MOTION AND MOTION to File Amicus Brief 57 filed by Plaintiff Small Business Finance Association. (Levin, Paul) (Entered: 10/05/2023) |
| 10/04/2023 | 65 | MINUTES (IN CHAMBERS) Order Re: Defendant's Application to File Under Sea[DE 53 ] by Judge R. Gary Klausner: The Court DENIES Defendant's Application to File Under Seal. Pursuant to Local Rule 79-5.2.2(b)(ii), Defendant may file the unredacted materials in the public case file no earlier than 4 days, and no later than 10 days, from the issuance of this Order. However, upon the filing of a joint stipulation by Defendant and Rewards Network that a redacted version of the Agreement is |

| | | |
|---|---|---|
| | | sufficient, Defendant may file the redacted version, as provided in Rewards Network's September 29 filing, instead. (jp) (Entered: 10/04/2023) |
| 10/02/2023 | 64 | NOTICE OF MOTION AND MOTION IN LIMINE (#1) to Exclude Expert Report and Testimony of Barbra Kingsley filed by Defendant Clothilde Hewlett. Motion set for hearing on 10/30/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration of Douglas Beteta, # 2 Exhibit A - Expert Report of Barbra Kingsley, # 3 Declaration of Melissa Pittaoulis, # 4 Appendix A - Melissa Pittaoulis CV, # 5 Proposed Order)(Beteta, Douglas) (Entered: 10/02/2023) |
| 10/02/2023 | 63 | NOTICE of Appearance filed by attorney Dan E. Marmalefsky on behalf of Miscellaneous Rewards Network Establishment Services Inc. (Attorney Dan E. Marmalefsky added to party Rewards Network Establishment Services Inc.(pty:misc)) (Marmalefsky, Dan) (Entered: 10/02/2023) |
| 09/29/2023 | 62 | CERTIFICATE OF SERVICE filed by Non-Party Rewards Network Establishment Services Inc., re Sealed Declaration in SupportDeclaration 61 served on September 29, 2023. (Thomas, Nancy) (Entered: 09/29/2023) |
| 09/29/2023 | 61 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Exhibit 11 and Exhibit 17 to MSJ* under seal 53 filed by Miscellaneous Rewards Network Establishment Services Inc.. (Attachments: # 1 Unredacted Ex. 1)(Thomas, Nancy) (Entered: 09/29/2023) |
| 09/29/2023 | 60 | STATEMENT of Further Redacted Version That Avoids the Need for Sealing, or in the Alternative, in Support of Defendant's Application to File Portions of Disclosures and an Agreement Under Seal APPLICATION to file document *Exhibit 11 and Exhibit 17 to MSJ* under seal 53 filed by Miscellaneous Rewards Network Establishment Services Inc.. (Attorney Nancy R Thomas added to party Rewards Network Establishment Services Inc.(pty:misc))(Thomas, Nancy) (Entered: 09/29/2023) |
| 09/29/2023 | 59 | Corrected NOTICE OF MOTION AND MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN *AND DECLARATION OF BENJAMIN H. BRODSKY* filed by Plaintiff Small Business Finance Association. Motion set for hearing on 10/30/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration) (Levin, Paul) (Entered: 09/29/2023) |
| 09/28/2023 | 58 | ORDER by Judge R. Gary Klausner re MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN 51 . The following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order for the following case reason(s): Other error(s) with document(s): Document contains single spacing in violation of L.R. 11-3.6. Counsel may file a corrected motion within 2 days of this order. (jre) (Entered: 09/28/2023) |
| 09/27/2023 | 57 | NOTICE OF MOTION AND MOTION to File Amicus Brief filed by Amici curiae Public Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition & the Office of Kat Taylor. Motion set for hearing on 10/30/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration of Ghirlandi Guidetti, # 2 Exhibit A to Guidetti Declaration, # 3 Memorandum of Points and Authorities of Proposed Amici Curiae, # 4 Exhibit A to Memorandum of Points and Authorities, # 5 Exhibit B to Memorandum of Points and Authorities, # 6 Exhibit C to Memorandum of Points and Authorities, # 7 Certificate of Interested Parties, # 8 Proposed Order) (Attorney David Sidney Shaffer Nahmias added to party Public |

| | | |
|---|---|---|
| | | Counsel, U.C. Berkeley Center for Consumer Law & Economic Justice, California Association for Microenterprise Opportunity, the Responsible Business Lending Coalition & the Office of Kat Taylor (pty:bkmov)) (Nahmias, David) (Entered: 09/27/2023) |
| 09/27/2023 | 56 | CERTIFICATE OF SERVICE filed by Defendant Clothilde Hewlett, re Sealed Declaration in SupportDeclaration,, 54 , APPLICATION to file document *Exhibit 11 and Exhibit 17 to MSJ* under seal 53 served on September 27, 2023. (Yoo, Ji) (Entered: 09/27/2023) |
| 09/27/2023 | 55 | CERTIFICATE OF SERVICE filed by Defendant Clothilde Hewlett, re NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* 52 served on September 27, 2023. (Yoo, Ji) (Entered: 09/27/2023) |
| 09/27/2023 | 54 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Exhibit 11 and Exhibit 17 to MSJ* under seal 53 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Declaration of Douglas J. Beteta in Support of Defendants Application to File Under Seal Confidential Documents and Information Submitted in Support of its Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, # 2 Unredacted Document Ex.11 Rewards Networks Response to the Departments Subpoena_Conditionally Sealed Unredacted Version, # 3 Unredacted Document Ex.17 SBFA 1109 Rapid Data Selection-Conditionally Sealed Unredacted Version)(Beteta, Douglas) (Entered: 09/27/2023) |
| 09/27/2023 | 53 | APPLICATION to file document *Exhibit 11 and Exhibit 17 to MSJ* under seal filed by Defendant Clothilde Hewlett. (Attachments: # 1 Proposed Order Regarding Defendants Application to File Under Seal Confidential Documents and Information Submitted in Support of its Motion For Summary Judgment, Or in the Alternative, Partial Summary Judgment)(Beteta, Douglas) (Entered: 09/27/2023) |
| 09/27/2023 | 52 | NOTICE OF MOTION AND MOTION for Summary Judgment as to to each and every claim for relief stated in Plaintiff's complaint *or in the Alternative Partial Summary Judgment Against Plaintiff* filed by Defendant Clothilde Hewlett. Motion set for hearing on 10/30/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration of Charles Carriere in Support of Defendants Motion For Summary Judgment, or in the Alternative Partial Summary Judgment, # 2 Exhibit 1 Opinion letters by the Department dated 1.17.13 and 4.29.13, # 3 Exhibit 2 Excerpt from the Final Statement of Reasons for Regulations, # 4 Exhibit 3 Letter dated 11.22.21 and Spreadsheet calculation submitted by Responsible Business Lending Corporation, # 5 Exhibit 4 Letter DFPI receeived 4.24.21 from Rewards Network not offering sales based financing, # 6 Declaration of Rachel Yoo in Support of Defendants Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, # 7 Exhibit 5 Browsing to Borrow Mom & Pop Small Business Perspectives on Online Lenders, # 8 Exhibit 6 Senate Bill-1235 analysis report, # 9 Exhibit 7 Excerpt from SBFAs Responses to the Departments Requests for Production of Documents, # 10 Exhibit 8 SBFAs Responses to the Departments Requests for Admission, # 11 Exhibit 9 Coast Fundings declaration and its authenticated financing agreement, # 12 Exhibit 10 Crediblys declaration and its authenticated financing agreements, # 13 Exhibit 11 Rewards Networks Response to the Departments Subpoena, # 14 Exhibit 12 Rapid Finances financing agreements, # 15 Exhibit 13 Forward Financings financing agreement, # 16 Exhibit 14 Kapitus financing agreements, # 17 Exhibit 15 Dr. Catherine ONeils Expert Report, # 18 Exhibit 16 Professor Adam Levitins Expert |

CM/ECF - California Central District                    https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| | | |
|---|---|---|
| | | Report, # 19 Exhibit 17 Excerpt from Rapid data set produced in this action, # 20 Exhibit 18 Webpage Consumer Financial Protection Bureau re Annual Percentage Rate, # 21 Exhibit 19 Webpage Consumer Financial Protection Bureau re Annual Percentage Rate, # 22 Exhibit 20 Excerpts from deposition testimony of Justin Bakes, # 23 Exhibit 21 Excerpts from deposition testimony of Jeremy Brown, # 24 Exhibit 22 Excerpts from deposition testimony of Jesse Carlson-Kapitus, # 25 Exhibit 23 Excerpts from deposition testimony of Jesse Carlson 30(b)(6) witness for SBFA, # 26 Exhibit 24 Excerpts from deposition testimony of William Tumulty-Rapid Finance, # 27 Exhibit 25 Kapitus Loan Agreement, # 28 Defendants Statement of Uncontroverted Facts and Conclusions of Law In Support of Motion for Summary Judgment, or in the Alternative Summary Adjudication, # 29 Proposed Order Granting Defendants Motion For Summary Judgment, # 30 [Proposed] Order Granting Defendants Motion For Summary Judgment) (Yoo, Ji) (Entered: 09/27/2023) |
| 09/27/2023 | 51 | (DOCUMENT STRICKEN PER ORDER 58 ) - NOTICE OF MOTION AND MOTION to Exclude CERTAIN OPINIONS OF DEFENDANTS EXPERT, ADAM J. LEVITIN *AND DECLARATION OF BENJAMIN H. BRODSKY* filed by Plaintiff Small Business Finance Association. Motion set for hearing on 10/30/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration) (Levin, Paul) Modified on 10/5/2023 (jre). (Entered: 09/27/2023) |
| 08/28/2023 | 50 | MINUTES (IN CHAMBERS) Order Re: Defendant's Motion to Continue Trial [DE 43 ] by Judge R. Gary Klausner: The Court DENIES the Motion. (See document for further information). (jp) (Entered: 08/28/2023) |
| 08/24/2023 | 49 | SCHEDULING NOTICE TO ALL PARTIES AND ORDER (IN CHAMBERS) by Judge R. Gary Klausner: Defendant's Motion to Continue Trial and All Related Dates 43 , calendared for hearing on 8/28/2023, has been taken under submission and off the motion calendar. No appearances by counsel are necessary. The Court will issue a ruling after full consideration of properly submitted pleadings. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jre) TEXT ONLY ENTRY (Entered: 08/24/2023) |
| 08/23/2023 | 48 | MINUTES (IN CHAMBERS) ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL [ECF 47 by Magistrate Judge Steve Kim. The hearing on defendant's motion noticed for September 13, 2023 is vacated. Both sides must bear their own costs and expenses to litigate this motion. (SEE ORDER FOR DETAILS). (clee) (Entered: 08/23/2023) |
| 08/22/2023 | 47 | NOTICE OF MOTION AND MOTION to Compel Further Responses *to Discovery Against Plaintiff* filed by Defendant Clothilde Hewlett. Motion set for hearing on 9/13/2023 at 10:00 AM before Magistrate Judge Steve Kim. (Attachments: # 1 JT STIP UNDER LR 37-2 REGARDING DEFS MTN TO COMPEL FURTHER RESPONSES TO DISC AGAINST PTF SMALL BUSINESS FINANCE ASSOC) (Beteta, Douglas) (Entered: 08/22/2023) |
| 08/14/2023 | 46 | REPLY in support of Defendant's Reply Brief NOTICE OF MOTION AND MOTION to Continue Trial and all related dates from 12/12/2023 to 08/12/2023 43 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Declaration of Rachel Yoo in Support of Defendant's Reply Brief in support of Motion for Continuance of Trial and all related dates)(Yoo, Ji) (Entered: 08/14/2023) |

CM/ECF - California Central District        https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| | | |
|---|---|---|
| 08/11/2023 | 45 | ORDER RE REMOTE SETTLEMENT CONFERENCE WITH U.S. MAGISTRATE JUDGE KIM by Magistrate Judge Steve Kim. The Settlement Conference scheduled for Wednesday, October 11, 2023 at 10:00 AM shall take place remotely via Zoom video meeting. The Clerk will distribute Zoom meeting instructions by separate email. The Conference shall last no longer than four hours, unless otherwise ordered. (et) (Entered: 08/14/2023) |
| 08/07/2023 | 44 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Continue Trial and all related dates from 12/12/2023 to 08/12/2023 43 filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Declaration Benjamin H. Brodsky)(Levin, Paul) (Entered: 08/07/2023) |
| 07/31/2023 | 43 | NOTICE OF MOTION AND MOTION to Continue Trial and all related dates from 12/12/2023 to 08/12/2023 filed by Defendant Clothilde Hewlett. Motion set for hearing on 8/28/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Declaration of Rachel Yoo in Support of Defendants Motion For a Continuance of Trial and all Related Dates) (Yoo, Ji) (Entered: 07/31/2023) |
| 07/26/2023 | 42 | ORDER REGARDING EXPERT DISCOVERY SCHEDULE 41 by Judge R. Gary Klausner that the expert discovery schedule in this matter be set as follows: (1) On or before 9/22/2023, the Parties will exchange expert reports. (2) On or before 10/6/2023, the Parties will exchange rebuttal expert reports. (3) The Parties will complete expert depositions on or before 10/20/2023. (jp) (Entered: 07/27/2023) |
| 07/24/2023 | 41 | Joint STIPULATION for Discovery as to Expert filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Proposed Order)(Levin, Paul) (Entered: 07/24/2023) |
| 07/24/2023 | 40 | Notice of Appearance or Withdrawal of Counsel: for attorney Lauren M Gibbs counsel for Plaintiff Small Business Finance Association. Adding Lauren M. Gibbs as counsel of record for SMALL BUSINESS FINANCE ASSOCIATION for the reason indicated in the G-123 Notice. Filed by Plaintiff SMALL BUSINESS FINANCE ASSOCIATION,. (Attorney Lauren M Gibbs added to party Small Business Finance Association(pty:pla))(Gibbs, Lauren) (Entered: 07/24/2023) |
| 07/21/2023 | 39 | ORDER by Judge R. Gary Klausner GRANTING Request for Approval of Substitution of Attorney Paul A Levin of Mark Migdal and Hayden for Plaintiff Small Business Finance Ass'N in place and stead of Attorneys Brad W Seiling; Misa Kanik Eiritz and Scott M Pearson 38 . (jp) (Entered: 07/21/2023) |
| 07/21/2023 | 38 | REQUEST TO SUBSTITUTE ATTORNEY Paul A. Levin in place of attorney Scott M. Pearson filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Proposed Order) (Attorney Paul A Levin added to party Small Business Finance Association(pty:pla)) (Levin, Paul) (Entered: 07/21/2023) |
| 07/10/2023 | 37 | PROTECTIVE ORDER by Magistrate Judge Steve Kim re Stipulation for Protective Order 36 . (see document for details) (hr) (Entered: 07/11/2023) |
| 07/07/2023 | 36 | STIPULATION for Protective Order filed by Defendant Clothilde Hewlett. (Attachments: # 1 Proposed Order)(Beteta, Douglas) (Entered: 07/07/2023) |
| 06/22/2023 | 35 | ORDER by Judge R. Gary Klausner: granting 33 Non-Resident Attorney Philip T. Merenda APPLICATION to Appear Pro Hac Vice on behalf of Small Business Finance Association, designating Scott M Pearson as local counsel. (lom) (Entered: 06/22/2023) |

| | | |
|---|---|---|
| 06/22/2023 | 34 | ORDER by Judge R. Gary Klausner: granting 32 Non-Resident Attorney Benjamin H. Brodsky APPLICATION to Appear Pro Hac Vice on behalf of Small Business Finance Association, designating Scott M Pearson as local counsel. (lom) (Entered: 06/22/2023) |
| 06/20/2023 | 33 | APPLICATION of Non-Resident Attorney Philip T. Merenda to Appear Pro Hac Vice on behalf of Plaintiff Small Business Finance Association (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-35523866) filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Proposed Order) (Pearson, Scott) (Entered: 06/20/2023) |
| 06/20/2023 | 32 | APPLICATION of Non-Resident Attorney Benjamin H. Brodsky to Appear Pro Hac Vice on behalf of Plaintiff Small Business Finance Association (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-35523818) filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Proposed Order) (Pearson, Scott) (Entered: 06/20/2023) |
| 04/13/2023 | 31 | ANSWER to Complaint (Attorney Civil Case Opening) 1 filed by Defendant Clothilde Hewlett.(Beteta, Douglas) (Entered: 04/13/2023) |
| 04/03/2023 | 30 | ORDER/REFERRAL to ADR Procedure No 1 by Judge R. Gary Klausner. Case ordered to Magistrate Judge Steve Kim for Settlement Conference. ADR Proceeding to be held no later than October 13, 2023. (jre) (Entered: 04/03/2023) |
| 04/03/2023 | 29 | ORDER FOR COURT TRIAL by Judge R. Gary Klausner. Pretrial Conference set for 11/27/2023 09:00 AM before Judge R. Gary Klausner. Bench Trial set for 12/12/2023 09:00 AM before Judge R. Gary Klausner. (jre) (Entered: 04/03/2023) |
| 04/03/2023 | 28 | MINUTES OF Scheduling Conference held before Judge R. Gary Klausner. Amended Pleadings due by 5/10/2023. Discovery cut-off 9/13/2023. Motions due by 9/27/2023. Pretrial Conference set for 11/27/2023 09:00 AM before Judge R. Gary Klausner. Bench Trial set for 12/12/2023 09:00 AM before Judge R. Gary Klausner. Court Reporter: Marea Woolrich. (jre) (Entered: 04/03/2023) |
| 03/30/2023 | 27 | MINUTES (IN CHAMBERS) Order Re: Defendant's Motion to Dismiss [DE 11] by Judge R. Gary Klausner. For the foregoing reasons, the Court DENIES Defendant's Motion 11 . (lom) (Entered: 03/30/2023) |
| 03/28/2023 | 26 | Notice Defendant Clothilde Hewlett's Notice of Intervening Authority Re: Defendant's Motion to Dismiss Complaint filed by Defendant Clothilde Hewlett. (Attachments: # 1 Exhibit E)(Beteta, Douglas) (Entered: 03/28/2023) |
| 03/28/2023 | 25 | NOTICE OF REASSIGNMENT OF CASE due to Unavailability of Judicial Officer filed. The previously assigned Magistrate Judge is no longer available. Pursuant to directive of the Chief Magistrate Judge and in accordance with the rules of this Court, the case has been returned to the Clerk for reassignment. This case has been reassigned to Magistrate Judge Steve Kim for any discovery and/or post-judgment matters that may be referred. Case number will now read as 2:22-cv-08775 RGK(SKx). (rn) (Entered: 03/28/2023) |
| 03/27/2023 | 24 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial between 5 and 14 days, filed by Plaintiff Small Business Finance Association.. (Pearson, Scott) (Entered: 03/27/2023) |

https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| 03/27/2023 | 23 | REQUEST for ADR Procedure No. 1 filed. Parties request to Appear Before Magistrate Judge for settlement proceedings. Filed by Plaintiff Small Business Finance Association.(Pearson, Scott) (Entered: 03/27/2023) |
| --- | --- | --- |
| 03/23/2023 | 22 | Notice of Appearance or Withdrawal of Counsel: for attorney Douglas J Beteta counsel for Defendant Clothilde Hewlett. Adding Douglas J. Beteta as counsel of record for Defendant, Clothilde Hewlett for the reason indicated in the G-123 Notice. Filed by Defendant Clothilde Hewlett. (Attorney Douglas J Beteta added to party Clothilde Hewlett(pty:dft))(Beteta, Douglas) (Entered: 03/23/2023) |
| 03/22/2023 | 21 | SCHEDULING NOTICE TO ALL PARTIES AND ORDER (IN CHAMBERS) by Judge R. Gary Klausner: Defendant Clothilde Hewlett's Motion to Dismiss Case 11 , calendared for hearing on 3/27/2023, has been taken under submission and off the motion calendar. No appearances by counsel are necessary. The Court will issue a ruling after full consideration of properly submitted pleadings. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jre) TEXT ONLY ENTRY (Entered: 03/22/2023) |
| 03/13/2023 | 20 | REPLY in Support NOTICE OF MOTION AND MOTION to Dismiss Case *with Memorandum of Points and Authorities* 11 filed by Defendant Clothilde Hewlett. (Rust, Craig) (Entered: 03/13/2023) |
| 03/06/2023 | 19 | OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *with Memorandum of Points and Authorities* 11 filed by Plaintiff Small Business Finance Association. (Pearson, Scott) (Entered: 03/06/2023) |
| 03/02/2023 | 18 | NOTICE OF ERRATA filed by Plaintiff Small Business Finance Association. correcting Stipulation to Continue 16 --*[16-1] Supplemental Declaration of Scott M. Pearson* (Pearson, Scott) (Entered: 03/02/2023) |
| 03/02/2023 | 17 | DENIED BY ORDER OF THE COURT by Judge R. Gary Klausner re Stipulation to Continue 16 . Lack of Good Cause. (jp) (Entered: 03/02/2023) |
| 03/01/2023 | 16 | Renewed STIPULATION to Continue Briefing Schedule and Other Court Deadlines filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Supplemental Declaration of Scott M. Pearson, # 2 Proposed Order)(Pearson, Scott) (Entered: 03/01/2023) |
| 03/01/2023 | 15 | ORDER DENYING JOINT STIPULATION TOEXTEND TIME 14 by Judge R. Gary Klausner. (lom) (Entered: 03/01/2023) |
| 02/28/2023 | 14 | Joint STIPULATION to Continue Briefing Schedule and Other Court Deadlines filed by Plaintiff Small Business Finance Association. (Attachments: # 1 Declaration of Scott M. Pearson, # 2 Proposed Order)(Pearson, Scott) (Entered: 02/28/2023) |
| 02/21/2023 | 13 | ORDER SETTING SCHEDULING CONFERENCE by Judge R. Gary Klausner. Rule 26 Meeting Report due by 3/27/2023. Scheduling Conference set for 4/3/2023 at 09:00 AM before Judge R. Gary Klausner. (jre) (Entered: 02/21/2023) |
| 02/21/2023 | 12 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *with Memorandum of Points and Authorities* 11 filed by Defendant Clothilde Hewlett. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Rust, Craig) (Entered: 02/21/2023) |

CM/ECF - California Central District                    https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| | | |
|---|---|---|
| 02/21/2023 | 11 | NOTICE OF MOTION AND MOTION to Dismiss Case *with Memorandum of Points and Authorities* filed by Defendant Clothilde Hewlett. Motion set for hearing on 3/27/2023 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # 1 Proposed Order) (Rust, Craig) (Entered: 02/21/2023) |
| 01/12/2023 | 10 | STIPULATION Extending Time to Answer the complaint as to Clothilde Hewlett answer now due 2/21/2023, filed by Defendant Clothilde Hewlett.(Attorney Craig Damon Rust added to party Clothilde Hewlett(pty:dft))(Rust, Craig) (Entered: 01/12/2023) |
| 12/09/2022 | 9 | WAIVER OF SERVICE Returned Executed filed by Plaintiff Small Business Finance Association. upon Clothilde Hewlett waiver sent by Plaintiff on 12/6/2022, answer due 2/6/2023. Waiver of Service signed by Craig D. Rust. (Attachments: # 1 Notice of Lawsuit and Request for Waiver of Service and Summons)(Pearson, Scott) (Entered: 12/09/2022) |
| 12/07/2022 | 8 | STANDING ORDER REGARDING NEWLY ASSIGNED CASES by Judge R. Gary Klausner. (jre) (Entered: 12/07/2022) |
| 12/07/2022 | 7 | NOTICE OF REASSIGNMENT of MJDAP case from Magistrate Judge Michael R. Wilner to Judge R. Gary Klausner for all further proceedings. Any discovery matters that may be referred to a Magistrate Judge are assigned to U.S. Magistrate Judge Paul L. Abrams. The case number will now reflect the initials of the transferee Judges 2:22-cv-08775 RGK(PLAx). (rn) (Entered: 12/07/2022) |
| 12/06/2022 | 6 | DECLINED STATEMENT OF CONSENT TO PROCEED before the assigned Magistrate Judge filed by Plaintiff Small Business Finance Association. (Pearson, Scott) (Entered: 12/06/2022) |
| 12/05/2022 | 5 | NOTICE TO COUNSEL re Magistrate Judge Direct Assignment Program. This case has been randomly assigned to Magistrate Judge Michael R. Wilner. (Attachments: # 1 CV11-C Statement of Consent) (et) (Entered: 12/05/2022) |
| 12/02/2022 | 4 | CORPORATE DISCLOSURE STATEMENT filed by Plaintiff Small Business Finance Association (Pearson, Scott) (Entered: 12/02/2022) |
| 12/02/2022 | 3 | NOTICE of Interested Parties filed by Plaintiff Small Business Finance Association, (Pearson, Scott) (Entered: 12/02/2022) |
| 12/02/2022 | 2 | CIVIL COVER SHEET filed by Plaintiff Small Business Finance Association. (Pearson, Scott) (Entered: 12/02/2022) |
| 12/02/2022 | 1 | COMPLAINT Receipt No: ACACDC-34417912 - Fee: $402, filed by Plaintiff Small Business Finance Association. (Attorney Scott M Pearson added to party Small Business Finance Association(pty:pla))(Pearson, Scott) (Entered: 12/02/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/03/2024 12:01:34 | | |
| **PACER Login:** | Docketingsdawt | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-08775-RGK-SK End date: 9/3/2024 |

https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?110697812271507-L_1_0-1

| Billable Pages: | 13 | Cost: | 1.30 |
|---|---|---|---|

9/3/2024, 12:01 PM

SER_249